# Exhibit No. 1

IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA

JOSEPH POPPELL; K.L.M., through her next friend,
JOSEPH POPPELL; MADISON MILLER; J.B., through
his next friend, TAMMY BAILEY; B.M., through his
next friend, TAMMY BAILEY; K.M.M., through her
next friend, TAMMY BAILEY; BRYSON GUEST; J.G.,
through his next friend, BRYSON GUEST; M.G.,
through his next friend, BRYSON GUEST; K.L.H.,
through her next friend, PATRICIA SMITH; A.G.,
through her next friend, PATRICIA SMITH; S.G.,
through her next friend, PATRICIA SMITH; K.G.H.,
through her next friend, PATRICIA SMITH; PATRICIA
SMITH on behalf of the ESTATE OF BENTLEY
TURNER; S.T., through his next friend, PATRICIA
SMITH; CHREI JONES; A.T., through her next friend,
MEMORIE TINDALL; R.T., through her next friend,
MEMORIE TINDALL; E.T., through her next friend,
MEMORIE TINDALL; MEMORIE TINDALL; M.T.,
through her next friend, WENDI TURNER, M.W.,
through her next friend, PATRICIA HAYTHORN, and
PATRICIA HAYTHORN,

      Plaintiffs,

v.

CARDINAL HEALTH, INC., CARDINAL HEALTH
108, LLC; CARDINAL HEALTH 110, LLC;
CARDINAL HEALTH 112, LLC; CARDINAL
HEALTH 113, LLC; CARDINAL HEALTH 116, LLC;
CARDINAL HEALTH 200, LLC; CARDINAL
HEALTH 414, LLC; McKESSON CORPORATION;
McKESSON DRUG COMPANY, LLC; McKESSON
MEDICAL-SURGICAL, INC.; McKESSON MEDICAL-
SURGICAL MINNESOTA SUPPLY, INC.; J M SMITH
CORPORATION; G & H PHARMACY, INC.; AGAPE
PRESCRIPTIONS "R" US, INC.; JANICE ANN
COLTER; CHRISTOPHER GREY MAY; WOODBINE
PHARMACY, INC.; SABRA L. MADDOX; ALAN M.
JONES; CAREY B. JONES; RAINBOW DRUG STORE,
INC.; RICHARD D. GRIFFIS, JR.; RICHARD D.
GRIFFIS, III; and CHARLES ROBERT LOTT.

      Defendants.

Civil Action File
No. _____

CE19-00472

JURY TRIAL DEMANDED

**SUMMONS**

1758722.1

TO:  c/o Cardinal Health 112, LLC
        c/o The Corporation Trust Company
        Corporate Trust Center
        1209 Orange Street
        Wilmington, Delaware 19801

        You are hereby summoned and required to file electronically with the Clerk of said court
at http://www.odysseyefilega.com and serve upon the Plaintiffs' Attorney, whose name and
address is:

        John E. Floyd, Esq.
        BONDURANT MIXSON & ELMORE LLP
        1201 West Peachtree Street, N.W., Suite 3900
        Atlanta, Georgia 30309

an answer to the complaint which is herewith served upon you, within 30 days after the service
of this summons upon you, exclusive of the day of service; unless proof of service of this
complaint is not filed within five business days of such service.  Then time to answer shall not
commence until such proof of service has been filed.  **IF YOU FAIL TO DO SO, JUDGMENT
BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN
THE COMPLAINT.**
                                17
        This _____ day of April, 2019.

                                        Honorable Ronald M. Adams
                                        Clerk of Superior Court
                                            /s/ Robin Mcgregor

                                        By: _____
                                            Deputy Clerk

1758722.1

FILED
GLYNN CO. CLERK'S OFFICE
4/17/2019 4:44 PM

*Russell M. Abbott*

CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

JOSEPH POPPELL; K.L.M., through her next friend, JOSEPH POPPELL; MADISON MILLER; J.B., through his next friend, TAMMY BAILEY; B.M., through his next friend, TAMMY BAILEY; K.M.M., through her next friend, TAMMY BAILEY; BRYSON GUEST; J.G., through his next friend, BRYSON GUEST; M.G., through his next friend, BRYSON GUEST; K.L.H., through her next friend, PATRICIA SMITH; A.G., through her next friend, PATRICIA SMITH; S.G., through her next friend, PATRICIA SMITH; K.G.H., through her next friend, PATRICIA SMITH; PATRICIA SMITH on behalf of the ESTATE OF BENTLEY TURNER; S.T., through his next friend, PATRICIA SMITH; CHREI JONES; A.T., through her next friend, MEMORIE TINDALL; R.T., through her next friend, MEMORIE TINDALL; E.T., through her next friend, MEMORIE TINDALL; MEMORIE TINDALL; M.T., through her next friend, WENDI TURNER, M.W., through her next friend, PATRICIA HAYTHORN, and PATRICIA HAYTHORN,

       Plaintiffs,

v.

CARDINAL HEALTH, INC., CARDINAL HEALTH 108, LLC; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 112, LLC; CARDINAL HEALTH 113, LLC; CARDINAL HEALTH 116, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 414, LLC; McKESSON CORPORATION; McKESSON DRUG COMPANY, LLC; McKESSON MEDICAL-SURGICAL, INC.; McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC.; J M SMITH CORPORATION; G & H PHARMACY, INC.; AGAPE PRESCRIPTIONS "R" US, INC.; JANICE ANN COLTER; CHRISTOPHER GREY MAY; WOODBINE PHARMACY, INC.; SABRA L. MADDOX; ALAN M. JONES; CAREY B. JONES; RAINBOW DRUG STORE, INC.; RICHARD D. GRIFFIS, JR.; RICHARD D. GRIFFIS, III; and CHARLES ROBERT LOTT.

       Defendants.

JUDGE ROGER LANE

Civil Action File
No. CE19-00472 _____

**JURY TRIAL DEMANDED**

## COMPLAINT

1760708.1

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

THE PARTIES ..............................................................................................................7

    I.    The Plaintiffs ................................................................................7

    II.    The Defendants ...........................................................................9

        A.    Distributor Defendants ..............................................10

        B.    Pharmacy Defendants ................................................13

JURISDICTION AND VENUE .................................................................................16

FACTUAL ALLEGATIONS ......................................................................................18

    I.    The Opioid Epidemic ..................................................................18

        A.    The Opioid Epidemic in the United States ...............19

        B.    The Opioid Epidemic in Georgia ..............................22

        C.    Criminal Prosecutions Warned that Diversion of Controlled Substances Was an Increasing Problem in Georgia ...................................................24

        D.    The Opioid Epidemic in Glynn and Surrounding Counties .......26

    II.    Laws and Regulations Governing Controlled Substances .........26

        A.    Georgia's Controlled Substances Schedules ..............27

        B.    Conduct That Is Not Expressly Permitted By The GCSA Is Unlawful ........................................................29

        C.    All Participants in the Closed System of Distributing Controlled Substances Have Non-Delegable Duties to Prevent Diversion ..................................................30

            1.    Doctors ..............................................................30

            2.    Pharmacists and Pharmacies ............................31

            3.    Distributors ........................................................32

    III.    The Distributor Defendants Ignored Warnings and Violated their Obligations to Prevent the Diversion of Controlled Substances ................................................................34

        A.    The Distributor Defendants Ignored Repeated Warnings ..........34

            1.    Enforcement Proceedings Against Cardinal ....................35

            2.    Enforcement Proceedings Against McKesson .................38

            3.    Enforcement Proceedings Against Smith .........................41

    IV.    Each of the Defendants Participated in the Illegal Marketing of Controlled Substances ........................................................41

    A.    The Illegal Marketing of Controlled Substances ..........................41

        1.    Distributors ..........................................................42

        2.    Pharmacies ..........................................................43

    B.    The Cardinal, McKesson, and Smith Controlled Substances Distribution Conspiracies ........................47

V.    **The Defendants' Violations of their Duties and Participation in the Illegal Marketing of Controlled Substances Harmed the Plaintiffs** ..........................50

    A.    Plaintiffs K.L.M., Madison Miller, and Joseph Poppell ..............51

    B.    Plaintiffs J.B., B.M., and K.M.M. .......................................54

    C.    Plaintiffs K.L.H., A.G., S.G., K.G.H., and Chrei Jones ..............56

    D.    Plaintiff S.T. ..........................................58

    E.    Plaintiff Estate of Bentley Scott Turner ..........................60

    F.    Plaintiffs Bryson Guest, J.G., and M.G. ..........................60

    G.    Plaintiffs A.T., R.T., E.T., and Memorie Tindall ..................62

    H.    Plaintiff M.T. ..........................................63

    I.    Plaintiff M.W., and Patricia Haythorn ..........................65

**PLAINTIFFS' CLAIMS** ..........................66

**VIOLATIONS OF THE GEORGIA DRUG DEALER LIABILITY ACT (allegations common to Counts 1-4)** ..........................66

Defendants Participated in the Illegal Marketing of Controlled Substances ................67

I.    **Distributor Defendants Knowingly and Willfully Failed and Refused to Report Excessive Purchases of Controlled Substances and Unusual or Suspicious Orders for Controlled Substances** ..........................67

II.    **Distributor Defendants and Pharmacy Defendants Unlawfully Sold, Delivered and Distributed Controlled Substances** ..........................68

III.    **Distributor Defendants and Pharmacy Defendants Aided and Abetted the Distribution of Prescription Drugs to Persons Who Were Not Authorized to Receive Those Drugs** ..........71

IV.    **Distributor Defendants and Pharmacy Defendants Used Communications Facilities in Committing, Causing and Facilitating the Commission of Acts Constituting Felonies Under the Georgia Controlled Substances Act** ..........................71

V.  **Distributor Defendants and Pharmacy Defendants Kept and Maintained Warehouses, Buildings, Structures, Places and Vehicles That Were Used For Keeping and Selling Controlled Substances** ........................................................72

VI. **Distributor Defendants and Pharmacy Defendants Violated the Georgia Racketeer Influenced and Corrupt Organizations Act** ........................................................72

    A.  **Acts of Racketeering Activity** ........................................73

    B.  **The Acts of Racketeering Activity Formed a Pattern** ................77

    C.  **Distributor Defendants and Pharmacy Defendants Endeavored to Acquire and Maintain an Interest in or Control of Money** ........................................79

COUNT 1  **Violations of the Georgia Drug Dealer Liability Act (All Plaintiffs Against Defendant Cardinal and Cardinal Pharmacy Defendants)** ........................................79

COUNT 2  **Violations of the Georgia Drug Dealer Liability Act (All Plaintiffs Against Defendant McKesson and McKesson Pharmacy Defendants)** ........................................81

COUNT 3  **Violations of the Georgia Drug Dealer Liability Act (All Plaintiffs Against Defendant Smith and City Drug Store)** ..............83

COUNT 4  **Violations of the Georgia Drug Dealer Liability Act (All Plaintiffs Against the Woodbine Pharmacy Defendants)** ................84

COUNT 5  **Violation of the Racketeer Influenced and Corrupt Organizations Act** ........................................86

NEGLIGENCE (allegations common to COUNTS 6-8) ........................................88

COUNT 6  **Negligence (All Plaintiffs against Cardinal)** ..............................90

COUNT 7  **Negligence (All Plaintiffs against McKesson)** ..............................91

COUNT 8  **Negligence (All Plaintiffs against Smith)** ..............................93

BREACH OF LEGAL DUTY (allegations common to COUNTS 9-11) ........................94

COUNT 9  **Breach of Legal Duty (All Plaintiffs against Cardinal)** ..............................95

COUNT 10  **Breach of Legal Duty (All Plaintiffs against McKesson)** ..............................96

COUNT 11  **Breach of Legal Duty (All Plaintiffs against Smith)** ..............................97

## INTRODUCTION

1.      The opioid epidemic is a man-made plague.  The pain, death, and heartache it has wrought cannot be overstated.  As the Attorney General of the United States put it in late 2018: "This is the deadliest drug crisis in American history.  We've never seen anything like it."

2.      Plaintiffs are the children, spouses, siblings, and parents of individuals who became addicted to opioids.  Plaintiffs have directly experienced: (i) the death of immediate family members caused by opioid abuse; (ii) the pain of living with a parent, spouse, sibling, or child who is addicted; and (iii) the physical, mental, emotional, and economic harm that flows from a family member's addiction.

3.      The Defendants are individuals, distributors, and pharmacies who have profited immensely by ignoring their legal duties, acting as drug dealers, and unlawfully flooding Georgia communities, like Glynn County, with opioids.  As a result of the illegal drug market fueled by Defendants:

    a.      thousands of Georgians and at least dozens of Glynn County residents have died from prescription opioid overdoses, while many times more have been hospitalized due to opioid abuse;

    b.      the foster care population in Georgia and Glynn County has increased dramatically as opioid addicts are unable to care for their children, and the rate of babies born dependent upon opioids in Georgia has skyrocketed, increasing six-fold from 2010 to 2016; and

    c.      across Georgia, the family members and loved ones of drug abusers – like Plaintiffs – have suffered untold heartache and pain from which they may never

recover.

4.      There can be no legitimate dispute that the Defendants have caused a flood of opioids to flow into Georgia. Indeed, the evidence is damning. For example:

     a.      between 2000 and 2011, the amount of oxycodone distributed in Georgia quadrupled, and the amount of hydrocodone distributed in Georgia tripled. **In 2011 alone, enough oxycodone and hydrocodone was distributed for every single Georgian to receive more than 10 doses of oxycodone and more than 20 doses of hydrocodone; and**

     b.      the facts are even worse in Glynn County. **In 2010 alone, 1,521,100 doses of oxycodone and 2,657,800 doses of hydrocodone were distributed in Glynn County—enough for every man, woman and child in the county to receive almost 20 doses of oxycodone and more than 30 doses of hydrocodone.** And the amount of each drug distributed in both Georgia and Glynn County remains dramatically higher today than it was in 2000, significantly exceeding the amount necessary to meet any legitimate medical need.

5.      Defendants are responsible for the dramatic increase in opioid distribution in Georgia and specifically in Glynn and surrounding counties. In particular:

     a.      between 2006 and 2012, both Defendant Cardinal and Defendant McKesson doubled their total retail distribution of oxycodone in Georgia. By 2012, Cardinal, McKesson, and Defendant Smith distributed more oxycodone to Georgia than all other drug distributors combined. And by 2012, both Cardinal and McKesson were *each* shipping more oxycodone to Georgia for retail

distribution than *all* distributors combined in 2000;

b.    between 2006 and 2011, the amount of oxycodone distributed to Glynn County by McKesson more than quadrupled, while in that same period, the amount of oxycodone distributed to Glynn County by Cardinal more than doubled. Oxycodone is only one of the many opioids and other controlled substances these Defendants pumped into Glynn and surrounding counties;

c.    the amount of oxycodone dispensed by Defendant Altama Discount Pharmacy more than doubled from 2008 to 2009. By 2010, the amount of oxycodone it dispensed was more than triple the amount it dispensed in 2008. In 2010, Altama Discount Pharmacy distributed 294,800 doses of oxycodone and 369,180 doses of hydrocodone. Every year from 2006 to 2013, Altama Discount Pharmacy was in the top five percent of all pharmacies in Georgia for oxycodone distribution, and Defendant Cardinal was its primary distributor through at least 2012;

d.    Defendant Darien Pharmacy was also in the top five percent of all Georgia pharmacies for oxycodone distribution each year from 2009 to 2013, and Cardinal was its primary distributor until January 2011. In 2010, Darien Pharmacy distributed 213,360 doses of oxycodone. Since 2013, both Darien Pharmacy and Altama Discount Pharmacy joined McKesson's Health Mart network;

e.    in both 2010 and 2011, City Drug Store was among the top 10 pharmacies in oxycodone distribution in the entire state, putting them in the top one-half of one-percent of all Georgia pharmacies; and

f.    in 2006, Defendant Woodbine Pharmacy was the highest distributor of

oxycodone, hydrocodone, and methadone in Georgia.  In 2007, it was again the highest distributor of oxycodone and methadone in Georgia.

6.    Defendants' disregard for their legal obligations created, caused, and maintained the opioid epidemic, particularly in Georgia and in Glynn and surrounding counties.

7.    Because of the extreme dangers they pose, opioids are subject to a closed system of distribution established by Georgia and federal law.  Every person involved in this system – including Defendants, distributors, prescribing physicians, and pharmacists – must be registered with the Georgia Drugs and Narcotics Agency (GDNA) and the Drug Enforcement Agency (DEA) and must comply with specific non-delegable duties.

8.    This closed system of distribution is intended to prevent the diversion of opioids.  Diversion occurs when opioids move into illegitimate channels, including the hands of street-level drug dealers and addicts.  The closed system of distribution breaks down when physicians write prescriptions for patients who do not have a legitimate medical need for the controlled substance prescribed, when pharmacies fill such prescriptions, and when distributors ship excessive amounts of controlled substances to those pharmacies.

9.    Concerned more about their profits than their legal duties and the lives of Georgia residents, Defendants thwarted this closed system.  As described herein, beginning no later than the early 2000s, Defendants violated Georgia law and their duties by, *inter alia*, participating in and profiting from an illegal drug market in opioids while earning billions of dollars.

10.    Beginning in the 2000s, "pill mills" began to proliferate.  A "pill mill" is a purported medical practice that typically prescribes large quantities of opioids and other controlled substances without a legitimate medical purpose.  These pill mills provide little or no actual

medical care and typically see very large numbers of purported patients per day.

11.    A prescription from a pill mill is useless to a drug abuser unless he or she can find a pharmacy to fill it. Defendant pharmacies were ready and willing to fill prescriptions written by pill mill doctors.  As one pill mill doctor after another was arrested and prosecuted, the Defendant pharmacies would fill the prescriptions written by their replacements. And Defendant distributors remained eager to fill (and profit from) ever larger excessive orders from these pharmacies.

12.    Defendants are responsible for the flood of opioids that has devastated Glynn County. For example:

   a.    distributors like Cardinal, McKesson, and Smith are required by the State of Georgia to immediately report every excessive purchase of opioids to the GDNA, and each failure to report an excessive purchase is a felony.  But month after month and year after year, these Defendants filled clearly excessive orders for opioids without reporting those orders to GDNA;

   b.    distributors must also report and stop the shipment of suspicious orders. An order identified as suspicious may be shipped only if, after conducting due diligence, the distributor determines that diversion is not likely. Cardinal, McKesson, and Smith repeatedly shipped suspicious orders into Glynn County and surrounding communities without conducting the required due diligence and without determining that diversion was unlikely; and

   c.    pharmacists also have an independent and non-delegable duty to prevent diversion. They have a statutory obligation to review a patient's pharmacy

records, ensure the appropriateness of prescriptions, and identify overutilization and clinical abuse or misuse. Whenever overutilization or abuse is identified a pharmacist must take steps to resolve the problem, including consulting with the prescribing doctor. Despite these obligations, several pharmacies in and around Glynn County, including Defendant pharmacies and pharmacists, knowingly filled illegitimate prescriptions that resulted in the overutilization and abuse of controlled substances.

13.   Defendants knew their legal obligations, but disregarded them in the pursuit of greater profit, violating Georgia criminal and civil laws on a regular basis, year after year, with no regard for the consequences to Plaintiffs and those like them.

14.   Defendants' violation of their legal duties resulted in significantly increased sales of opioids. Those increases in opioid sales led to dramatic increases in the diversion of opioids.

15.   When Defendants disregarded their obligations and distributed vastly more of these dangerous and addictive drugs than were needed to satisfy legitimate medical purposes, the result was foreseeable and exactly what the state and federal laws creating a closed system of distribution were designed to prevent: addiction, hospitalization, deaths, broken marriages, neglected and abandoned children, and ruined families.

16.   Georgia law provides Georgians – particularly the children and other family members of drug abusers – with powerful tools to recover for the pain, death, and heartache caused by those responsible for the opioid epidemic, namely the distributors and pharmacies that made billions of dollars while flooding Georgia communities with opioids. One of those tools is the Georgia Drug Dealer Liability Act (DDLA). The DDLA was enacted to provide Georgians who are injured as a result of illegal drug use – like Plaintiffs – with a remedy to recover against

1760708.1

6

companies and individuals – like Defendants – that participated in and profited from an illegal drug market. The DDLA's purpose is "to shift, to the extent possible, the cost of the damage caused by the existence of the illegal drug market in a community to those who illegally profit from that market," and "to establish the prospect of substantial monetary loss as a deterrent" to such illegal conduct. O.C.G.A. § 51-1-46(b).

17.     Knowing that they were distributing and selling opioids at levels well above any legitimate need or use, Defendants continued their distribution and sales to maintain and increase their profits. Defendants ignored their legal duties by, *inter alia,* participating in and profiting from an illegal drug market in Glynn County and elsewhere. Plaintiffs have been injured as a result of illicit drug use fueled by that illegal drug market. Defendants are liable to Plaintiffs under the DDLA, as well as other laws, for their illegal sales and distribution of controlled substances. Through this action, Plaintiffs seek to recover for the harm they have suffered as a result of Defendants' conduct.

## THE PARTIES

### I.     The Plaintiffs

18.     Plaintiffs are the children, spouses or former spouses, siblings, and parents of persons whose lives were lost to or devastated by prescription opioids.

19.     Joseph Poppell is a Georgia resident and the brother of Kim Miller.

20.     K.L.M. is a Georgia resident and the minor daughter of Kim Miller. She brings this action by and through her next friend, Joseph Poppell.

21.     Madison Miller is a Georgia resident and the daughter of Kim Miller.

22.     J.B. is a Georgia resident and the minor son of Tammy Bailey. He brings this action by

and through his next friend, Tammy Bailey.

23.    B.M. is a Georgia resident and the minor son of Tammy Bailey and Richard Scott Miller, deceased. He brings this action by and through his next friend, Tammy Bailey.

24.    K.M.M. is a Georgia resident and the minor daughter of Tammy Bailey and Richard Scott Miller, deceased. She brings this action by and through her next friend, Tammy Bailey.

25.    Bryson Guest is a Georgia resident and the son of Stephanie Guest and Michael Guest, deceased.

26.    J.G. is a Georgia resident and the minor son of Stephanie Guest and Michael Guest, deceased. He brings this action by and through his next friend, Bryson Guest.

27.    M.G. is a Georgia resident and the minor son of Stephanie Guest and Michael Guest, deceased. He brings this action by and through his next friend, Bryson Guest.

28.    K.L.H. is a Georgia resident and the minor daughter of Brandy Turner. She brings this action by and through her next friend, Patricia Smith.

29.    A.G. is a Georgia resident and the minor daughter of Brandy Turner. She brings this action by and through her next friend, Patricia Smith.

30.    S.G. is a Georgia resident and the minor daughter of Brandy Turner. She brings this action by and through her next friend, Patricia Smith.

31.    K.G.H. is a Georgia resident and the minor daughter of Brandy Turner. She brings this action by and through her next friend, Patricia Smith.

32.    Bentley Turner was the son of Brandy Turner and Scott Turner. Bentley was born February 13, 2015. He died on March 16, 2015. Patricia Smith brings this action on behalf of

the Estate of Bentley Turner.[1]

33.   S.T. is a Georgia resident and the minor son of Scott Turner.  He brings this action by and through his next friend, Patricia Smith.

34.   Chrei Jones is a Georgia resident and the sister of Brandy Turner.

35.   A.T. is a Georgia resident and the minor daughter of Memorie Tindall and Ethan Tindall. She brings this action by and through her next friend, Memorie Tindall.

36.   R.T. is a Georgia resident and the minor daughter of Memorie Tindal and Ethan Tindall. She brings this action by and through her next friend, Memorie Tindall.

37.   E.T. a Georgia resident and the minor daughter of Memorie Tindall and Ethan Tindall. She brings this action by and through her next friend, Memorie Tindall.

38.   Memorie Tindall is a Georgia resident and the spouse of Ethan Tindall.

39.   M.T. is a Georgia resident and the minor daughter of Dean J. Turner.  She brings this action by and through her next friend, Wendi Turner.

40.   M.W. is a Georgia resident and the minor daughter of Bailey Merrill.  She brings this action by and through her next friend, Patricia Haythorn.

41.   Patricia Haythorn is a Georgia resident and the mother of Bailey Merrill.

## II.   The Defendants

42.   Defendants are pharmaceutical wholesale distributors and pharmacies, pharmacy owners, and pharmacists whose conduct created an illegal drug market flooded with opioids and other

---

[1] The Petition for Letters of Administration was filed on behalf of Patricia Smith in the Probate Court of Glynn County on April 11, 2019. Because Brandy Turner and Scott Turner have consented to the appointment of Patricia Smith as the administrator of the Estate of Bentley Scott Turner, there is no heir who might object to her appointment as the administrator.  Therefore, while Patricia Smith has not yet been formally confirmed as the administrator of the Estate of Bentley Turner, she should be formally confirmed in the near future.

controlled substances in and around Glynn County.

### A.    Distributor Defendants

43.    Cardinal Health, Inc. is a company that specializes in pharmaceutical drug distribution. Cardinal Health, Inc. is an Ohio Corporation with its principal place of business at 7000 Cardinal Place, Dublin, OH 43017.    The Georgia Board of Pharmacy ("Georgia Pharmacy Board") identifies Cardinal Health as the present or former holder of 30 wholesaler pharmacy licenses to distribute pharmaceutical drugs into Georgia.    Although Cardinal Health, Inc. does business in Georgia, it is not registered to do business in the State of Georgia.    Cardinal Health, Inc. also does business in Georgia through several subsidiaries licensed as wholesaler pharmacies with the Pharmacy Board.    Cardinal Health, Inc. and its subsidiaries named in the following paragraph are collectively referred to herein as Cardinal.

44.    The following Cardinal Health, Inc. subsidiaries have or had wholesaler pharmacy licenses from the Georgia Pharmacy Board to distribute pharmaceutical drugs to Georgia:

    a.    Cardinal Health 108, LLC;[2]

    b.    Cardinal Health 110, LLC;[3]

    c.    Cardinal Health 112, LLC;[4]

---

[2] Cardinal Health 108, LLC is a Delaware Corporation with its principal place of business at 7000 Cardinal Place, Dublin, OH 43017.  Cardinal Health 108, LLC has an active wholesaler pharmacy license from the Pharmacy Board to distribute pharmaceutical drugs to Georgia.  It is not registered to do business in the State of Georgia.
[3] Cardinal Health 110, LLC is a Delaware Corporation with its principal place of business at 7000 Cardinal Place, Dublin, OH 43017.  Cardinal Health 110, LLC has an active wholesaler pharmacy license from the Pharmacy Board to distribute pharmaceutical drugs to Georgia.  It may be served through its registered agent C T Corporation System, at 289 S Culver St., Lawrenceville, GA 30046.  Cardinal Health 110, LLC is also the surviving entity through a merger that involved, among others, Cardinal Health 411, Inc., an Ohio Corporation that was registered to do business in Georgia.  Cardinal Health 411, Inc. had a wholesaler pharmacy license with the Pharmacy Board to distribute pharmaceutical drugs to Georgia from 2008 to 2011.
[4] Cardinal Health 112, LLC is a Delaware Corporation with its principal place of business at 7000 Cardinal Place, Dublin, OH 43017.  Cardinal Health 112, LLC had a wholesaler pharmacy license from the Pharmacy Board to

    d.     Cardinal Health 113, LLC;[5]

    e.     Cardinal Health 116, LLC;[6]

    f.     Cardinal Health 200, LLC;[7] and

    g.     Cardinal Health 414, LLC.[8]

45.    Cardinal currently operates a distribution facility in Buford, Georgia. At various times since 2000, Cardinal has also operated distribution facilities in Morrow, Norcross, Stone Mountain, McDonough, Columbus, Augusta, Rome, and Doraville, Georgia.

46.    McKesson Corporation is a company that specializes in pharmaceutical drug distribution. McKesson Corporation is a Delaware Corporation with its principal place of business at 6535 State Hwy. 161, Irving, TX 75039. The Georgia Pharmacy Board identifies McKesson Corporation as the present or former holder of 13 wholesaler pharmacy licenses to distribute pharmaceutical drugs into Georgia. McKesson Corporation may be served through its registered agent Corporation Service Company, at 40 Technology Parkway South, #300, Norcross, GA 30092. McKesson Corporation also does business in Georgia through several subsidiaries

---

distribute pharmaceutical drugs to Georgia from 2008 to 2009. It is not registered to do business in the State of Georgia.
[5] Cardinal Health 113, LLC is a Wisconsin Corporation with its principal place of business at 7000 Cardinal Place, Dublin, OH 43017. Cardinal Health 113, LLC had a wholesaler pharmacy license from the Pharmacy Board to distribute pharmaceutical drugs to Georgia from 2006 to 2007. It may be served through its registered agent C T Corporation System, at 289 S Culver St., Lawrenceville, GA 30046.
[6] Cardinal Health 116, LLC is a Delaware Corporation with its principal place of business at 7000 Cardinal Place, Dublin OH 43017. Cardinal Health 116, LLC had a wholesaler pharmacy license from the Pharmacy Board to distribute pharmaceutical drugs to Georgia from 2008 to 2009. It is not registered to do business in the State of Georgia.
[7] Cardinal Health 200, LLC is a Delaware Corporation with its principal place of business at 7000 Cardinal Place, Dublin OH 43017. Cardinal Health 200, LLC has five active wholesaler pharmacy licenses and one inactive wholesaler pharmacy license from the Pharmacy Board to distribute pharmaceutical drugs to Georgia. It may be served through its registered agent C T Corporation System, at 289 S Culver St., Lawrenceville, GA 30046.
[8] Cardinal Health 414, LLC is a Delaware corporation with its principal place of business at 7000 Cardinal Place, Dublin OH 43017. Cardinal Health 414, LLC has one active and one inactive wholesaler pharmacy license from the Pharmacy Board to distribute pharmaceutical drugs to Georgia. It may be served through its registered agent C T Corporation System, at 289 S Culver St., Lawrenceville, GA 30046.

licensed as wholesaler pharmacies with the Pharmacy Board. McKesson Corporation and its subsidiaries named in the following paragraph are collectively referred to herein as McKesson.

47. The following McKesson Corporation subsidiaries have or had wholesaler pharmacy licenses from the Georgia Pharmacy Board to distribute pharmaceutical drugs to Georgia:

      a.     McKesson Packaging Services;[9]

      b.     McKesson Drug Company, LLC;[10]

      c.     McKesson Medical-Surgical, Inc.;[11] and

      d.     McKesson Medical-Surgical Minnesota Supply, Inc.[12]

48. McKesson currently operates distribution facilities in Duluth and Suwanee, Georgia. At various times since 2000, McKesson has also operated other distribution facilities in Pooler, Lawrenceville, and Suwanee, Georgia.

49. J M Smith Corporation is a South Carolina Corporation with its principal place of business at 101 W. St. John St., Suite 305, Spartanburg, SC 29306. Smith Drug Company, a division of J M Smith Corporation, specializes in pharmaceutical drug distribution. Smith Drug Company has four active wholesaler pharmacy licenses from the Georgia Pharmacy Board to

---

[9] McKesson Corporation also does business as McKesson Packaging Services, which has an active wholesaler pharmacy license from the Pharmacy Board to distribute pharmaceutical drugs to Georgia beginning in 2004.
[10] McKesson Drug Company, LLC is a Delaware Corporation with its principal place of business at 6535 State Hwy. 161, Irving, TX 75039. McKesson Drug Company, LLC has 15 active and 14 inactive wholesaler pharmacy licenses from the Pharmacy Board to distribute pharmaceutical drugs to Georgia. It is not registered to do business in the State of Georgia.
[11] McKesson Medical-Surgical, Inc. is a Virginia Corporation with its principal place of business at 9954 Mayland Drive, Suite 4000, Richmond, VA 23322. McKesson Medical-Surgical, Inc. has 10 active and two inactive wholesaler pharmacy licenses from the Pharmacy Board to distribute pharmaceutical drugs to Georgia. It may be served through its registered agent Corporation Service Company, at 40 Technology Parkway South, #300, Norcross, GA 30092.
[12] McKesson Medical-Surgical Minnesota Supply, Inc. is a Minnesota Corporation with its principal place of business at 8121 10th Avenue North, Golden Valley, MN 55427-4401. McKesson Medical-Surgical Minnesota Supply, Inc. has one active and three inactive wholesaler pharmacy licenses from the Pharmacy Board to distribute pharmaceutical drugs to Georgia. It may be served through its registered agent Corporation Service Company, at 40 Technology Parkway South, #300, Norcross, GA 30092.

1760708.1

distribute pharmaceutical drugs to Georgia. J M Smith Corporation may be served through its registered agent C T Corporation System, at 289 S Culver St., Lawrenceville, GA 30046. Smith Drug Company and J M Smith Corporation are referred to collectively herein as Smith Drug.

50.     Smith Drug currently operates a distribution facility in Valdosta, Georgia.

51.     Cardinal, McKesson, and Smith are collectively referred to herein as the Distributor Defendants.

### B.     Pharmacy Defendants

52.     G & H Pharmacy, Inc., a Georgia corporation, does business as Altama Discount Pharmacy and is located at 5711 Altama Avenue, Suite G, Brunswick, Georgia.  G & H Pharmacy, Inc. may be served through its registered agent Wallda Lon Lewis, 5711 Altama Avenue, Suite G, Brunswick, Georgia 31525.  G & H Pharmacy, Inc. is referred to herein as Altama Discount Pharmacy.

53.     Agape Prescriptions "R" Us, Inc., a Georgia corporation, does business as Darien Pharmacy and is located at 1229 North Way, Darien, GA 31305.  It may be served through its registered agent Janice Ann Colter, 1229 North Way, Darien, GA 31305.  Agape Prescriptions "R" Us, Inc. is referred to herein as Darien Pharmacy.

54.     Janice Ann Colter is the CFO of Darien Pharmacy.  She is licensed by the Pharmacy Board as a Pharmacist.  She has been the designated pharmacist in charge of Darien Pharmacy since September 20, 2013.  Ms. Colter resides at 411 Waverly Lane, White Oak, Camden County, Georgia 31568.

55.     Christopher Grey May is the CEO of Darien Pharmacy.  He is licensed by the Pharmacy Board as a Pharmacist.  He was the designated pharmacist in charge of Darien Pharmacy until

September 19, 2013.  Mr. May resides at 110 River Way, Brunswick, Glynn County, Georgia 31520.

56.    Woodbine Pharmacy, Inc. (Woodbine Pharmacy) is a Georgia corporation with its principal office located at 908 Georgia Ave., #1, Woodbine, GA 31569.  It may be served through its registered agent Carey B. Jones at 241 Grace Rd., Jesup, GA 31545.

57.    Sabra L. Maddox was the CEO of Woodbine Pharmacy, Inc. from in or around 2010 to in or around 2018.  She is licensed by the Pharmacy Board as a Pharmacist.  She was the designated pharmacist in charge of Woodbine Pharmacy until September 1, 2017.  Ms. Maddox resides at 305 Kingsmarsh Way, St. Simons Island, Glynn County, GA 31522.

58.    Alan M. Jones was the CFO and an owner of Woodbine Pharmacy, Inc. from in or around 2004 to the present.  He is licensed by the Pharmacy Board as a Pharmacist.  He was the designated pharmacist in charge of Woodbine Pharmacy from at least September 1, 2017 to March 22, 2018.  Alan Jones resides at 109 Worth Street, Jesup, GA 31545.

59.    Carey B. Jones was the Secretary and an owner of Woodbine Pharmacy, Inc. from in or around 2004 to the present.  He is licensed by the Pharmacy Board as a Pharmacist.  Carey Jones resides at 241 Grace Road, Jesup, GA 31545.

60.    Woodbine Pharmacy, Sabra L. Maddox, Alan M. Jones, and Carey B. Jones are collectively referred to herein as the Woodbine Pharmacy Defendants.

61.    Rainbow Drug Store, Inc. (Rainbow Drug Store) is a Georgia corporation with its principal office located at 220 Blythe Island Connector, Brunswick, GA 31520.  It may be served through its registered agent Richard D. Griffis at 4319 New Jesup Hwy, Brunswick, Glynn County, GA 31520, which is also the physical location of Rainbow Drug Store.

62.    Richard D. Griffis, Jr. is the CEO, CFO, and Secretary of Rainbow Drug Store, Inc. He is licensed by the Pharmacy Board as a Pharmacist. He was the designated pharmacist in charge of Rainbow Drug Store until in or around 2008. Mr. Griffis, Jr. resides at 110 Comanche Rd., Brunswick, Glynn County, GA 31525.

63.    Richard D. Griffis, III is licensed by the Pharmacy Board as a Pharmacist. He has worked at Rainbow Drug Store as a pharmacist since 2005 and became the designated pharmacist in charge of Rainbow Drug Store beginning in or around 2008. Mr. Griffis, III resides at 113 Drakes Lndg., Brunswick, Glynn County, GA 31523.

64.    Charles Robert Lott was the pharmacist in charge of City Drug Store, a/k/a City Drugs and City Drug – a pharmacy located at 1402 Newcastle Street, Brunswick, GA 31520 – until it ceased operating in 2013. He was licensed by the Pharmacy Board as a Pharmacist through December 31, 2018. Mr. Lott did business as City Drug Store. Mr. Lott and City Drug Store are collectively referred to herein as "City Drug Store." Mr. Lott resides at 350 Major Wright Road, St. Simons Island, Glynn County, GA 31522.

65.    Altama Discount Pharmacy, Darien Pharmacy, Janice Ann Colter, Christopher Grey May, the Woodbine Pharmacy Defendants, Rainbow Drug Store, Richard Griffis, Jr., Richard Griffis, III, and City Drug Store are collectively referred to herein as the Pharmacy Defendants.

66.    Altama Discount Pharmacy, Darien Pharmacy, Janice Ann Colter, Christopher Grey May, Rainbow Drug Store, Richard Griffis, Jr., and Richard Griffis, III each purchased and/or received opioids and other controlled substances from Cardinal and are referred to herein as the Cardinal Pharmacy Defendants.

67.    Altama Discount Pharmacy, Darien Pharmacy, Janice Ann Colter, and Christopher Grey

May each purchased and/or received opioids and other controlled substances from McKesson and are referred to herein as the McKesson Pharmacy Defendants.

## JURISDICTION AND VENUE

68.     This Court has subject matter jurisdiction over this action pursuant to Article 6, Section 4, Paragraph 1 of the Constitution of the State of Georgia and O.C.G.A. § 15-6-8.

69.     This Court has personal jurisdiction over Defendants Altama Discount Pharmacy, Janice Ann Colter, Christopher Grey May, Woodbine Pharmacy, Sabra Maddox, Alan Jones, Carey Jones, Rainbow Drug Store, Richard Giffis, Jr., Richard Griffis, III, and Charles Robert Lott because each either resides in Georgia or is a Georgia corporation.

70.     This Court has personal jurisdiction over Defendants Cardinal, McKesson, and Smith under O.C.G.A § 9-10-91 because Defendants, directly and by and through their authorized agents, servants, and employees, regularly transacted business in Georgia; purposefully directed their actions towards Georgia, including by selling, supplying and distributing opioids and other controlled substances in Georgia; and through their acts and omissions, tortiously caused injuries in Georgia by engaging in a persistent course of conduct in Georgia that violated Georgia law. Defendants derived substantial revenue as a result of the opioids and other controlled substances which were sold and distributed within Georgia and consumed by Georgians.

71.     Defendants Cardinal, McKesson, and Smith consented to be sued in Georgia by registering an agent for service of process, consensually submitted to the jurisdiction of Georgia by obtaining wholesaler pharmacy licenses from the Georgia Pharmacy Board, and/or have the requisite minimum contacts with Georgia necessary to constitutionally permit the Court to exercise jurisdiction.

1760708.1

72.   Plaintiffs bring this action exclusively under Georgia law and no independent federal claims are asserted.

73.   Plaintiffs do not invoke federal question subject matter jurisdiction.  Plaintiffs do not plead, expressly or implicitly, any cause of action or request any remedy that arises under federal law.  The issues presented by the allegations in this complaint do not implicate any substantial federal issues.  No federal issue is important to the federal system as a whole under the criteria set by the Supreme Court in *Gunn v. Minton,* 568 U.S. 251 (2013).

74.   The causes of action asserted and the remedies sought herein are founded upon the statutory, and decisional laws of the State of Georgia.  While Plaintiffs cite federal statutes and federal regulations to define the contours of the duties Defendants owe under Georgia law, that does not convert any state law cause of action into a federal question, substantial or otherwise, because Georgia law, not federal authority, establishes the existence of the duties.

75.   Any attempt to remove this Complaint to federal court on the basis of federal question subject matter jurisdiction would be meritless[13] and would warrant the award of attorneys' fees

---

[13] *See e.g., The City of Boston et al. v. Purdue Pharma LP et al.,* No. 1:18-cv-12174 (D. Mass. Jan. 29, 2019) (remanding case because "[t]he federal issues that might arise under this complaint are not necessary to resolution of this case"); *In re Nat'l Prescription Opiate Litig.,* No. 1:17-MD-2804, 2019 WL 180246, at *2 (N.D. Ohio Jan. 14, 2019) (remanding State of Kentucky's action because "Kentucky's Complaint does not facially assert federal-law claims," despite the fact that the claims may be partially predicated on violations of federal law); *Weber Cty., Utah v. Purdue Pharma, L.P.,* No. 1:18-CV-00089-RJS, 2018 WL 3747846 (D. Utah Aug. 7, 2018) (remanding a case brought by a Utah county because its state-law claims' implication of the federal Controlled Substances Act did not raise a sufficient issue of federal law to support federal question jurisdiction); *Uintah Cty., Utah v. Purdue Pharma, L.P.,* No. 2:18-CV-00585-RJS, 2018 WL 3747847 (D. Utah Aug. 7, 2018) (remanding on the same basis as the *Weber County* action); *New Mexico ex rel. Balderas v. Purdue Pharma L.P.,* 323 F. Supp. 3d 1242 (D.N.M. 2018) (remanding case due to lack of federal question jurisdiction because "[w]hile a determination of a duty and violation of that duty under the [federal Controlled Substances Act] will likely occur in examining Plaintiff's claims, so also will examination of New Mexico common law, statutes, and promulgated rules to determine Defendants' duty, if any to prevent 'diversion' of prescription drugs into illicit channels"); *State of W. Virginia ex rel. Morrisey v. McKesson Corp.,* No. CV 16-1772, 2017 WL 357307, at *8 (S.D.W. Va. Jan. 24, 2017) (holding that the court lacked federal question jurisdiction because the complaint "allege[s] violations of numerous West Virginia statutes and regulations, and the use of the catch-all 'United States laws and regulations' does not operate to unlock the federal courts to the claims").

and sanctions against the removing party.

76.     Venue in Glynn County is appropriate pursuant to Ga. Const. Art. 6, Sec. 2, Para. 6 because Defendants Christopher Grey May, Sabra L. Maddox, Richard D. Griffis, Jr., Richard D. Griffis, III, and Charles Robert Lott reside in Glynn County.

77.     Venue in Glynn County is appropriate pursuant to Ga. Const. Art. 6, Sec. 2, Para. 6 and O.C.G.A § 14-2-510(b)(1) because Defendants Altama Discount Pharmacy and Rainbow Drug Store maintain their registered office in Glynn County.

78.     Venue in Glynn County is appropriate as to all other Defendants pursuant to Ga. Const. Art. 6, Sec. 2, Para. 4 because each non-resident Defendant is a joint tortfeasor with one or more resident defendants.

79.     Venue in Glynn County is also appropriate pursuant to Ga. Const. Art. 6, Sec. 2, Para. 6 and O.C.G.A § 14-2-510 as events giving rise to the causes of action alleged herein occurred in Glynn County, Defendants transact business in Glynn County, Defendants intentionally sold and distributed controlled substances in this county and/or to residents of this county, and at least one Defendant maintains an office and/or resides in this county.

80.     Venue in Glynn County is also appropriate as each Defendant is liable to at least one Plaintiff under the Georgia Drug Dealer Liability Act.  O.C.G.A § 51-1-46(j)(2).

## FACTUAL ALLEGATIONS

### I.     The Opioid Epidemic

81.     Opioid addiction has devastated thousands of families in Georgia, including many in Glynn and neighboring counties.  Defendants knowingly and intentionally disregarded their legal duties, feeding the opioid epidemic and contributing to the suffering it has caused.

1760708.1

18

82.     Prescription opioids are extremely addictive because they induce euphoria, while at the same time producing severe withdrawal symptoms if use is stopped.  Opioids are so powerful that they can create dependency and addiction in as little as a few weeks.

A.     The Opioid Epidemic in the United States

83.     At the national level, the increase in prescription opioid consumption that began in the late 1990s in the United States has no equal in the world.  That increase was so dramatic that by 2006 the United States accounted for 80% of the world's consumption of oxycodone and 99% of the world's consumption of hydrocodone.[14]



---

[14] 2017 annual report of the International Narcotics Control Board, at 20.

84.   In 2016, more individuals in the United States were abusing controlled substances like opioids than cocaine, heroin and methamphetamine combined.

85.   The explosive increase in opioid consumption in the United States was accompanied by a corresponding increase in the number of deaths caused by opioid overdoses.  By 2016, the death rate from opioids in the United States was over ten times that of the rest of the world.



Deaths From Opioids
Rate per 100,000

Notes
Global Burden of Disease Collaborative Network. Global Burden of Disease Study 2016 (GBD 2016) Results. Seattle: Institute for Health Metrics and Evaluation (IHME), 2017.

86.    Year after year the data shows the same thing:  as sales of opioids increase, so do the

number of deaths and hospitalizations from opioid abuse and overdoses.

### U.S. Rates of Opioid Overdose Deaths, Sales, and Treatment Admissions, 1999-2010



Source: National Vital Statistics System (NVSS), DEA's Automation of Reports and Consolidated Orders System, Substance Abuse and Mental Health Services Administration's Treatment Episode Data Set

87.    The prescription opioid epidemic has directly impacted the life expectancy of Americans,

which declined in each of 2015, 2016, and 2017.  The United States has not experienced a

comparable sustained decline in life expectancy since 1914-18, a period that included World War

I and the 1918 influenza pandemic.

88.    Opioid-involved overdose deaths increased every year from 1999 to 2015.  By 2015, the

number of overdose deaths involving opioids in the United States was almost five times as high

as in 1999.  But statistics on deaths from opioid overdoses do not capture the full consequences

of opioid abuse.  For example, in 2010, for every unintentional opioid overdose death in the

United States there were 10 abuse treatment admissions, 28 emergency department visits for misuse or abuse, 108 persons with opioid dependence, and 733 persons taking opioids for non-medical purposes.[15]

89.    Babies are also affected. Neonatal Abstinence Syndrome (NAS) occurs when a child is born dependent upon opioids due to their mother's use of such drugs during pregnancy. Tragically, the rate of babies born with NAS has increased dramatically. Between 2000 and 2009, the annual rate of NAS diagnosis in the United States increased almost three-fold,[16] and the number of babies born with NAS has continued to increase dramatically. These disturbing trends, along with many other devastating effects of the opioid epidemic in the nation and Georgia, were widely reported by the popular press throughout the period of time that Distributor Defendants were shipping record amounts of opioids to Glynn and surrounding counties.

**B.    The Opioid Epidemic in Georgia**

90.    Georgia has been one of the hardest hit states in the nation when it comes to the prescription opioid epidemic.

91.    From 1999 to 2016 prescription opioid deaths in Georgia increased 1166 percent. In the same time period, Georgia's population increased only 28 percent. From 1999 through 2016, at least 5,654 Georgians died from prescription opioid overdoses.

92.    For each opioid death, there are numerous other problems involving opioids, including emergency room visits. From 2009 to 2014, Georgia's rate of increase in the number of patient encounters related to opioids was the highest in the nation.

---

[15] DEA 2014 PowerPoint Presentation entitled, Prescription Drug Abuse by Robert L. Hill at 19.
[16] Stephen W. Patrick et al., Neonatal Abstinence Syndrome and Associated Health Care Expenditures: United States 2000-2009, 307 JAMA 1934 (May 9, 2012).

93.     Due in substantial part to the opioid epidemic, the number of children in foster care in Georgia doubled from September 2010 to March 2018.  Around 80 percent of the Georgia children that entered foster care in 2016 had substance abuse listed as a reason in their case files.

94.     Consistent with the national experience, the reported rate of babies born in Georgia with NAS has skyrocketed, with an almost six-fold increase from 2010 to 2016.

95.     Defendants fueled by their desire to earn illicit profit from an illegal market in opioids caused Georgia residents to suffer these harms.  Indeed, Cardinal and McKesson led the flood of opioids into Georgia as evidenced by the fact that from 2006 to 2012, both Cardinal and McKesson more than doubled their total retail distribution of oxycodone in Georgia.  Not surprisingly, prescription opioid deaths also more than doubled in Georgia in the same time frame from 173 to 417 (notably, during that same period Georgia's population increased by only eight percent).

96.     The opioid epidemic in Georgia was driven, in part, by Florida cracking down on its opioid epidemic.  In the 2000s, Florida was the national epicenter of the opioid epidemic, but prosecutions and legislative and regulatory changes in 2009 and 2010 made it harder for pill mills to operate there.

97.     Pill mills responded by shifting to Georgia.  According to the DEA, prior to 2009-2010 there were around 15-20 legitimate pain management clinics in Georgia.  By 2012, there were at least 125 rogue pain clinics owned by non-physicians in Georgia.  The DEA's National Drug Threat Assessment reports for 2011 and 2015 both specifically noted the relocation of pill mill physicians from Florida to Georgia.

98.     The DOJ's 2011 Drug Market Analysis for the Atlanta High Intensity Drug

Trafficking Area (at 8) also discussed the looming opioid problem in Georgia:

> Georgia is emerging as a source for CPDs [Controlled Prescription Drugs] available to abusers throughout the southeastern United States because of numerous pill mills operating in the state. Owners of pill mills are opening cash-only businesses throughout Georgia, including the Atlanta area, thereby establishing the state as a distribution area for CPDs. Georgia Drugs and Narcotics Agency investigations indicate that pill mills have unique characteristics, including the ability to quickly relocate, nearly exclusive associations with specific pharmacies, the use of specific physicians, cash-based payment methods, and rapid examinations.

This is a public document that was readily available to the Defendants.

99.     Georgia remains flooded with an excessive amount of opioids. In 2017 – the latest year for which the DEA has made data publicly available – the amount of oxycodone distributed in Georgia was still more than four times as high as it was in 2000.[17]

100.    Year after year, distributors shipped more opioids to Georgia, pharmacies dispensed more opioids in the state, more opioids were diverted from the closed system of distribution for illegitimate use, and more Georgians became addicted, suffered physical, emotional, and economic harm, and died.

### C.     Criminal Prosecutions Warned that Diversion of Controlled Substances Was an Increasing Problem in Georgia

101.    In case after case, Georgia's District Attorneys and United States Attorneys have charged and convicted physicians who, while working at pill mill operations in Georgia, prescribed massive amounts of opioids, including oxycodone and hydrocodone. In a number of these cases, pill mill owners and others, including pharmacists, were also charged and convicted.

102.    By way of example, and not limitation, in each of the following cases a jury found one or more Georgia physicians guilty of conspiring to distribute controlled substances, including

---

[17] Also, in 2017, twice as much hydrocodone was distributed in Georgia as was in 2000, and almost five times as much hydromorphone was distributed as was in 2001.

oxycodone, hydrocodone, or both, in the State of Georgia.

| Case | Time of Conspiracy | Date Filed | Professional Convicted |
|------|--------------------|-----------|------------------------|
| *United States v. Green, et al.* No. 5:07-CR-00002 (M.D. Ga.) | January 2000 – July 2003 | 01/12/2007 | Spurgeon Green, Jr., M.D. |
| *United States v. Clark, et al.* No. 4:13-CR-00028 (S.D. Ga.) | September 2009 – December 2011 | 02/07/2013 | Najam Azmat, M.D. |
| *United States v. Enmon,* No. 2:13-CR-00004 (S.D. Ga.) | May 2011– December 2011 | 02/07/2013 | Cleveland J. Enmon, M.D. |
| *United States v. Biggs, et al.* No. 7:16-CR-00002 (M.D. Ga.) | May 25, 2011- February 4, 2014 | 02/10/2016 | William Bacon, M.D. Donatus O. Mbanefo, M.D. |

103.    Again by way of example, in addition to the above-referenced jury trials and convictions,

in the following cases Georgia physicians pled guilty to conspiring to distribute controlled

substances, including oxycodone, hydrocodone, or both, in the State of Georgia.

| Case | Time of Conspiracy | Date Filed | Professional Convicted |
|------|--------------------|-----------|------------------------|
| *United States v. Bird* No. 3:18-CR-00005 (S.D. Ga.) (originally indicted in *United States v. Bird*, No. 3:17-CR-00001 (S.D. Ga. March 8, 2017) | January 1, 2000 – June 3, 2015 | 03/08/2018 | George Mack Bird, III M.D. |
| *United States v. Ruble* No. 2:15-CR-00023 (S.D. Ga.) | July 13, 2011 – April 24, 2013 | 09/02/2015 | Paul Spencer Ruble, M.D. |

104.    These are just some of the prosecutions that took place in Georgia.   Numerous other

prosecutions throughout the country, especially in Florida, Kentucky, Tennessee, West Virginia,

and Ohio, also involved pill mill doctors who wrote prescriptions filled by pharmacies for which

Cardinal, McKesson, or Smith was a distributor.

1760708.1

### D.   The Opioid Epidemic in Glynn and Surrounding Counties

105.   The increase in opioid distribution in Glynn County and the surrounding area was particularly dramatic.  The distribution of oxycodone to zip codes beginning in 315 increased more than fivefold from 2000 to 2010.[18]  In 2017, the amount of oxycodone distributed to these zip codes was still more than three times what it was in 2000.[19]

106.   The Distributor Defendants played an active role in this significant increase, supplying pharmacies such as Defendants Altama Discount Pharmacy and Darien Pharmacy, each of which dramatically increased the amount of oxycodone they dispensed.  In fact, those pharmacies were among the highest dispensers of oxycodone in the entire state of Georgia.

107.   The dramatic increase in the distribution of opioids in Glynn County and the surrounding area was followed by an equally stark increase in opioid addiction, opioid-related deaths, treatment admissions, and emergency room visits.

108.   The foster care system in Glynn County has also been hit hard.  An October 2017 editorial in the Brunswick News noted that the rate of children removed because of substance abuse, which includes opioid abuse, has risen from 15 percent to 40 percent in Glynn County in the last few years.

### II.   Laws and Regulations Governing Controlled Substances

109.   The primary laws in Georgia governing the manufacture, distribution, and use of prescription and illicit opioids are the Georgia Controlled Substances Act (GCSA) and the Pharmacy Act.

---

[18] These zip codes include Glynn, Camden, Charlton, Brantley, Wayne, Appling, Jeff Davis, Telfair, Ben Hill, Coffee, Bacon, Pierce, and Ware Counties.

[19] Also, in 2017, twice as much hydrocodone was distributed to these zip codes as was in 2000 and five times as much hydromorphone were distributed to these zip codes as was in 2001.

1760708.1

26

110.    Under the authority granted to it by the GCSA and the Pharmacy Act, the Georgia Pharmacy Board regulates every link in the controlled substances distribution chain.

111.    The GCSA provides the primary legal regime through which the state (1) regulates and facilitates the lawful production, possession, and distribution of controlled substances, including opioids; (2) prevents diversion of controlled substances from legitimate purposes; and (3) punishes unauthorized activities involving controlled substances.

112.    The GCSA and the regulations enacted pursuant to it are intended to control the distribution of certain drugs by creating a closed system that prevents the diversion of those controlled substances from legitimate channels into illicit markets.

113.    Every person who distributes or dispenses any controlled substance within Georgia must obtain a registration issued by the Georgia Pharmacy Board.  O.C.G.A. § 16-13-35(a).

114.    A registrant may have its registration revoked or suspended if it violates any provision of the GCSA or any of the rules or regulations promulgated under it.  O.C.G.A § 16-13-37(a)(4).

A.    Georgia's Controlled Substances Schedules

115.    The degree of control imposed over a specific controlled substance depends upon whether it has a currently accepted medical use and the dangers posed by that medical use, such as the risk that a person taking the drug will abuse and/or become dependent upon it.

116.    The GCSA places controlled substances into in one of five "Schedules" based on their potential for abuse, whether there is an accepted medical use in treatment, and the extent to which abuse may lead to psychological or physical dependence.  *See* O.C.G.A. § 16-13-24.[20]

117.    Controlled substances in Schedule II have a "currently accepted medical use in treatment

---

[20] Controlled substances in "Schedule I," which includes heroin and cocaine, may not be lawfully prescribed.

in the United States or a currently accepted medical use with severe restrictions," "may lead to severe psychological or physical dependence," and have a "high potential for abuse." O.C.G.A. § 16-13-24(b)(2)(A)-(C). Schedule II substances are the most dangerous – and therefore the most carefully controlled – substances that may lawfully be prescribed in Georgia.

118.   Because Schedule II substances have such a high potential for abuse, their distribution and prescription is especially closely controlled. For example:

    a.   a Schedule II controlled substance prescription may not be refilled. Ga. Comp. R. & Regs. 480-22-.05;

    b.   a hard copy prescription drug order for a Schedule II controlled substance must be written on security paper and kept by a pharmacist in a separate file. Ga. Comp. R. & Regs. 480-22-.03(1)(b); 480-22-.04(7)(a); and

    c.   Schedule II controlled substances may only be distributed by a registrant to another registrant pursuant to an order form. O.C.G.A. § 16-13-40.

119.   Oxycodone,[21] hydrocodone,[22] hydromorphone,[23] oxymorphone,[24] morphine, and methadone are Schedule II controlled substances. O.C.G.A § 16-13-26(1)(A).

120.   Controlled substances in Schedule III have "a currently accepted medical use in treatment" and less potential for abuse than the drugs in Schedule II, but abuse of Schedule III substances may still "lead to moderate or low physical dependence or high psychological

---

[21] Prescription drugs containing oxycodone include OxyContin, Oxycet, Endocet, Roxicodone, Roxicet, Roxilox, Roxybond, Percocet, Percodan, and Tylox.
[22] The federal government reclassified hydrocodone from a Schedule III to a Schedule II controlled substance effective October 6, 2014. Prescription drugs containing hydrocodone include Lorcet, Lortab, Vicodin, and Norco.
[23] Prescription drugs containing Hydromorphone include Dilaudid and Exalgo.
[24] Prescription drugs containing oxymorphone include Opana and Opana ER.

dependence.". O.C.G.A. § 16-13-24(b)(3)(A)-(C).[25]

121.   Controlled substances in Schedule IV have "a currently accepted medical use in treatment" and a low potential for abuse relative to the drugs in Schedule III.  Abuse of a Schedule IV substance may still, however, "lead to limited physical dependence or psychological dependence" relative to Schedule III substances.  O.C.G.A. § 16-13-24(b)(4)(A)-(C).

122.   Carisoprodol,[26] tramadol,[27] and diazepam[28] are Schedule IV controlled substances.  O.C.G.A § 16-13-28; 21 C.F.R. § 1308.14(c)(16).  Alprazolam is also a Schedule IV controlled substance. O.C.G.A § 16-13-28(b); 21 C.F.R. § 1308.14(c)(2).  Prescription drugs containing alprazolam include Xanax.

### B.   Conduct That Is Not Expressly Permitted By The GCSA Is Unlawful

123.   The GCSA is framed largely in negative terms:  it establishes broad prohibitions and then provides limited exceptions that make certain acts pertaining to controlled substances permissible.  The starting point under the GCSA is that *"except as authorized by this article*, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance."  O.C.G.A § 16-13-30(b)(emphasis added).[29] As this language makes clear, if the GCSA does not expressly authorize an action pertaining to the delivery, distribution, dispensing, administration, sale, or possession with intent to distribute a controlled substance, that action is prohibited.

---

[25] Buprenorphine is a Schedule III controlled substance. O.C.G.A § 16-13-27(10). Prescription drugs containing buprenorphine include Suboxone, Subuttex, Butrans, and Buprenex.
[26] Prescription drugs containing carisoprodol include Soma.
[27] Prescription drugs containing tramadol include Ultram.
[28] Prescription drugs containing diazepam include Valium.
[29] The federal Controlled Substances Act uses the same approach.  Thus, 21 U.S.C. § 841(a)(1) provides that: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . .."

1760708.1

### C.   All Participants in the Closed System of Distributing Controlled Substances Have Non-Delegable Duties to Prevent Diversion

124.   Each step in the closed system created by the GCSA involves a specific role with specific requirements and obligations, and the closed system is specifically designed with multiple levels of security, record-keeping, investigation, and reporting obligations to ensure that controlled substances are not diverted and that any potential diversion is identified, stopped, and reported.

125.   For example, persons registered to distribute or dispense controlled substances are required to keep a complete and accurate record of all controlled substances on hand, received, manufactured, sold, dispensed, or otherwise disposed of, and must maintain those records and inventories in conformance with the record-keeping and inventory requirements of federal law and rules issued by the Georgia Pharmacy Board.  O.C.G.A. § 16-13-39.

126.   More specifically, wholesale drug distributors must maintain records tracking controlled substances from the moment they arrive at the distributor to the moment they leave.  Records are kept of the identity, date, and quantity of drugs received and shipped, where they came from, and where they go.  Georgia Rules and Regs. 480-7-.03(7)(f)(1).

127.   When registrants fail to fulfill their obligations – whether practitioners, pharmacies or distributors – these systemic controls fail.

### 1.   Doctors

128.   Pursuant to the GCSA, no person may prescribe a controlled substance or order the dispensing of a controlled substance unless they are a registered practitioner who is (1) licensed to prescribe controlled substances; (2) acting in the usual course of his professional practice; and (3) prescribing or ordering the controlled substances for a legitimate medical purpose.  O.C.G.A §§ 16-13-41(f)(1)-(3); 16-13-42(b).  It is a felony for any person, including a physician, to

prescribe or order the dispensing of a controlled substance in any circumstance in which these requirements are not met.

### 2.  Pharmacists and Pharmacies

129.   Georgia law also assigns specific responsibilities to, and imposes specific prohibitions on, pharmacies and pharmacists.

130.   A licensed pharmacist must be designated as the pharmacist in charge of each pharmacy in Georgia.  The pharmacist in charge is responsible and accountable for the conduct of the pharmacy and for ensuring that the pharmacy complies with all laws and rules concerning the distribution of drugs. Ga. Comp. R. & Regs. §§ 480-10-.02(3), 480-15-.01(d).

131.   Schedule II controlled substances may not be dispensed to an ultimate user without the written prescription of a registered practitioner. O.C.G.A. § 16-13-41(a).

132.   While the responsibility for the proper *prescribing* of controlled substances is upon the prescribing practitioner, the pharmacist is responsible for the proper *filling* of the prescription.

133.   Consequently, a pharmacist is never obligated to fill a prescription simply because it is presented by a patient or a doctor's office demands that it be filled.   A pharmacist that fills a prescription has a responsibility to make sure that only prescriptions issued for a legitimate medical purpose are being filled. O.C.G.A. § 26-4-80(b).

134.   In furtherance of these requirements, a pharmacist must review the patient record and each prescription drug order presented for dispensing to identify overutilization, misuse, abuse, and/or drug interaction problems for the drug prescribed. O.C.G.A § 26-4-84(b). If a pharmacist identifies any of these problems, the pharmacist must take appropriate steps to resolve the problem, including consulting with the prescribing doctor. O.C.G.A § 26-4-84(c).

### 3.   Distributors

135.   Because distributors handle large volumes of controlled substances, they are the first major line of defense against the movement of legal pharmaceutical controlled substances from legitimate channels into the illicit market.  Indeed, "distributors are *uniquely situated* to perform due diligence" to "reduce the possibility that controlled substances within the supply chain will reach locations they are not intended to reach."[30]  When distributors violate their legal duties, the closed system created by the GCSA fails.

136.   As the DEA warned in 2006: "given the extent of prescription drug abuse in the United States, along with the dangerous and potentially lethal consequences of such abuse, even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm."[31]

137.   Georgia law requires distributors to comply with all applicable Georgia laws and regulations regarding controlled substances.  Georgia law also incorporates applicable federal laws and regulations, making those independently enforceable under state law.  Ga. Comp. R. & Regs. 480-7-.03(10)(b).  Ensuring compliance with these laws and regulation is an obligation distributors must accept to obtain and maintain a license to distribute controlled substances.

138.   Distributors must maintain effective controls against diversion of controlled substances into illegitimate channels.  O.C.G.A. § 16-13-36(a)(1); Ga. Comp. R. & Regs. 480-7-.03(10)(b); 21 C.F.R. §1301.71.

139.   The reason for this requirement is simple: when highly addictive drugs flood into a community it is foreseeable – to the point of being a forgone conclusion – that a secondary,

---

[30] Health Distribution Management Association (n/k/a the Healthcare Distribution Alliance), *Industry Compliance Guidelines:  Reporting Suspicious Orders and Preventing Diversion of Controlled Substances*, at p.1 (2007) (emphasis added).
[31] Letter from Joseph T. Rannazzisi, Deputy Assist. Admin., Office of Diversion Control, to Cardinal Health (Sept. 27, 2006) (a copy of the letter is filed at Cardinal Health, Inc. v. Holder, No. 1:12-cv-00185-RBW, Doc. 14-51 (filed February 20, 2012)) at 2.

illegal "black" market will be created for those drugs.[32]  A flood of highly addictive drugs into a community injures that community and most seriously injures those who are close to and who rely upon the persons who become dependent upon those highly addictive drugs.

140.    To protect against this harm, Georgia law requires every drug wholesaler, distributor, and supplier registered under the GCSA to *automatically* submit reports to the GDNA of any excessive purchases of controlled substances by licensed persons or firms located within the state.  Failure to do so is a felony.  O.C.G.A § 26-4-115(e).

141.    Wholesale drug distributors must also maintain records of unusual orders and inform GDNA of unusual orders when they are discovered.  Ga. Comp. R. & Regs. 480-20-.02(1). Unusual orders include "orders of greatly increased quantity, orders deviating substantially from a normal pattern, and orders of highly abnormal frequency." *Id.*

142.    Georgia law also requires drug distributors to "design and operate a system to disclose to the registrant suspicious orders of controlled substances."    Ga. Comp. R. & Regs. 480-7-.03(10)(b); 21 C.F.R. § 1301.74(b).   Suspicious orders must be reported to the DEA when discovered by a distributor.  Suspicious orders *include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency. Id.*

143.    In addition to reporting all suspicious orders, a distributor must stop shipment of any order identified as suspicious and may not ship that order unless, after conducting due diligence, the distributor determines that the order is not likely to be diverted to illegal channels.[33]

144.    It is not sufficient that a distributor simply have a system to detect, identify, report,

---

[32] *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018).
[33] *Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212 (D.C. Cir. 2017); Ga. Comp. R. & Regs. 480-7-.03(10)(b); 21 U.S.C. § 823(b)(1), (e)(1); 21 C.F.R. §1301.71; *see also* Letter from Joseph T. Rannazzisi, Deputy Assis. Admin., Office of Diversion Control to Cardinal Health (Dec. 27, 2007) (a copy of the letter is filed at Cardinal Health, Inc. v. Holder, No. 1:12-cv-00185-RBW, Doc. 14-8 (filed in U.S. D.C. on February 20, 2012)).

investigate, and determine whether to ship excessive, unusual, and/or suspicious orders. That system must be effective against diversion.

145. In order to satisfy their obligations to prevent diversion, distributors are required to "employ adequate personnel with the education and experience necessary to safely and lawfully engage in the wholesale distribution of drugs." Ga. Comp. R. & Regs. 480-7-.03(5).

### III. The Distributor Defendants Ignored Warnings and Violated their Obligations to Prevent the Diversion of Controlled Substances

146. The Distributor Defendants knew their legal obligations, which were set forth under the Georgia Controlled Substances Act, the Georgia Pharmacy Act, and the Georgia rules and regulations enacted pursuant to those acts.

147. Distributor Defendants were aware of the opioid epidemic nationally and in Georgia, including dramatic increases in opioid overdoses and deaths. *See* ¶¶ 81-108, above.

148. Distributor Defendants were also aware of their own data that showed the amount of opioids and other controlled substances they each shipped to Georgia was skyrocketing (and was at levels beyond what would be expected from reasonable and legitimate use). And Distributor Defendants were repeatedly warned by the DEA about their failures to meet their obligations. *See* ¶¶ 150-189, below.

149. Despite this awareness and these warnings, Distributor Defendants persisted in violating their obligations, participated in and profited from the illegal marketing of controlled substances, and thereby harmed Plaintiffs.

### A. The Distributor Defendants Ignored Repeated Warnings.

150. Beginning no later than 2006, Distributor Defendants received a steady series of warnings and information showing that the diversion of controlled substances – particularly

oxycodone and hydrocodone – was increasing dramatically, and that their procedures for identifying, reporting, and determining whether to fill suspicious orders were not effective in preventing diversion.

151.   This information came from numerous sources, including but not limited to:

    a.   official correspondence from the DEA;[34]

    b.   DEA outreach programs, such as the Distributor Initiative Program;[35]

    c.   DEA regulatory enforcement proceedings;

    d.   federal and state criminal prosecutions;

    e.   reports and data generated by

        1.   federal agencies with healthcare responsibilities;[36]

        2.   other federal agencies, such as the General Accounting Office;

        3.   federal law enforcement agencies and related entities;[37]

    f.   professional journals such as the New England Journal of Medicine and the Journal of the American Medical Association;

    g.   the popular press, including newspapers, magazines, television and radio; and

---

[34] This correspondence included letters mailed by the DEA to every distributor licensed to distribute controlled substances, including those letters identified above at footnotes 31 and 33.

[35] In 2005 the DEA launched an anti-diversion initiative called the "Distributor Initiative Program." The goal of the initiative was to educate registrants on maintaining effective controls against diversion, and monitoring for and reporting suspicious orders. As part of the initiative, DEA sent warning letters to distributors and DEA personnel met directly with distributors about issues such as rogue pain clinics and reporting obligations.

[36] These agencies include the Department of Health and Human Services and its subordinate entities, including the Centers for Disease Control (CDC), the Substance Abuse and Mental Health Services Administration (SAMHSA), the Drug Abuse Warning Network (DAWN), the National Institute on Drug Abuse (NIDA), and the National Survey on Drug Use and Health (NSDUH, formerly the National Household Survey on Drug Abuse).

[37] The agencies and entities include the Office of National Drug Control Policy (ONDCP), the National Drug Intelligence Center (NDIC), the DEA and High Intensity Drug Trafficking Areas.

1760708.1

h.      Distributor Defendants' own sales data, as well as data they received from commercial sources such as IQVIA (f/k/a IMS Health) and drug manufacturers.

### 1.      Enforcement Proceedings Against Cardinal

152.    Cardinal has been the subject of multiple DEA enforcement proceedings specifically directed to its failure to prevent diversion.

153.    In 2007 and 2008, the DEA issued multiple Orders to Show Cause and Immediate Suspension of Registration against several of Cardinal's distribution facilities for failure to maintain effective controls against the diversion of controlled substances, including hydrocodone and oxycodone, and for its failure to report suspicious orders.

154.    On or about September 30, 2008, Cardinal entered into a Settlement and Release Agreement and Administrative Memorandum of Agreement with the DEA (Cardinal 2008 MOA) concerning several of its distribution facilities, including facilities licensed to ship prescription drugs to Georgia, such as those in Lakeland, Florida and McDonough, Georgia.

155.    Cardinal's Lakeland, Florida and McDonough, Georgia facilities distributed controlled substances, including oxycodone, to retail pharmacies in Glynn County.

156.    As part of its settlement with the government, Cardinal paid $34 million dollars in civil penalties including $1,500,000 for its failure to maintain effective controls against the diversion of controlled substances at its McDonough, Georgia distribution facility.

157.    The Cardinal 2008 MOA also addressed Cardinal's failure to report sales from seven distribution facilities as suspicious orders to the DEA when discovered as required by law.

158.    As part of its settlement, Cardinal agreed "to maintain a compliance program designed to detect and prevent diversion of controlled substances as required under the CSA and applicable

1760708.1

36

DEA regulations." This program was required to include procedures to review orders, to detect suspicious orders, and to determine whether such orders were legitimate and should be filled.

159.   Cardinal also agreed that it would review its distributions of oxycodone, hydrocodone, alprazolam, and phentermine to pharmacies for the preceding 18 months and identify any customers whose purchases were excessive.

160.   For each customer where that review revealed abnormal purchasing patterns, Cardinal also committed to conduct an investigation and take appropriate action.

161.   Cardinal did not comply with the Cardinal 2008 MOA.

162.   On February 2, 2012, the DEA issued an Order to Show Cause and Immediate Suspension of Registration against Cardinal's Lakeland, Florida distribution center for failure to maintain effective controls against the diversion of oxycodone.  This was the same distribution center that was the subject of a 2007 order for its failure to maintain effective controls against the diversion of hydrocodone and one of the facilities subject to the Cardinal 2008 MOA.

163.   In May of 2012, Cardinal entered into a second Administrative Memorandum of Agreement with the DEA (Cardinal 2012 MOA), in which Cardinal admitted "that its due diligence efforts for some pharmacy customers and its compliance with the [Cardinal] 2008 MOA, in certain respects, were inadequate."

164.   In the Cardinal 2012 MOA, Cardinal again agreed to maintain a compliance program designed to detect and prevent diversion of controlled substances as required under law.

165.   Cardinal further agreed that, within 120 days of the Cardinal 2012 MOA, it would commence procedures to ensure that any pharmacy placing orders of controlled substances that Cardinal knows or should know are suspicious in nature, would receive a site visit or inspection

to determine whether that customer's orders are being diverted. Cardinal further agreed to enhance its existing processes and practices for conducting due diligence reviews of pharmacies.

166.   Cardinal's authority to handle controlled substances at its Lakeland Distribution Facility was also suspended until May 15, 2014.

167.   Cardinal failed to comply with the Cardinal 2012 MOA.

168.   On December 23, 2016, Cardinal agreed to pay $44 million dollars in civil penalties to the United States to settle allegations that it and its subsidiary, Kinray, Inc., had violated the Controlled Substances Act by failing to report suspicious orders of controlled substances (the "Cardinal 2016 Settlement").

169.   As part of that 2016 Settlement, Cardinal expressly admitted that:

> "Between January 1, 2009 and May 14, 2012, Cardinal Lakeland failed to inform DEA that certain orders for controlled substances it received from some customers were suspicious, as required by 21 C.F.R. § 1301.74(b)."

170.   The orders referenced in this admission include orders shipped to Glynn County.

171.   Between January 1, 2009 and May 14, 2012, the Cardinal Lakeland facility and other Cardinal facilities also failed to report excessive purchases and unusual orders of controlled substances to GDNA as required by Georgia law.

172.   This failure took place during the explosive growth in Cardinal's distribution of oxycodone and other controlled substances to Glynn and neighboring counties.

## 2.   Enforcement Proceedings Against McKesson

173.   McKesson has also been the subject of multiple DEA investigations and sanctions specifically directed to its repeated failures to report and cease shipment of suspicious, high-volume opioid orders as required by law.

174.   At a September 1, 2005 meeting, the DEA warned McKesson that it was selling excessive amounts of hydrocodone to pharmacies filling illegitimate prescriptions.

175.   Nevertheless, McKesson continued selling hydrocodone to these pharmacies. As a result, millions of doses of controlled substances were diverted for illegitimate use.

176.   In 2006 and 2007, the DEA issued multiple Orders to Show Cause and Immediate Suspension of Registration against several of McKesson's distribution facilities — including three distribution centers licensed to distribute controlled substances to Georgia — for failure to maintain effective controls against diversion and for its failure to report suspicious orders.[38]

177.   On or about May 2, 2008, McKesson entered into a Settlement and Release Agreement and Administrative Memorandum of Agreement (McKesson 2008 MOA).  As part of the McKesson 2008 MOA, McKesson agreed to maintain a compliance program to detect and prevent diversion of controlled substances at all of its distribution centers and to report all suspicious orders as required by law.  It also agreed to a temporary suspension of its authority to distribute hydrocodone and alprazolam from its Lakeland, Florida and Conroe, Texas facilities. And McKesson agreed to review its distribution of hydrocodone and alprazolam for the preceding 24-month period, conduct an investigation, and take appropriate action regarding any customer whose purchases of either controlled substance was excessive.

178.   McKesson also agreed to pay $13.25 million in civil penalties.

179.   McKesson failed to comply with the McKesson 2008 MOA.

180.   Specifically, McKesson failed to design and implement an effective system to detect and

---

[38] These included: McKesson's Lakeland, Florida distribution center, which has been licensed by the Georgia Pharmacy Board to distribute drugs to Georgia since October 31, 2003; McKesson's Landover, Maryland distribution center, which was licensed to distribute drugs to Georgia from 2005 to 2013; and McKesson's Conroe, Texas distribution facility which has been licensed to distribute drugs to Georgia since 2005.

report suspicious orders from its pharmacy customers. And even after (eventually) designing a system to detect and report suspicious orders, the company failed to fully implement it.

181.    The DEA alleged that McKesson failed to maintain effective controls against diversion of controlled substances at several of its distribution centers, including the one in Lakeland, Florida. As a result, McKesson distributed controlled substances to pharmacies that were filling illegitimate prescriptions for controlled substances.

182.    In part, this stemmed from McKesson's failure to conduct adequate due diligence of its customers. The company also bypassed its own suspicious order reporting procedures.

183.    As a result of these and other failures, on January 5, 2017, McKesson entered into a Settlement Agreement and Release and a Memorandum of Agreement and a Compliance Addendum thereto (collectively, the McKesson 2017 MOA).

184.    As part of the settlement, McKesson agreed to pay a record $150 million fine.

185.    McKesson also agreed to enhance its compliance program and suspend sales of controlled substances from multiple distribution centers for multiple years.

186.    In the McKesson 2017 MOA, the company acknowledged that at various times from January 1, 2009 through January 17, 2017, it did not identify or report to DEA all of the suspicious orders it was required by law to report.

187.    At various times from January 1, 2009 through January 17, 2017, McKesson distributed controlled substances to pharmacies in Glynn County.

188.    Between January 1, 2009 and January 17, 2017, the McKesson Lakeland facility and other McKesson facilities distributing controlled substances failed to report excessive purchases and unusual orders of controlled substances to the GDNA as required by Georgia law.

1760708.1

40

189.    This failure took place during the explosive growth in McKesson's distribution of oxycodone and other controlled substances to Glynn and neighboring counties.

### 3.    Enforcement Proceedings Against Smith

190.    In June 2012, the Attorney General of West Virginia filed suit against a number of pharmaceutical distributors, including Smith. The Attorney General alleged that Smith supplied controlled substances to pharmacies that filled illegitimate prescriptions and that Smith was an integral part of the pill mill distribution system in West Virginia.

191.    Like Georgia, West Virginia law requires distributors to maintain effective controls against the diversion of controlled substances, to identify suspicious orders, and to notify the state of such orders when discovered.

192.    The Attorney General alleged that from 2007 to 2012, Smith had failed to maintain effective controls against diversion and failed to identify and report suspicious orders.

193.    From at least 2007 to 2012, Smith also failed to maintain effective controls against diversion and failed to identify and report suspicious orders of controlled substances it distributed in Georgia.

194.    In November 2016, Smith agreed to pay $400,000 to resolve the claims against it.

## IV.    Each of the Defendants Participated in the Illegal Marketing of Controlled Substances

### A.    The Illegal Marketing of Controlled Substances

195.    Under the Georgia Drug Dealer Liability Act, a person participates in the illegal marketing of a controlled substance by distributing, attempting to distribute, or conspiring to distribute a controlled substance in violation of state or federal law.

### 1.    Distributors

196.    Each Distributor Defendant has participated in the illegal marketing of controlled substances by distributing, attempting to distribute, or conspiring to distribute a controlled substance in violation of state and federal law. These violations included felonies.

197.    In particular, Cardinal, McKesson, and Smith committed a felony each time they failed to report an excessive purchase of controlled substances to the GDNA. Cardinal, McKesson, and Smith have each failed to submit numerous excessive purchase reports.

198.    Each Distributor Defendant is also required to report unusual orders to the GDNA and suspicious orders to the DEA. And each Distributor Defendant is required to conduct due diligence on all suspicious orders before shipping any such order to make sure that the controlled substances ordered are not likely to be diverted into illegal channels. Cardinal, McKesson, and Smith have each failed to submit numerous mandated reports on unusual and suspicious orders, and have shipped such orders without completing the required due diligence.

199.    For example, from 2007 to 2008 the volume of oxycodone Cardinal distributed to Altama Discount Pharmacy increased 68 percent and the number of transactions increased 70 percent. From 2008 to 2009, the volume of oxycodone Cardinal distributed to the pharmacy more than doubled -- increasing another 106 percent -- and the number of transactions increased another 50 percent. And from 2009 to 2010, the volume of oxycodone Cardinal distributed to Altama Discount Pharmacy increased another 52 percent. Yet Cardinal failed to submit a single excessive purchase report to GDNA for the dramatically increased orders of oxycodone to that pharmacy in 2008, 2009, or 2010.

200.    In 2009, Cardinal distributed more oxycodone to Darien Pharmacy than it had in the prior three years combined. In 2010, Cardinal almost doubled the 2009 amount of oxycodone

distributed.   And in 2011, it almost doubled the amount of oxycodone it distributed to the pharmacy in 2010.   Yet Cardinal failed to submit a single excessive purchase report to GDNA for the dramatically increased orders of oxycodone to Darien Pharmacy in 2009, 2010, or 2011.

201.   Again, by way of example, and not limitation, from 2010 to 2011 the volume of hydrocodone McKesson distributed to the Winn-Dixie pharmacy at 4404 Altama Avenue in Brunswick increased more than 500 percent, and that pharmacy was in the top three percent of all Georgia pharmacies for hydrocodone distribution in 2011.   Yet McKesson did not submit a single excessive purchase report to GDNA for the dramatically increased orders of hydrocodone to that pharmacy in 2011.

202.   As a further example, Smith distributed oxycodone to Whitaker's Pharmacy in Screven, Georgia.   The volume of oxycodone distributed by Whitaker's Pharmacy between 2010 and 2011 increased tenfold.   Yet Smith did not submit a single excessive purchase report to GDNA for the dramatically increased orders of oxycodone to that pharmacy in 2011.   Smith also distributed oxycodone to City Drug Store in Brunswick, Georgia.   The volume of oxycodone distributed by City Drug Store increased fourfold between 2009 and 2010, and in both 2010 and 2011, it was among the top seven pharmacies for oxycodone distribution in Georgia.   But Smith did not submit a single excessive purchase report for oxycodone to City Drug Store in 2010 or 2011.

203.   The distribution of opioids in ever-increasing quantities that exceed any legitimate medical need also demonstrates that Distributor Defendants failed to maintain effective controls against diversion in violation of state and federal law, as well as their common law duty of care.

### 2.   Pharmacies

204.   Each Pharmacy Defendant participated in the illegal marketing of controlled substances in violation of state and federal law.   Many of these violations involved felonies.

205.   In particular, each Pharmacy Defendant committed a crime each time they provided controlled substances to a drug abuser without reviewing the patient record and prescription for overutilization, misuse, and/or abuse.

206.   The Pharmacy Defendants also recognized that drug abusers were presenting prescriptions that evidenced overutilization, misuse, and/or abuse of a controlled substance, but failed to take appropriate steps to resolve that problem, and instead filled those prescriptions.

207.   Further, the Pharmacy Defendants violated state and federal law by delivering controlled substances to drug abusers by filling prescriptions that were not issued for a legitimate medical purpose by a doctor acting in the usual course of professional practice.

208.   Altama Discount Pharmacy, Rainbow Drug Store, Darien Pharmacy, Woodbine Pharmacy, and City Drug Store each filled hundreds, if not thousands, of illegitimate prescriptions for controlled substances.

209.   In particular, each of the Pharmacy Defendants filled prescriptions written by several of the following doctors:

  a. Dr. Paul Ruble, who practiced at a pill mill called Apex Health & Wellness in Brunswick, Georgia and pled guilty to conspiring to intentionally distribute and dispense controlled substances unlawfully, including oxycodone, hydrocodone, hydromorphone, morphine, methadone, alprazolam, and carisoprodol not for a legitimate medical purpose and not in the usual course of professional practice (*see* ¶ 103, above);

  b. Dr. Najam Azmat, who practiced at a pill mill called East Health Center in Garden City, Georgia and was convicted and found guilty on 52 counts of

violating federal law, including conspiring to intentionally distribute and dispense controlled substances unlawfully including oxycodone, hydrocodone, and alprazolam not for a legitimate medical purpose and not in the usual course of professional practice (*see* ¶ 102, above);

c.    Dr. Cleveland Enmon, who practiced at two pill mills – Brunswick Wellness in Brunswick, Georgia and Ocean Care in Jesup, Georgia – and found guilty on dozens of counts of violating federal law, including intentionally conspiring to dispense controlled substances unlawfully, including oxycodone, hydrocodone, alprazolam, and diazepam not for a legitimate medical purpose and not in the usual course of professional practice (*see* ¶ 102, above);

d.    Dr. William Bacon, who practiced at the Wellness Center of Valdosta in Valdosta, Georgia and was found guilty of conspiring to intentionally distribute and dispense controlled substances, including oxycodone, hydrocodone, hydromorphone, alprazolam, carisoprodol, diazepam, and zolpidem not for a legitimate medical purpose and not in the usual course of professional practice (*see* ¶ 102, above);

e.    Dr. Russell Sachs, who pled guilty to writing illegitimate prescriptions for controlled substances;

f.    Dr. Derek Thorpe, who practiced in Savannah, Georgia and Jacksonville Beach, Florida. Thorpe voluntarily relinquished his Florida medical license after the Florida Board of Medicine alleged that he inappropriately and excessively prescribed oxycodone, hydrocodone, morphine, alprazolam, and carisoprodol to multiple patients without justification. His medical license in Georgia has lapsed;

g.    Dr. Fred J. Powell, a board certified OB-Gyn, who practices in Florida and operates a purported pain management clinic in Kingsland, Georgia. Powell has been disciplined by the Florida Board of Medicine for inappropriately and/or excessively prescribing controlled substances, including oxycodone and Xanax, to multiple patients without justification;

h.    Dr. Ulysses Findley, who practices in Jacksonville, Florida. Findley has been disciplined by the Florida Board of Medicine for inappropriately and/or excessively prescribing controlled substances, including oxycodone, OxyContin, methadone, Roxicodone, Vicodin, Lortab, hydrocodone, Xanax, Valium, and Soma, to multiple patients without justification;

i.    Dr. Harold Laski, who practices in Jacksonville, Florida. Laski has been disciplined by the Florida Board of Medicine for inappropriately and/or excessively prescribing controlled substances, including Percocet (oxycodone), Lortab (hydrocodone), and Valium (diazepam) to multiple patients without justification;

j.    Sandra Lindstrom, P.A., who co-owned S&P Medical Clinic in Jacksonville, Florida.[39] Lindstrom was indicted for illegally writing numerous prescriptions for large quantities of controlled substances that were not issued in the usual course of professional practice and for a legitimate medical need.

---

[39] S&P Medical Clinic was a pill mill. Lindstrom nominally practiced under Dr. David A. Maurer, a pathologist, at S&P Medical. Dr. Maurer pled guilty to trafficking in hydrocodone relating to S&P Medical's practice. The other co-owner of S&P Medical, Electus Pete Slater, pled guilty to money laundering.

1760708.1

**B.    The Cardinal, McKesson, and Smith Controlled Substances Distribution Conspiracies**

210.   Cardinal conspired with pharmacies and pharmacists — including but not limited to the Cardinal Pharmacy Defendants — to distribute controlled substances in violation of state and federal law, so that the conspirators could profit from that distribution (the Cardinal Controlled Substances Distribution Conspiracy).

211.   McKesson conspired with pharmacies and pharmacists — including but not limited to the McKesson Pharmacy Defendants — to distribute controlled substances in violation of state and federal law, so that the conspirators could profit from that distribution (the McKesson Controlled Substances Distribution Conspiracy).

212.   Smith conspired with pharmacies and pharmacists — including but not limited to Whitaker's Pharmacy and City Drug Store and the pharmacists at those pharmacies — to distribute controlled substances in violation of state and federal law, so that the conspirators could profit from that distribution (the Smith Controlled Substances Distribution Conspiracy).

213.   In each of the conspiracies described in paragraphs 208 to 210 above, the co-conspirators understood that in order to profit from distributing quantities of controlled substances that substantially succeeded any legitimate medical need, it was necessary for persons at various levels of the controlled substance distribution chain to violate their obligations under state and federal law.  If there were not pharmacies willing to fill illegitimate prescriptions, and distributors willing to supply such pharmacies, these controlled substances distribution conspiracies would have collapsed.  Unfortunately, Cardinal, McKesson, and Smith were willing to work with these pharmacies to achieve a common unlawful objective:  profiting through the unlawful distribution of controlled substances.

214.   Cardinal directly distributed drugs to each of the pharmacies that participated in the Cardinal Controlled Substances Distribution Conspiracy, including the Cardinal Pharmacy Defendants, and therefore knew both the identity of each pharmacy and the exact amount of controlled substances it distributed to each.   Cardinal knew the exact amount and type of every controlled substance it distributed to each Pharmacy Defendant in the conspiracy.

215.   Cardinal had long-term relationships with the pharmacies that participated in the Cardinal Controlled Substances Distribution Conspiracy.   Cardinal filled numerous orders for each of these pharmacies, and did so over periods of months and years.   As a result, Cardinal was fully aware that these pharmacies were making excessive purchases of controlled substances and that their orders were unusual and suspicious.   Cardinal filled those orders and failed and refused to report those excessive purchases and unusual and suspicious orders.

216.   McKesson directly distributed drugs to each of the pharmacies that participated in the McKesson Controlled Substances Distribution Conspiracy, including the McKesson Pharmacy Defendants.   McKesson knew the exact amount and type of every controlled substance it distributed to each Pharmacy Defendant in the conspiracy.

217.   McKesson had long-term relationships with the pharmacies that participated in the McKesson Controlled Substances Distribution Conspiracy.   McKesson filled numerous orders for each of these pharmacies, and did so over periods of months and years.   As a result, McKesson was fully aware that these pharmacies were making excessive purchases of controlled substances and that their orders were unusual and suspicious.   McKesson filled those orders and failed and refused to report those excessive purchases and unusual and suspicious orders.

218.   Smith directly distributed drugs to each of the pharmacies that participated in the Smith Controlled Substances Distribution Conspiracy.   Smith knew the exact amount and type of every

controlled substance it distributed to each Pharmacy Defendant in the conspiracy.

219.    Smith had long-term relationships with the pharmacies that participated in the Smith Controlled Substances Distribution Conspiracy. Smith filled numerous orders for each of these pharmacies, and did so over periods of months and years. As a result, Smith was fully aware that these pharmacies were making excessive purchases of controlled substances and that their orders were unusual and suspicious. Smith filled those orders and failed and refused to report those excessive purchases and unusual and suspicious orders.

220.    Each of the pharmacies that conspired with Cardinal, McKesson, and/or Smith to illegally distribute controlled substances directly filled hundreds if not thousands of prescriptions that were written outside the course of usual medical practice and without a legitimate medical need. For each of those prescriptions, the pharmacy knew which doctor wrote it, the identity and quantity of the drugs distributed, and how many similar prescriptions it was receiving from that doctor. Cardinal, McKesson, and Smith also knew or should have known this information for each of the pharmacies to which they distributed controlled substances.

221.    Cardinal, McKesson, and Smith were each subject to state and federal requirements to "know your customer." The "know your customer" requirement is part of maintaining a system that is effective at detecting and preventing diversion.

222.    In order to profit from filling unlawful prescriptions for controlled substances, a Pharmacy Defendant needs a distributor willing to supply it with excessive amounts of controlled substances. The Pharmacy Defendants found willing partners in Cardinal, McKesson, and Smith, each of which shipped excessive orders of controlled substances to these pharmacies and concealed those orders by not reporting them as required by law.

223.   As a result:

a.   Cardinal and the Cardinal Pharmacy Defendants profited from the Cardinal Controlled Substances Distribution Conspiracy;

b.   McKesson and the McKesson Pharmacy Defendants profited from the McKesson Controlled Substances Distribution Conspiracy; and

c.   Smith and the pharmacies and pharmacists that conspired with it profited from the Smith Controlled Substances Distribution Conspiracy.

## V.   The Defendants' Violations of their Duties and Participation in the Illegal Marketing of Controlled Substances Harmed the Plaintiffs

224.   Distributor Defendants routinely ignored warning signs or "red flags" that pharmacies, including Pharmacy Defendants, to which they were distributing controlled substances were filling unlawful prescriptions.  Month after month and year after year, the distributors accepted and shipped excessive orders for oxycodone and other controlled substances to pharmacies.

225.   The red flags ignored by Distributor Defendants included:

a.   that one or more physicians were writing a disproportionate share of the prescriptions for controlled substances being filled by a pharmacy;

b.   that prescriptions being filled were written by physicians located a significant distance from a pharmacy;

c.   that a large quantity of a pharmacy's customers were paying cash for controlled substance prescriptions;

d.   that a high percentage of a pharmacy's purchases were for controlled substances; and

e.  that a pharmacy ordered an excessive amount of a particular controlled substance in comparison to what is purchased by a typical retail pharmacy.

226.  Distributor Defendants also shipped increasing quantities of controlled substances known to be prescribed in combination by pill mill doctors to drug abusers who sought to achieve effects as similar as possible to heroin, and Pharmacy Defendants continued to fill those prescriptions.  These drug combinations were an obvious red flag that prescriptions were not being filled for a legitimate medical purpose.  One such combination – oxycodone, alprazolam, and carisoprodol – was so dangerous it was known as the "unholy trinity."  This drug combination is particularly dangerous because each of the three drugs is a central nervous system depressant.  There is no legitimate medical need for this combination of drugs, and no physician acting in the usual course of professional practice would prescribe this combination.

227.  Defendant Distributors continuously shipped increasing amounts of opioids and other controlled substances into Glynn and surrounding counties, and Pharmacy Defendants used those drugs to fill prescriptions issued without any legitimate medical purpose.  There was no dramatic increase in the local population, no large new medical facilities, and nothing else that would legitimately explain the dramatically increased sales of these drugs by Pharmacy Defendants.  Acting in concert, the Distributor Defendants and Pharmacy Defendants contributed to and profited from the addictions caused by the controlled substances they supplied.

228.  As discussed below, the addictions fueled by the illegal conduct of Distributor Defendants and Pharmacy Defendants led to the physical, mental, emotional, and economic injuries suffered by Plaintiffs.

A.  **Plaintiffs K.L.M., Madison Miller, and Joseph Poppell**

229.  Kim Miller is the mother of K.L.M. and Madison Miller and the brother of Joseph

1760708.1

51

Poppell.

230. Kim is an individual drug abuser as that term is defined by the DDLA. She obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose and distributed by pharmacies and pharmacists that knew such prescriptions were not valid.

231. The following doctors issued Kim prescriptions for opioids and other controlled substances outside the normal course of professional practice and not for a legitimate medical purpose: Dr. Spurgeon Green; Dr. William Nelson; Sandra Lindstrom, P.A.; Dr. Ulysses Findley; Dr. Derek Thorpe; Dr. Cleveland Enmon; Dr. Paul Ruble; Dr. Russell Sachs; Dr. Fred Powell; and Dr. Harold Laski.

232. These doctors wrote prescriptions for drugs containing oxycodone, hydrocodone, alprazolam, carisoprodol, gabapentin, amphetamine, methadone, morphine, and hydromorphone.

233. Kim filled prescriptions issued by these doctors outside the normal course of professional practice and not for a legitimate medical purpose at, among other places: Darien Pharmacy; Walgreens; Winn-Dixie; Woodbine Pharmacy; and CVS.

234. In addition, Defendant Colter, the pharmacist in charge of Darien Pharmacy, provided Kim with controlled substances even without a prescription.

235. Kim also obtained diverted controlled substances from other individuals that had obtained them outside the normal course of professional practice and not for a legitimate medical purpose.

236. The distributor(s) for each of the pharmacies above knew that these pharmacies were delivering controlled substances to drug abusers like Kim and that controlled substances were

being diverted, including:

a.   Cardinal, which distributed some or all of the controlled substances that Darien Pharmacy, Walgreens, CVS, and Winn-Dixie illegally delivered to Kim; and

b.   McKesson, which distributed some or all of the controlled substances that Darien Pharmacy and Winn-Dixie illegally delivered to Kim.

237.   As a result of Defendants Cardinal, McKesson, Darien Pharmacy, and Woodbine distributing controlled substances illegally to Kim, Kim was dependent upon controlled substances for more than a decade. As a result of this dependency fueled by Defendants, Kim caused physical, mental, emotional, and economic harm to her daughters K.L.M., and Madison Miller, and her brother Joseph Poppell.

238.   Much of Madison's and K.L.M.'s childhood was unstable and marred by their mother's addiction. They have sometimes lived with their grandmother because their parents lost custody of them. They have also sometimes lived with their mother in a motel occupied by drug abusers. Both Madison and K.L.M. suffered trauma while living in that motel. K.L.M. also had to live in a group foster home for some time. For extended periods growing up they lived off fast food, food from vending machines, and what food they could purchase with limited food stamps.

239.   Madison and K.L.M. have both witnessed violent domestic altercations involving Kim.

240.   There was a period of almost two years during which K.L.M. did not attend school.

241.   Kim was unable to regain custody of K.L.M. because Kim could not pass a drug test.

242.   Around December 2017, after leaving the group foster home, K.L.M. began to live with her uncle Joseph Poppell full time. Joe now has custody of K.L.M., who has not seen her mother in over a year.

243.    Before her addiction, Kim and Joe had a good relationship, and Kim was a good person. Since becoming addicted to drugs, Kim has broken into Joe's house and stolen from him.

244.    Madison remembers Kim being a good mother before her drug abuse escalated. However, all she knew from later years was a mother ravaged by drug abuse.

### B.    Plaintiffs J.B., B.M., and K.M.M.

245.    Tammy Bailey is the mother of J.B., B.M., and K.M.M.

246.    Tammy is an individual drug abuser as that term is defined by the DDLA. She obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose that were filled by pharmacies and pharmacists that knew such prescriptions were not valid.

247.    Richard Scott Miller is the father of B.M., and K.M.M.

248.    Scott is an individual drug abuser as that term is defined by the DDLA. He obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose that were filled by pharmacies and pharmacists that knew such prescriptions were not valid.

249.    The following doctors issued Tammy prescriptions outside the normal course of professional practice and not for a legitimate medical purpose: Dr. Najam Azmat; Dr. Cleveland Enmon; and Dr. Paul Ruble.

250.    These doctors wrote prescriptions for drugs containing oxycodone, hydrocodone, and alprazolam.

251.    Tammy filled these prescriptions issued by these doctors outside the normal course of professional practice and not for a legitimate medical purpose at, among other places: Darien

Pharmacy; Altama Discount Pharmacy; Whitaker's Pharmacy; City Drug Store; and Winn-Dixie.

252. Tammy gave Scott some of the opioids she obtained from these pharmacies.

253. Tammy also obtained diverted controlled substances from other individuals who had obtained them outside the normal course of professional practice and not for a legitimate medical purpose.

254. Scott obtained prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose from, among others, Dr. Paul Ruble.

255. Scott filled these prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose at, among other places, Darien Pharmacy.

256. The distributor(s) to each of the pharmacies above knew that these pharmacies were delivering controlled substances to drug abusers like Tammy and Scott and that controlled substances were being diverted, including:

    a.    Cardinal, which distributed some or all of the controlled substances that Darien Pharmacy, Altama Discount Pharmacy, and Winn-Dixie illegally delivered to Tammy and Scott;

    b.    McKesson, which distributed some or all of the controlled substances that Winn-Dixie, Darien Pharmacy, and Altama Discount Pharmacy illegally delivered to Tammy; and

    c.    Smith, which distributed some or all of the controlled substances that Whitaker's Pharmacy and City Drug Store illegally delivered to Tammy.

257. As a result of Defendants Cardinal, McKesson, Smith, Darien Pharmacy, Altama Discount Pharmacy, and City Drug Store distributing controlled substances illegally to Tammy,

1760708.1

she remained dependent upon controlled substances for several years.

258.   As a result of Defendants Cardinal, McKesson, and Darien Pharmacy's illegal distribution of controlled substances, Scott became dependent upon controlled substances and remained dependent until he died from a prescription opioid overdose in October 2013.

259.   As a result of this dependency fueled by Defendants, Tammy and Scott caused physical, mental, emotional, and economic harm to J.B., B.M., and K.M.M.

260.   In particular, a significant portion of J.B.'s, B.M.'s, and K.M.M.'s childhood was unstable and marred by their parents' addiction.   As a result of Tammy's addiction, J.B. lived with a guardian, and B.M. and K.M.M. were each held back one grade level in school.   They have also been homeless at various times.

   C.   Plaintiffs K.L.H., A.G., S.G., K.G.H., and Chrei Jones

261.   Brandy Turner is the mother of K.L.H., A.G., S.G., and K.G.H.

262.   Brandy is an individual drug abuser as that term is defined by the DDLA.   She obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose and distributed by pharmacies and pharmacists that knew such prescriptions were not valid.

263.   The following doctors issued Brandy prescriptions outside the normal course of professional practice and not for a legitimate medical purpose: Dr. Ulysses Findley; and Dr. Harold Laski.   .

264.   These doctors wrote prescriptions for drugs containing oxycodone, hydrocodone, alprazolam, carisoprodol, and hydromorphone.

265.   Brandy filled these prescriptions issued by these doctors outside the normal course of

professional practice and not for a legitimate medical purpose at, among other places: Altama Discount Pharmacy; Woodbine Pharmacy; Darien Pharmacy; and City Drug Store.

266.   Brandy also obtained diverted controlled substances from other individuals that had obtained them outside the normal course of professional practice and not for a legitimate medical purpose.

267.   The distributor(s) for each of the pharmacies above knew that these pharmacies were delivering controlled substances to drug abusers like Brandy and that controlled substances were being diverted, including:

   a.   Cardinal, which distributed some or all of the controlled substances that Altama Discount Pharmacy and Darien Pharmacy illegally delivered to Brandy;

   b.   McKesson, which distributed some or all of the controlled substances that Altama Discount Pharmacy and Darien Pharmacy illegally delivered to Brandy; and

   c.   Smith which distributed some or all of the controlled substances that City Drug Store illegally delivered to Brandy.

268.   As a result of Defendants Cardinal, McKesson, Smith, Altama Discount Pharmacy, Darien Pharmacy, City Drug Store and Woodbine Pharmacy distributing controlled substances illegally to Brandy, she remained dependent upon controlled substances from in or around 2006 to in or around 2017.

269.   As a result of this dependency fueled by Defendants, Brandy caused physical, mental, emotional, and economic harm to K.L.H., A.G., S.G., K.G.H., and Chrei Jones.

270.   In particular a significant portion of K.L.H.'s, A.G.'s, S.G.'s, and K.G.H.'s childhood was unstable and marred by their mother's addiction.

1760708.1

271.    In 2006, Brandy lost custody of K.L.H., A.G., and S.G.  K.L.H., then five years old, went to live with her father in Florida, who has had custody of K.L.H. since then.  A.G., two years old, and S.G., one year old, were placed with foster parents.

272.    After spending about six months in foster care A.G. and S.G.'s aunt was able to obtain custody of them, and they lived with her until 2012.  In 2012, A.G. and S.G.'s great-grandmother obtained custody of them.

273.    K.G.H. was born in 2008.  When she was two months old, Brandy went to an incarceration and rehabilitation facility for nine months.  During this time, K.G.H. lived with Chrei Jones.  K.G.H. later also lived with her great-grandmother.

274.    A.G., S.G., and K.G.H. remained with their great-grandmother until Brandy stopped abusing drugs and regained custody of them in 2017.

**D.     Plaintiff S.T.**

275.    Scott Turner is the father of S.T.

276.    Scott is an individual drug abuser as that term is defined by the DDLA.  He obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose and distributed by pharmacies and pharmacists that knew such prescriptions were not valid.

277.    The following doctors issued Scott prescriptions outside the normal course of professional practice and not for a legitimate medical purpose: Dr. William Nelson; and Dr. Russell Sachs.

278.    These doctors wrote prescriptions for drugs containing oxycodone, hydrocodone, alprazolam, carisoprodol, and methadone.

279.   Scott filled these prescriptions issued by these doctors outside the normal course of professional practice and not for a legitimate medical purpose at, among other places: Rainbow Pharmacy; Altama Discount Pharmacy; Woodbine Pharmacy; Darien Pharmacy; Winn-Dixie; and City Drug Store.

280.   Scott also obtained diverted controlled substances from other individuals who had obtained them outside the normal course of professional practice and not for a legitimate medical purpose, including another drug abuser that received controlled substances from Woodbine Pharmacy without a prescription.

281.   The distributor(s) to each of the pharmacies above knew that these pharmacies were delivering controlled substances to drug abusers like Scott and that controlled substances were being diverted, including:

      a.   Cardinal, which distributed some or all of the controlled substances that Rainbow Pharmacy, Altama Discount Pharmacy, Darien Pharmacy, and Winn-Dixie illegally delivered to Scott;

      b.   McKesson, which distributed some or all of the controlled substances that Altama Discount Pharmacy, Darien Pharmacy, and Winn-Dixie illegally delivered to Scott; and

      c.   Smith, which distributed some or all of the controlled substances that City Drug Store illegally delivered to Scott.

282.   As a result of Defendants Cardinal, McKesson, Smith, Rainbow Pharmacy, Altama Discount Pharmacy, Darien Pharmacy, City Drug Store, and Woodbine Pharmacy distributing controlled substances illegally to Scott, he remained dependent upon controlled substances from

in or around 2003 to in or around 2017.

283.    As a result of this dependency fueled by Defendants, Scott caused physical, mental, emotional, and economic harm to S.T.

284.    In particular a significant portion of S.T.'s childhood was unstable and marred by his father's addiction.  Scott lost custody of S.T., who went to live with his grandmother.

       E.    **Plaintiff Estate of Bentley Scott Turner**

285.    Brandy and Scott Turner are the parents of Bentley Scott Turner.

286.    Brandy used Subutex, Roxicodone, and Xanax while she was pregnant with Bentley.

287.    Bentley was born one month premature on February 13, 2015.

288.    Bentley was born with an opioid dependency.

289.    Bentley died on March 16, 2016.

290.    Bentley's death, and the pain and suffering he experienced during his tragically short life, was the result of Brandy and Scott's addiction, which was fueled by Defendants Cardinal, McKesson, Smith, Altama Discount Pharmacy, Darien Pharmacy, Rainbow Drug Store, City Drug Store, and Woodbine Pharmacy's illegal distribution of controlled substances. *See* ¶¶ 265, 267-68, 279, 281-82, above.

       F.    **Plaintiffs Bryson Guest, J.G., and M.G.**

291.    Michael Guest was the father of Bryson Guest, J.G., and M.G.

292.    Michael is an individual drug abuser as that term is defined by the DDLA.  He obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose and distributed by pharmacies and pharmacists

that knew such prescriptions were not valid.

293.   The following doctors issued Michael prescriptions outside the normal course of professional practice and not for a legitimate medical purpose: Dr. Russell Sachs; and Dr. Cleveland Enmon.

294.   These doctors wrote prescriptions for drugs containing oxycodone, hydrocodone, alprazolam, and carisoprodol.

295.   Michael filled these prescriptions issued by these doctors outside the normal course of professional practice and not for a legitimate medical purpose at, among other places: Woodbine Pharmacy; and City Drug Store.

296.   The distributor(s) to each of the pharmacies above knew that these pharmacies were delivering controlled substances to drug abusers like Michael and that controlled substances were being diverted, including Smith, which distributed some or all of the controlled substances that City Drug Store illegally delivered to Michael.

297.   As a result of Defendants Smith, City Drug Store, and Woodbine Pharmacy distributing controlled substances illegally to Michael, he remained dependent upon controlled substances from in or around 2003 until he died from a prescription opioid overdose on December 7, 2011. A toxicology report following Michael's death showed the following opioids and other controlled substances in his system: oxycodone; hydrocodone; alprazolam; carisoprodol; and meprobamate.

298.   As a result of this dependency fueled by Defendants, Michael caused physical, mental, emotional and economic harm to Bryson Guest, J.G., and M.G.

299.   Bryson Guest, J.G., and M.G. were 11, 4, and 6, respectively, when they lost their father.

1760708.1

300.    Bryson Guest, J.G., and M.G. spent a significant portion of their childhood raised by a single mother who struggled to provide for them financially as Michael was the primary income earner in the family prior to his death.

### G.    Plaintiffs A.T., R.T., E.T., and Memorie Tindall

301.    Ethan Tindall is the father of A.T., R.T., and E.T., and the husband of Memorie Tindall.

302.    Ethan is an individual drug abuser as that term is defined by the DDLA.  He obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose and distributed by pharmacies and pharmacists that knew such prescriptions were not valid.

303.    Ethan did not obtain prescriptions directly from doctors.  Rather he paid for the doctors visits of other individuals and took them to obtain prescriptions issued by doctors outside the normal course of professional practice and not for a legitimate medical purpose, including the following: Dr. Russell Sachs; Dr. Harold Laski; Dr. Derek Thorpe; Dr. William Nelson; Dr. Paul Ruble; and Dr. Frank Bynes.

304.    These doctors wrote prescriptions for drugs containing oxycodone and hydrocodone.

305.    Ethan took people to fill the prescriptions issued by these doctors outside the normal course of professional practice and not for a legitimate medical purpose at, among other places: Darien Pharmacy; Woodbine Pharmacy; City Drug Store; and CVS.

306.    The distributor(s) to each of the pharmacies above knew that these pharmacies were delivering controlled substances to drug abusers and that controlled substances were being diverted, including:

    a.    Cardinal, which distributed some or all of the controlled substances that Darien

Pharmacy and CVS illegally delivered to Ethan;

b.   McKesson, which distributed some or all of the controlled substances that Darien Pharmacy illegally delivered to Ethan; and

c.   Smith, which distributed some or all of the controlled substances that City Drug Store illegally delivered to Ethan.

307.   As a result of Defendants Cardinal, McKesson, Smith, Darien Pharmacy, City Drug Store, and Woodbine Pharmacy distributing controlled substances illegally that were diverted to Ethan, he remained dependent upon controlled substances through 2018. Ethan is currently incarcerated and almost died from an opioid overdose that immediately preceded his incarceration.

308.   As a result of his dependency fueled by Defendants, Ethan caused physical, mental, emotional, and economic harm to A.T., R.T., E.T., and Memorie Tindall.

309.   In particular, they have lived with a father and husband that has been dependent upon opioids for much of the last decade. And now that Ethan is incarcerated, Memorie has to economically sustain her family.

**H.   Plaintiff M.T.**

310.   Dean J. Turner is the father of M.T.

311.   Dean is an individual drug abuser as that term is defined by the DDLA. He obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose and distributed by pharmacies and pharmacists that knew such prescriptions were not valid.

312.   The following doctors issued Dean prescriptions outside the normal course of

professional practice and not for a legitimate medical purpose: Dr. Russell Sachs; Sandra Lindstrom, P.A.; Dr. Fred Powell; Dr. Ulysses Findley; Dr. Derek Thorpe; and Dr. Harold Laski.

313. These doctors wrote prescriptions for drugs containing oxycodone, hydrocodone, hydromorphone, methadone, carisoprodol, and alprazolam.

314. Dean filled these prescriptions issued by these doctors outside the normal course of professional practice and not for a legitimate medical purpose at, among other places: Darien Pharmacy; Altama Discount Pharmacy, Woodbine Pharmacy; City Drug Store; and Winn-Dixie.

315. Dean also obtained diverted controlled substances from other individuals who had obtained them outside the normal course of professional practice and not for a legitimate medical purpose.

316. The distributor(s) to each of the pharmacies above knew that these pharmacies were delivering controlled substances to drug abusers like Dean and that controlled substances were being diverted, including:

    a.    Cardinal, which distributed some or all of the controlled substances that Altama Discount Pharmacy, Darien Pharmacy, Winn-Dixie, and City Drug illegally delivered to Dean;

    b.    McKesson, which distributed some or all of the controlled substances that Altama Discount Pharmacy, Darien Pharmacy, and Winn-Dixie illegally delivered to Dean; and

    c.    Smith, which distributed some or all of the controlled substances that City Drug Store illegally delivered to Dean.

317. As a result of Defendants Cardinal, McKesson, Smith, Altama Discount Pharmacy,

Darien Pharmacy, City Drug Store, and Woodbine Pharmacy distributing controlled substances illegally to Dean, he became dependent upon controlled substances and remained dependent for almost two decades until in or around 2018.

318.   As a result of this dependency fueled by Defendants, Dean caused physical, mental, emotional, and economic harm to M.T.

319.   In particular, almost all of M.T.'s childhood was marred by her father's addiction, and he was largely absent from her life.

I.   **Plaintiffs M.W. and Patricia Haythorn**

320.   Bailey Merrill is the mother of M.W. and the daughter of Patricia Haythorn.

321.   Bailey is an individual drug abuser as that term is defined by the DDLA.  She obtained controlled substances through prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose and distributed by pharmacies and pharmacists that knew such prescriptions were not valid.

322.   Bailey did not obtain prescriptions directly from doctors.  Rather, she helped take other individuals to doctors to obtain prescriptions issued outside the normal course of professional practice and not for a legitimate medical purpose.

323.   These doctors wrote prescriptions for drugs containing oxycodone, hydromorphone, alprazolam, and carisoprodol.

324.   Among other places, Bailey took people to fill the prescriptions issued by doctors outside the normal course of professional practice and not for a legitimate medical purpose at: Altama Discount Pharmacy; Rainbow Drug Store; Darien Pharmacy; and Woodbine Pharmacy.

325.   The distributor(s) to each of the pharmacies above knew that these pharmacies were

delivering controlled substances to drug abusers and that controlled substances were being diverted, including:

    a.   Cardinal, which distributed some or all of the controlled substances that Altama Discount Pharmacy, Rainbow Drug Store, and Darien Pharmacy illegally delivered to Bailey; and

    b.   McKesson, which distributed some or all of the controlled substances that Altama Discount Pharmacy and Darien Pharmacy illegally delivered to Bailey.

326.   As a result of Defendants Cardinal, McKesson, Altama Discount Pharmacy, Darien Pharmacy, Rainbow Drug Store, and Woodbine Pharmacy distributing controlled substances illegally that were diverted to Bailey, she remained dependent upon controlled substances. Bailey is currently at a substance abuse treatment facility.

327.   As a result of her dependency fueled by Defendants, Bailey caused physical, mental, emotional, and economic harm to M.W. and Patricia Haythorn.

328.   In particular, M.W. has lived without a mother for much of her childhood and was in the custody of the state for a period of time. Patricia has had custody of M.W. since 2014 and is her permanent guardian.

## PLAINTIFFS' CLAIMS

### Violations of the Georgia Drug Dealer Liability Act
#### (allegations common to Counts 1 - 4)

329.   Each of the plaintiffs is a person within the meaning of O.C.G.A § 51-1-46(c)(10).

330.   Each of the defendants is a person within the meaning of O.C.G.A § 51-1-46(c)(10).

331.   Each of the plaintiffs is a child, spouse, sibling, parent or legal guardian of an individual

1760708.1

drug abuser.

332.    Each of the plaintiffs has been injured by an individual drug abuser.

333.    Each individual drug abuser used controlled substances, including but not limited to oxycodone, that were not obtained directly from or pursuant to a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice. The individual drug abusers' use of those controlled substances was not otherwise authorized by state law.

### Defendants Participated in the Illegal Marketing of Controlled Substances

334.    Each Defendant participated in the illegal marketing of controlled substances in multiple ways as set forth below.

**I.     Distributor Defendants Knowingly and Willfully Failed and Refused to Report Excessive Purchases of Controlled Substances and Unusual or Suspicious Orders for Controlled Substances.**

335.    Each Distributor Defendant failed and refused to submit to GDNA reports of excessive purchases of controlled substances by licensed persons or firms located within Georgia. Every such failure to submit a report of an excessive purchase of controlled substances is a separate felony. O.C.G.A § 26-4-115(e).

336.    Each Distributor Defendant failed and refused to submit to GDNA reports of unusual orders received and discovered by it. Every such failure to report an unusual order for controlled substances is a separate violation of Georgia law.

337.    Each Distributor Defendant failed and refused to design and operate a system that disclosed to it suspicious orders of controlled substances. Every failure to do so is a separate violation of Georgia law.

338.    Each Distributor Defendant failed and refused to report suspicious orders for controlled

1760708.1

substances. Every such failure to report a suspicious order for controlled substances is a separate violation of Georgia law.

339.    Each Distributor Defendant failed to stop the shipment of suspicious orders and failed to conduct the required due diligence before shipping each such order. Every failure to stop the shipment of a suspicious order until an investigation is conducted to determine the order is not likely to be diverted is a separate violation of Georgia law.

**II.    Distributor Defendants and Pharmacy Defendants Unlawfully Sold, Delivered and Distributed Controlled Substances**

340.    Each Distributor Defendant delivered, distributed, sold, and possessed with intent to distribute controlled substances in a manner not authorized by Title 16, Chapter 13, Article 2.

341.    Each Pharmacy Defendant delivered, distributed, sold, and possessed with intent to distribute controlled substances in a manner not authorized by Title 16, Chapter 13, Article 2.

342.    In order to deliver, distribute, sell, and possess with intent to distribute controlled substances in a manner not authorized by Title 16, Chapter 13, Article 2:

    a.    Cardinal conspired with the other participants in the Cardinal Controlled Substances Distribution Conspiracy;

    b.    McKesson conspired with the other participants in the McKesson Controlled Substances Distribution Conspiracy; and

    c.    Smith conspired with the other participants in the Smith Controlled Substances Distribution Conspiracy.

343.    The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, the McKesson Controlled Substances Distribution Conspiracy, and the Smith Controlled

Substances Distribution Conspiracy entered into a tacit understanding to sell, deliver, and distribute controlled substances to fill illegitimate prescriptions in violation of O.C.G.A §§ 16-13-30(b), 16-13-33, and § 16-13-41(f).

344.    In furtherance of the Cardinal Controlled Substances Distribution Conspiracy:

   a.    Cardinal filled numerous excessive orders and unusual or suspicious orders from the Cardinal Pharmacy Defendants for controlled substances;

   b.    Cardinal knowingly and willfully failed and refused to report excessive purchases, unusual orders, and suspicious orders as required by state and federal law;

   c.    Cardinal Pharmacy Defendants filled prescriptions they knew were not valid because they were not written in the usual course of professional practice or for a legitimate medical need, violating Georgia law each time they did so (Ga. Comp. R. & Regs. 480-22-.02(1); O.C.G.A. § 26-4-80); and

   d.    Cardinal Pharmacy Defendants failed to review patient records to identify overutilization, misuse, abuse, and drug interaction problems regarding the purported controlled substance prescriptions they filled and failed to resolve these existing problems, violating Georgia law each time they failed to do so (O.C.G.A § 26-4-84(b); O.C.G.A § 26-4-84(c)).

345.    In furtherance of the McKesson Controlled Substances Distribution Conspiracy:

   a.    McKesson filled numerous excessive orders and unusual or suspicious orders from the McKesson Pharmacy Defendants for controlled substances;

   b.    McKesson knowingly and willfully failed and refused to report excessive purchases, unusual orders, and suspicious orders as required by state and federal

law;

c.    McKesson Pharmacy Defendants filled prescriptions they knew were not valid because they were not written in the usual course of professional practice or for a legitimate medical need, violating Georgia law each time they did so (Ga. Comp. R. & Regs. 480-22-.02(1); O.C.G.A. § 26-4-80); and

d.    McKesson Pharmacy Defendants failed to review patient records to identify overutilization, misuse, abuse, and drug interaction problems regarding the purported controlled substance prescriptions they filled and failed to resolve these existing problems, violating Georgia law each time they failed to do so (O.C.G.A § 26-4-84(b); O.C.G.A § 26-4-84(c)).

346.    In furtherance of the Smith Controlled Substances Distribution Conspiracy:

a.    Smith filled numerous excessive orders and unusual or suspicious orders from its pharmacies for controlled substances;

b.    Smith knowingly and willfully failed and refused to report excessive purchases, unusual orders and suspicious orders as required by state and federal law;

c.    the pharmacies and pharmacists with whom Smith conspired filled prescriptions they knew were not valid because they were not written in the usual course of professional practice or for a legitimate medical need, violating Georgia law each time they did so (Ga. Comp. R. & Regs. 480-22-.02(1); O.C.G.A. § 26-4-80); and

d.    the pharmacies and pharmacists with whom Smith conspired failed to review patient records to identify overutilization, misuse, abuse, and drug interaction problems regarding the purported controlled substance prescriptions they filled

and failed to resolve these existing problems, violating Georgia law each time they failed to do so (O.C.G.A § 26-4-84(b); O.C.G.A § 26-4-84(c)).

III.   **Distributor Defendants and Pharmacy Defendants Aided and Abetted the Distribution of Prescription Drugs to Persons Who Were Not Authorized to Receive Those Drugs**

347.   The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy distributed or aided and abetted the distribution of prescription drugs to persons who were not authorized to receive those drugs under Georgia law.  O.C.G.A § 26-4-204(1).

348.   The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy engaged in misrepresentation or fraud in the distribution of prescription drugs. O.C.G.A § 26-4-204(5).

349.   The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy Defendants knowingly aided and abetted the distribution of prescription drugs to persons who were not authorized to receive those drugs under Georgia Law. O.C.G.A § 26-4-205(c).

IV.   **Distributor Defendants and Pharmacy Defendants Used Communications Facilities in Committing, Causing and Facilitating the Commission of Acts Constituting Felonies Under the Georgia Controlled Substances Act**

350.   For purposes of O.C.G.A § 16-13-32.3(a), a communication facility means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals,

pictures, or sounds of all kinds, and includes mail, telephone, wire, radio, computer or computer network, and all other means of communication.

351.    The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy knowingly and intentionally used communication facilities in committing, causing, and facilitating the commission of acts constituting a felony under the Georgia Controlled Substances Act.

352.    The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy used communication facilities, including use of the mail, telephone, wire, computers and computer networks, as well as other means of communication, to unlawfully deliver, distribute, and sell controlled substances.

V.    **Distributor Defendants and Pharmacy Defendants Kept and Maintained Warehouses, Buildings, Structures, Places and Vehicles Which Were Used For Keeping and Selling Controlled Substances**

353.    The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy knowingly kept and maintained in Georgia warehouses, buildings, structures, places and vehicles which were used for keeping and selling controlled substances in violation of Article 2 of Chapter 13 of Title 16.

VI.   **Distributor Defendants and Pharmacy Defendants Violated the Georgia Racketeer Influenced and Corrupt Organizations Act**

354.    By knowingly and willfully joining a conspiracy which itself contained a common plan or purpose to commit two or more acts of racketeering activity:

a.   Cardinal conspired with the Cardinal Pharmacy Defendants and others;

b.   McKesson conspired with the McKesson Pharmacy Defendants and others; and

c.   Smith conspired with Whitaker's Pharmacy, City Drug Store, and others.

355.   More particularly, the participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy conspired to violate O.C.G.A § 16-14-4(a) by acquiring and maintaining, directly and indirectly, an interest in and control of money through a pattern of racketeering activity.

356.   The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy also individually endeavored to violate O.C.G.A. § 16-14-4(a) by acquiring and maintaining, directly and indirectly, an interest in and control of money through a pattern of racketeering activity.

357.   In furtherance of the conspiracies and also in furtherance of their individual endeavors, the participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy committed acts of racketeering activity and engaged in overt acts, including those set forth below.

### A.   Acts of Racketeering Activity

358.   Under Georgia law racketeering activity includes committing, individually or as a party to the crime, and soliciting another person to commit, certain crimes chargeable by indictment under the laws of Georgia.   These crimes include violations of the Georgia Controlled

Substances Act, Article 2 of Chapter 13 of Title 16. The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy engaged in the following such indictable crimes:

    a.    delivering, distributing, dispensing, selling, and possessing with intent to distribute controlled substances in a manner not authorized by Article 2 of Chapter 13 of Title 16, in violation of O.C.G.A § 16-13-30(b);

    b.    attempting and conspiring to deliver, distribute, sell, and possess with intent to distribute controlled substances in a manner not authorized by Article 2 of Chapter 13 of Title 16, in violation of O.C.G.A § 16-13-33;

    c.    while subject to the requirements of O.C.G.A § 16-13-35, distributing a controlled substance and conspiring to distribute a controlled substance, in violation of O.C.G.A § 16-13-41(f);

    d.    failing and refusing to make, keep, and furnish notifications required under Article 2 of Chapter 13 of Title 16, in violation of O.C.G.A § 16-13-42(a)(3);

    e.    knowingly keeping and maintaining a warehouse, building, vehicle and other structure or place used for keeping or selling controlled substances in violation of Article 2 of Chapter 13 of Title 16, in violation of O.C.G.A § 16-14-42(a)(5); and

    f.    using communication facilities in committing, causing, and facilitating the commission of acts in violation of Article 2 of Chapter 13 of Title 16, in violation of O.C.G.A § 16-13-32.3.

359. This conduct constitutes racketeering activity pursuant to O.C.G.A § 16-14-3(5)(A)

(xxxiv).

360.    Racketeering activity also includes any act or threat involving dealing in narcotic or dangerous drugs which is chargeable under the laws of the United States, any territory of the United States, or any state and which is punishable by imprisonment for more than one year. O.C.G.A § 16-14-3(5)(B).

361.    Oxycodone, hydrocodone, hydromorphone, morphine, oxymorphone, and codeine are opiates. O.C.G.A § 16-13-26(1)(A).[40]  Opiates are narcotic drugs. O.C.G.A § 16-13-21(17)(A). Narcotic drugs are a subset of Schedule II controlled substances. O.C.G.A § 16-13-30(c), (e).

362. .   The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy also engaged in acts involving dealing in narcotic drugs chargeable under Georgia law and the laws of the United States that are punishable by imprisonment for more than one year.

363.    In each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy the participants' acts involving dealing in narcotic drugs include:   ·

      a.     conspiring to sell, deliver, and distribute narcotic drugs to pharmacies that filled prescriptions not written for a legitimate medical purpose and not written in the usual course of medical practice, in violation of O.C.G.A §§ 16-13-30(b) and 16-13-41(f)(1)-(3), including conspiring to engage in such violations and aiding and abetting such violations;

---

[40] An opiate is any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having addiction-forming or addiction-sustaining liability. O.C.G.A § 16-13-21(18).

b.     concealing and conspiring to conceal the sale, delivery and distribution of narcotic drugs to pharmacies filling prescriptions not written for legitimate medical purpose and not written in the usual course of medical practice by failing and refusing to report excessive purchases of controlled substances, including narcotic drugs by those pharmacies, in violation of O.C.G.A § 26-4-115(b)(2);

c.     failing and refusing to report unusual orders for narcotic drugs in violation of Georgia Rules and Regulations 480-20-.02(1);

d.     failing and refusing to design and operate a system to disclose suspicious orders for narcotic drugs, in violation of Georgia Rules and Regulations 480-7-.03(10)(b);

e.     failing and refusing to report suspicious orders for narcotic drugs to GDNA, in violation of Georgia Rules and Regulations Ga. Comp. R. & Regs. 480-7-.03(10)(b);

f.     selling, delivering and distributing narcotic drugs, to pharmacies when both the distributor and the pharmacist knew the controlled substances were being ordered to fill invalid prescriptions in violation of O.C.G.A. § 16-13-41(e), (f); and

g.     selling, distributing, and transferring prescription drugs, consisting of narcotic drugs, to persons that were not authorized to receive those prescription drugs under Georgia law in violation of O.C.G.A § 26-4-204.

364.   The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy engaged in these acts of racketeering activity over an extended period of

time. The total number of acts committed by the participants in each conspiracy is believed to be in the hundreds, if not thousands.

365.    These acts also constituted overt acts in furtherance of the conspiracy to violate RICO.

366.    Each Defendant committed an act of racketeering activity or an overt act less than five years prior to the filing of this complaint.

### B.    The Acts of Racketeering Activity Formed a Pattern

367.    The acts of racketeering activity were more than two in number.  The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy engaged in those acts in furtherance of one or more incidents, schemes, or transactions.

368.    The acts of racketeering activity were interrelated by distinguishing characteristics and are not isolated incidents.

369.    The acts of racketeering activity committed by participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy had the same or similar intents, including but not limited to obtaining money, directly or indirectly, through a pattern of racketeering activity and concealing their illegal activities.

370.    The acts of racketeering activity committed by participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy had the same or similar results, in that it obtained money, directly or indirectly, through a pattern of racketeering activity and concealing their illegal activities.

371.    The acts of racketeering activity committed by participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy had the same or similar accomplices, including but not limited to distributors, pharmacies, and doctors.

372.    The acts of racketeering activity committed by participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy had the same or similar victims, including but not limited to the family members of persons who received diverted controlled substances.

373.    The acts of racketeering activity committed by participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy had the same or similar methods of commission, including but not limited to unlawfully providing a supply of controlled substances to pharmacies that regularly filled illegitimate prescriptions for controlled substances and concealing those illegal activities.

374.    The acts of racketeering activity committed by participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy were further interrelated by distinguishing characteristics, including but not limited to:

     a.    the unlawful sale, delivery, and distribution of controlled substances;

     b.    the failure and refusal to report excessive purchases of controlled substances as required by Georgia law;

c.   the failure and refusal to report unusual orders of controlled substances as required by Georgia law;

d.   the failure and refusal to report suspicious orders of controlled substances as required by Georgia and federal law;

e.   the continued sale, delivery, and distribution, over extended periods of time, of continually increasing amounts of controlled substances to pharmacies where there was no legitimate explanation for those continually increasing orders; and

f.   exercising deliberate ignorance and willful blindness to warning signs that controlled substances were being diverted.

### C.   Distributor Defendants and Pharmacy Defendants Endeavored to Acquire and Maintain an Interest in or Control of Money

375.   The participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy also endeavored to acquire and maintain, directly or indirectly, an interest in or control of money through a pattern of racketeering activity in violation of O.C.G.A § 16-14-4(a) and (c).

376.   One or more of the participants in each of the Cardinal Controlled Substances Distribution Conspiracy, McKesson Controlled Substances Distribution Conspiracy, and Smith Controlled Substances Distribution Conspiracy committed one or more overt acts to effect the object of the endeavor, as alleged above.

### COUNT 1 - Violations of the Georgia Drug Dealer Liability Act
### (All Plaintiffs Against Defendant Cardinal and Cardinal Pharmacy Defendants)

377.   Plaintiffs repeat the allegations set forth in paragraphs 1-376 as if fully set forth herein.

1760708.1

79

378.   The conduct described in paragraphs 334-376 above regarding Cardinal and the Cardinal Pharmacy Defendants constitutes participation in illegal marketing as defined by O.C.G.A § 51-1-46(c). The conduct described in these paragraphs set forth the multiple ways in which each of these Defendants participated in the illegal marketing of controlled substances.

379.   Cardinal participated in the illegal marketing of controlled substances in Glynn County and elsewhere while the individual drug abusers were obtaining and using those controlled substances.

380.   Cardinal participated in the illegal marketing of the controlled substances used by the individual drug abusers, including: oxycodone, hydrocodone, hydromorphone, alprazolam and carisoprodol.

381.   Additionally and alternatively, Cardinal participated in the illegal marketing of the controlled substances actually used by the individual drug abusers, including: oxycodone, hydrocodone, hydromorphone, alprazolam and carisoprodol.

382.   Because Cardinal participated in the illegal marketing of 50 or more grams of a mixture containing oxycodone, 50 or more grams of a mixture containing hydrocodone, 50 or more grams of a mixture containing hydromorphone, 50 or more grams of a mixture containing alprazolam, and 50 or more grams of a mixture containing carisoprodol, the market area for Cardinal for each of these controlled substances is at least Glynn County and every county bordering Glynn County.

383.   The individual drug abusers obtained or used oxycodone, hydrocodone, hydromorphone, alprazolam and/or carisoprodol within Cardinal's market area, causing injury to the plaintiffs.

384.   Cardinal and the Cardinal Pharmacy Defendants conspired together to commit the acts

1760708.1

detailed in this count and therefore each is responsible for the totality of the damages arising

from that conspiracy.

385.   Cardinal and the Cardinal Pharmacy Plaintiffs are liable to Plaintiffs for their economic

and noneconomic damages as well as their attorneys' fees and costs, including but not limited to

their expenses for expert witnesses, and exemplary damages. O.C.G.A. § 51-1-46(g)(1).

386.   The wrongful actions of Cardinal and the Cardinal Pharmacy Defendants constitute

willful misconduct, malice, wantonness, oppression, or that entire want of care which would

raise the presumption of conscious indifference to the consequences, rendering them liable to

Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

387.   Because Cardinal and the Cardinal Pharmacy Defendants acted with the specific intent to

cause harm, there is no limitation regarding the amount that may be awarded as punitive

damages.

## COUNT 2 - Violations of the Georgia Drug Dealer Liability Act
### (All Plaintiffs Against Defendant McKesson and
### McKesson Pharmacy Defendants)

388.   Plaintiffs repeat the allegations set forth in paragraphs 1-376 as if fully set forth herein.

389.   The conduct described in paragraphs 334-376 above regarding McKesson and the

McKesson Pharmacy Defendants constitutes participation in illegal marketing as defined by

O.C.G.A § 51-1-46(c).  The conduct described in these paragraphs set forth the multiple ways in

which each of these Defendants participated in the illegal marketing of controlled substances.

390.   McKesson participated in the illegal marketing of controlled substances in Glynn County

and elsewhere while the individual drug abusers were obtaining and using those controlled

substances.

1760708.1

81

391.   McKesson participated in the illegal marketing of the controlled substances used by the individual drug abusers, including: oxycodone, hydrocodone, hydromorphone, alprazolam and carisoprodol.

392.   Additionally and alternatively, McKesson participated in the illegal marketing of the controlled substances actually used by the individual drug abusers, including: oxycodone, hydrocodone, hydromorphone, alprazolam and carisoprodol.

393.   Because McKesson participated in the illegal marketing of 50 or more grams of a mixture containing oxycodone, 50 or more grams of a mixture containing hydrocodone, 50 or more grams of a mixture containing hydromorphone, 50 or more grams of a mixture containing alprazolam, and 50 or more grams of a mixture containing carisoprodol, the market area for McKesson for each of these controlled substances is at least Glynn County and every county bordering Glynn County.

394.   The individual drug abusers obtained or used oxycodone, hydrocodone, hydromorphone, alprazolam and/or carisoprodol within McKesson's market area, causing injury to the plaintiffs.

395.   McKesson and the McKesson Pharmacy Defendants conspired together to commit the acts detailed in this count and therefore each is responsible for the totality of the damages arising from that conspiracy.

396.   McKesson and the McKesson Pharmacy Plaintiffs are liable to Plaintiffs for their economic and noneconomic damages as well as their attorneys' fees and costs, including but not limited to their expenses for expert witnesses, and exemplary damages.  O.C.G.A. § 51-1-46(g)(1).

397.   The wrongful actions of McKesson and the McKesson Pharmacy Defendants constitute

willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences; rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

398.   Because McKesson and the McKesson Pharmacy Defendants acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

### COUNT 3 - Violations of the Georgia Drug Dealer Liability Act
### (All Plaintiffs Against Defendants Smith and City Drug Store)

399.   Plaintiffs repeat the allegations set forth in paragraphs 1-376 as if fully set forth herein.

400.   The conduct described in paragraphs 334-376 above regarding Smith and the Pharmacy Defendants, which includes City Drug Store, constitutes participation in illegal marketing as defined by O.C.G.A § 51-1-46(c).   The conduct described in these paragraphs set forth the multiple ways in which each of these Defendants participated in the illegal marketing of controlled substances.

401.   Smith participated in the illegal marketing of controlled substances in Glynn County and elsewhere while the individual drug abusers were obtaining and using those controlled substances.

402.   Smith participated in the illegal marketing of the controlled substances used by the individual drug abusers, including: oxycodone, hydrocodone, hydromorphone, alprazolam and carisoprodol.

403.   Additionally and alternatively, Smith participated in the illegal marketing of the controlled substances actually used by the individual drug abusers, including: oxycodone, hydrocodone, hydromorphone, alprazolam and carisoprodol.

404.    Because Smith participated in the illegal marketing of 50 or more grams of a mixture containing oxycodone, 50 or more grams of a mixture containing hydrocodone, 50 or more grams of a mixture containing hydromorphone, 50 or more grams of a mixture containing alprazolam, and 50 or more grams of a mixture containing carisoprodol, the market area for Smith for each of these controlled substances is at least Glynn County and every county bordering Glynn County.

405.    The individual drug abusers obtained or used oxycodone, hydrocodone, hydromorphone, alprazolam and/or carisoprodol within Smith's market area, causing injury to the plaintiffs.

406.    Smith and City Drug Store conspired together to commit the acts detailed in this count and therefore each is responsible for the totality of the damages arising from that conspiracy.

407.    Smith and City Drug Store are liable to Plaintiffs for their economic and noneconomic damages as well as their attorneys' fees and costs, including but not limited to their expenses for expert witnesses, and exemplary damages.  O.C.G.A. § 51-1-46(g)(1).

408.    The wrongful actions of Smith and City Drug Store constitute willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

409.    Because Smith and City Drug Store acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

## COUNT 4 - Violations of the Georgia Drug Dealer Liability Act
### (All Plaintiffs Against the Woodbine Pharmacy Defendants)

410.    Plaintiffs repeat the allegations set forth in paragraphs 1-376 as if fully set forth herein.

1760708.1

411.    The conduct described in paragraphs 334-376 above regarding the Pharmacy Defendants, which include the Woodbine Pharmacy Defendants, constitutes participation in illegal marketing as defined by O.C.G.A § 51-1-46(c).  The conduct described in these paragraphs set forth the multiple ways in which each of these Defendants participated in the illegal marketing of controlled substances.

412.    Woodbine Pharmacy participated in the illegal marketing of controlled substances in Camden County and elsewhere while the individual drug abusers were obtaining and using those controlled substances.

413.    Woodbine Pharmacy participated in the illegal marketing of the controlled substances used by the individual drug abusers, including: oxycodone, hydrocodone, hydromorphone, alprazolam and carisoprodol.

414.    Additionally and alternatively, Woodbine Pharmacy participated in the illegal marketing of the controlled substances actually used by the individual drug abusers, including: oxycodone, hydrocodone, hydromorphone, alprazolam and carisoprodol.

415.    Because Woodbine Pharmacy participated in the illegal marketing of 50 or more grams of a mixture containing oxycodone, 50 or more grams of a mixture containing hydrocodone, 50 or more grams of a mixture containing hydromorphone, 50 or more grams of a mixture containing alprazolam, and 50 or more grams of a mixture containing carisoprodol, the market area for the Woodbine Pharmacy Defendants for each of these controlled substances is at least Camden County and every county bordering Camden County, including Glynn County.

416.    The individual drug abusers obtained or used oxycodone, hydrocodone, hydromorphone, alprazolam and/or carisoprodol within Woodbine Pharmacy's market area, causing injury to the

plaintiffs.

417.    Woodbine Pharmacy, Sabra L. Maddox, Alan M. Jones, and Carey B. Jones conspired together to commit the acts detailed in this count and therefore each is responsible for the totality of the damages arising from that conspiracy.

418.    The Woodbine Pharmacy Defendants are liable to Plaintiffs for their economic and noneconomic damages as well as their attorneys' fees and costs, including but not limited to their expenses for expert witnesses, and exemplary damages.  O.C.G.A. § 51-1-46(g)(1).

419.    The wrongful actions of the Woodbine Pharmacy Defendants constitute willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

420.    Because the Woodbine Pharmacy Defendants acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

**COUNT 5 - Violation of the Racketeer Influenced and Corrupt Organizations Act**

421.    Plaintiffs incorporate paragraphs 1-376 above as to Cardinal as if those paragraphs were separately set forth here.

422.    Plaintiffs incorporate paragraphs 1-376 above as to McKesson as if those paragraphs were separately set forth here.

423.    Plaintiffs incorporate paragraphs 1-376 above as to Smith as if those paragraphs were separately set forth here.

424.    As set forth above in Paragraphs 354-376, Cardinal, McKesson, and Smith have each violated O.C.G.A § 16-14-4(a) and (c).

1760708.1

425.   Cardinal, McKesson, and Smith have each committed an act of racketeering activity within five years of the filing of this complaint.

426.   Cardinal, McKesson, and Smith have violated O.C.G.A § 16-14-4(c) by conspiring to acquire money through a pattern of racketeering activity.

427.   Cardinal, McKesson, and Smith have each violated O.C.G.A § 16-14-4(c) by conspiring and endeavoring to violate O.C.G.A § 16-14-4(a) by acquiring money through a pattern of racketeering activity.

428.   Cardinal, McKesson, and Smith have each committed an overt act in furtherance of a conspiracy or endeavor to violate O.C.G.A § 16-14-4(a) within five years of the filing of this complaint.

429.   Plaintiffs are aggrieved by Cardinal, McKesson, and Smith's conduct in violation of O.C.G.A § 16-14-4.

430.   Plaintiffs ask the Court to enjoin Cardinal, McKesson, and Smith's violations of O.C.G.A § 16-14-4 by issuing appropriate orders and judgments, including, but not limited to:

    a.   imposing reasonable restrictions upon the future activities of these defendants. These restrictions should include, but not be limited to, a prohibition against these defendants engaging in the same type of conduct which it is engaging in violation of O.C.G.A §16-14-4; and

    b.   placing all licensing permits and prior approvals granted to Cardinal, McKesson, and Smith by the Board of Pharmacy that allow these defendants to distribute Schedule II controlled substances in the State of Georgia on a probationary status and appointing a monitor with authority to ensure that (1) Cardinal, McKesson,

and Smith each maintain a program that is effective at preventing diversion of Schedule II controlled substances and (2) Cardinal, McKesson, and Smith each immediately report all excessive purchases of and unusual or suspicious orders for Schedule II controlled substances to GDNA.

These requirements should apply to each and every Cardinal, McKesson, and Smith distribution facility located in Georgia that handles controlled substances and each and every Cardinal, McKesson, and Smith distribution facility located outside of Georgia that is registered with the Georgia Pharmacy Board to distribute controlled substances in or to the State of Georgia.

## NEGLIGENCE
### (allegations common to Counts 6 - 8)

431.   Each Distributor Defendant has a common law duty under Georgia law to exercise ordinary care not to subject individuals like Plaintiffs to an unreasonable risk of harm.  That duty is independent from, and in addition to, their duties that exist under state or federal statutes and regulations.

432.   As shown throughout this Complaint, each Distributor Defendant breached its common law duty, with such breach being the legally attributable cause of injury to Plaintiffs.

433.   The duty of care imposed under Georgia common law is reasonably informed by Georgia's statutes and regulations that govern the conduct of Distributor Defendants.   In particular, each Distributor Defendant had a duty to:

   a.   create an effective system to prevent the diversion of controlled substances into an illegal drug market;

   b.   employ adequate personnel with the education and experience necessary to safely and lawfully engage in the wholesale distribution of drugs;

1760708.1

88

c.  automatically submit reports of any excessive purchase of controlled substances to GDNA and to inform GDNA of any unusual order when discovered; and

d.  report and stop the shipment of suspicious orders, and only ship such orders if, after conducting due diligence, the distributor determines that the order is not likely to be diverted to illegal channels.

434.  Each Distributor Defendant had a public duty to provide information in the course of its business that was intended to benefit the public – including the information required by the reporting requirements discussed above – and knew that governmental enforcement agencies would rely upon each Distributor Defendant to supply accurate information.

435.  These obligations demonstrate that under the duty of care imposed by Georgia common law, a distributor exercising reasonable care must act to prevent highly addictive drugs from flowing into a community and creating an illegal drug market for those drugs.

436.  The consequence of failing to meet that duty to exercise ordinary care is foreseeable to the point of a being a foregone conclusion: a flood of highly addictive drugs creates a dangerous situation in which members of the community, particularly those closest to the individuals that obtain drugs from the resulting illegal market, suffer serious injuries.

437.  Each Distributor Defendant also had a duty under Georgia law to the family members of drug abusers not to initiate, contribute to, or exacerbate, the addiction or dependence of a drug abuser.

438.  The consequence of breaching this duty is eminently foreseeable: the family members of drug abusers suffer harm.

439.  The standard of care a Distributor Defendant must exercise in complying with the

1760708.1

89

aforementioned duties is magnified by the fact that they are in the business of selling extremely dangerous drugs that can lead to severe psychological and physical dependence and have high potential for abuse.

### Count 6 – Negligence
### (All Plaintiffs against Cardinal)

440.   Plaintiffs repeat the allegations set forth in paragraphs 1-376 and 431-439 as if fully set forth herein.

441.   Cardinal failed to exercise the level of care an ordinarily prudent person would have exercised in distributing drugs that lead to severe psychological and physical dependence and have high potential for abuse and breached the duties of care it owed Plaintiffs.

442.   Cardinal, who undertook for consideration to distribute dangerous controlled substances in Plaintiffs' communities, is liable to Plaintiffs for its failure to exercise reasonable care in the manner in which it distributed those dangerous drugs, and for increasing the risk of harm to Plaintiffs.

443.   Cardinal's breaches of the duty of care it owed Plaintiffs included, but are not limited to:

   a.   its failure to exercise ordinary care not to subject Plaintiffs to an unreasonable risk of harm in the manner in which it distributes highly dangerous drugs;

   b.   its failure to prevent the diversion of highly dangerous drugs and the creation of an illegal drug market; and

   c.   its failure to not initiate, contribute to, or exacerbate the addiction or dependence of a drug user.

444.   By failing to maintain responsible distribution practices, Cardinal not only failed to

prevent diversion, but affirmatively created an illegal drug market for controlled substances.

445. Cardinal's breach of its legal duty to exercise ordinary care in its distribution of dangerous drugs proximately caused the harm suffered by Plaintiffs.

446. Plaintiffs' economic and noneconomic damages flowed from the harm caused by Cardinal. Cardinal is liable for those damages.

447. The wrongful actions of Cardinal constitute willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

448. Because Cardinal acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

### Count 7 -- Negligence
### (All Plaintiffs against McKesson)

449. Plaintiffs repeat the allegations set forth in paragraphs 1-376 and 431-439 as if fully set forth herein.

450. McKesson failed to exercise the level of care an ordinarily prudent person would have exercised in distributing drugs that lead to severe psychological and physical dependence and have high potential for abuse and breached the duties of care it owed Plaintiffs.

451. McKesson, who undertook for consideration to distribute dangerous controlled substances in Plaintiffs' communities, is liable to Plaintiffs for its failure to exercise reasonable care in the manner in which it distributed those dangerous drugs, and for increasing the risk of harm to Plaintiffs.

1760708.1

91

452.   McKesson's breaches of the duty of care it owed Plaintiffs included, but are not limited to:

    a.    its failure to exercise ordinary care not to subject Plaintiffs to an unreasonable risk of harm in the manner in which it distributes highly dangerous drugs;

    b.    its failure to prevent the diversion of highly dangerous drugs and the creation of an illegal drug market; and

    c.    its failure to not initiate, contribute to, or exacerbate the addiction or dependence of a drug user.

453.   By failing to maintain responsible distribution practices, McKesson not only failed to prevent diversion, but affirmatively created an illegal drug market for controlled substances.

454.   McKesson's breach of its legal duty to exercise ordinary care in its distribution of dangerous drugs proximately caused the harm suffered by Plaintiffs.

455.   Plaintiffs' economic and noneconomic damages flowed from the harm caused by McKesson.  McKesson is liable for those damages.

456.   The wrongful actions of McKesson constitute willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

457.   Because McKesson acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

**Count 8 – Negligence**
**(All Plaintiffs against Smith)**

458.    Plaintiffs repeat the allegations set forth in paragraphs 1-376 and 431-439 as if fully set forth herein.

459.    Smith failed to exercise the level of care an ordinarily prudent person would have exercised in distributing drugs that lead to severe psychological and physical dependence and have high potential for abuse and breached the duties of care it owed Plaintiffs.

460.    Smith, who undertook for consideration to distribute dangerous controlled substances in Plaintiffs' communities, is liable to Plaintiffs for its failure to exercise reasonable care in the manner in which it distributed those dangerous drugs, and for increasing the risk of harm to Plaintiffs.

461.    Smith's breaches of the duty of care it owed Plaintiffs included, but are not limited to:

a.      its failure to exercise ordinary care not to subject Plaintiffs to an unreasonable risk of harm in the manner in which it distributes highly dangerous drugs;

b.      its failure to prevent the diversion of highly dangerous drugs and the creation of an illegal drug market; and

c.      its failure to not initiate, contribute to, or exacerbate the addiction or dependence of a drug user.

462.    By failing to maintain responsible distribution practices, Smith not only failed to prevent diversion, but affirmatively created an illegal drug market for controlled substances.

463.    Smith's breach of its legal duty to exercise ordinary care in its distribution of dangerous drugs proximately caused the harm suffered by Plaintiffs.

464.   Plaintiffs' economic and noneconomic damages flowed from the harm caused by Smith. Smith is liable for those damages.

465.   The wrongful actions of Smith constitute willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

466.   Because Smith acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

### BREACH OF LEGAL DUTY
#### (allegations common to COUNTS 9 - 11)

467.   As discussed above, Cardinal, McKesson, and Smith were each required by statute and regulation to:

a.   create an effective system to prevent the diversion of controlled substances (Ga. Comp. R. & Regs. 480-7-.03(10)(b); 21 C.F.R. §1301.71);

b.   employ adequate personnel with the education and experience necessary to safely and lawfully engage in the wholesale distribution of drugs (Ga. Comp. R. & Regs. 480-7-.03(5));

c.   automatically report excessive purchases of controlled substances to GDNA (O.C.G.A § 26-4-115(b)(2));

d.   report unusual orders to GDNA when discovered (Ga. Comp. R. & Regs. 480-20-.02(1)); and

e.   report suspicious orders, stop the shipment of such orders, and to only ship such orders if after conducting necessary due diligence, it was satisfied the order would

not lead to diversion.[41]

468.   These duties exist to protect individuals like Plaintiffs who are exposed to harm by drug abusers when an illegal drug market proliferates.

469.   These duties exist to protect Plaintiffs from precisely the type of harm they suffered – physical, mental, emotional, and economic injuries caused by individuals fueled by an illegal drug market.

### Count 9 – Breach of Legal Duty
### (All Plaintiffs against Cardinal)

470.   Plaintiffs repeat the allegations set forth in paragraphs 1-376 and 467-469 as if fully set forth herein.

471.   Cardinal breached the legal duties imposed by:

   a.   Ga. Comp. R. & Regs. 480-7-.03(10)(b) and 21 C.F.R. §1301.71 to create an effective system to prevent the diversion of controlled substances;

   b.   Ga. Comp. R. & Regs. 480-7-.03(5) to employ adequate personnel with the education and experience necessary to safely and lawfully engage in the wholesale distribution of drugs;

   c.   O.C.G.A § 26-4-115(b)(2) to automatically report excessive purchases to GDNA;

   d.   Ga. Comp. R. & Regs. 480-20-.02(1) to report unusual orders to GDNA when discovered; and

   e.   Ga. Comp. R. & Regs. 480-7-.03(10)(b) and 21 C.F.R. § 1301.74(b) to report suspicious orders, stop the shipment of such orders, and only ship such orders if appropriate due diligence demonstrates the order will not lead to diversion.

472.   Cardinal's breach of its legal duties imposed by statutes and regulations proximately

---

[41] Ga. Comp. R. & Régs. 480-20-.02; 21 C.F.R. § 1301.74(b); *Masters Pharm., Inc. v. DEA*, 861 F.3d 206 (D.C. Cir. 2017).

caused the harm suffered by Plaintiffs.

473.   Plaintiffs' economic and noneconomic damages flowed from the harm caused by Cardinal.  Cardinal is liable for those damages.

474.   The wrongful actions of Cardinal constitute willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

475.   Because Cardinal acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

### Count 10 – Breach of Legal Duty
(All Plaintiffs against McKesson)

476.   Plaintiffs repeat the allegations set forth in paragraphs 1-376 and 467-469 as if fully set forth herein.

477.   McKesson breached the legal duties imposed by:

   a.   Ga. Comp. R. & Regs. 480-7-.03(10)(b) and 21 C.F.R. §1301.71 to create an effective system to prevent the diversion of controlled substances;

   b.   Ga. Comp. R. & Regs. 480-7-.03(5) to employ adequate personnel with the education and experience necessary to safely and lawfully engage in the wholesale distribution of drugs;

   c.   O.C.G.A § 26-4-115(b)(2) to automatically report excessive purchases to GDNA;

   d.   Ga. Comp. R. & Regs. 480-20-.02(1) to report unusual orders to GDNA when discovered; and

   e.   Ga. Comp. R. & Regs. 480-7-.03(10)(b) and 21 C.F.R. § 1301.74(b) to report suspicious orders, stop the shipment of such orders, and only ship such orders if

appropriate due diligence demonstrates the order will not lead to diversion.

478.    McKesson's breach of its legal duties imposed by statutes and regulations proximately caused the harm suffered by Plaintiffs.

479.    Plaintiffs' economic and noneconomic damages flowed from the harm caused by McKesson. McKesson is liable for those damages.

480.    The wrongful actions of McKesson constitute willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

481.    Because McKesson acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

### Count 11 – Breach of Legal Duty
(All Plaintiffs against Smith)

482.    Plaintiffs repeat the allegations set forth in paragraphs 1-376 and 467-469 as if fully set forth herein.

483.    Smith breached the legal duties imposed by:

a.    Ga. Comp. R. & Regs. 480-7-.03(10)(b) and 21 C.F.R. §1301.71 to create an effective system to prevent the diversion of controlled substances;

b.    Ga. Comp. R. & Regs. 480-7-.03(5) to employ adequate personnel with the education and experience necessary to safely and lawfully engage in the wholesale distribution of drugs;

c.    O.C.G.A § 26-4-115(b)(2) to automatically report excessive purchases to GDNA;

d.    Ga. Comp. R. & Regs. 480-20-.02(1) to report unusual orders to GDNA when discovered; and

     e.      Ga. Comp. R. & Regs. 480-7-.03(10)(b) and 21 C.F.R. § 1301.74(b) to report suspicious orders, stop the shipment of such orders, and only ship such orders if appropriate due diligence demonstrates the order will not lead to diversion.

484.    Smith's breach of its legal duties imposed by statutes and regulations proximately caused the harm suffered by Plaintiffs.

485.    Plaintiffs' economic and noneconomic damages flowed from the harm caused by Smith. Smith is liable for those damages.

486.    The wrongful actions of Smith constitute willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, rendering them liable to Plaintiffs for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

487.    Because Smith acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

### PRAYER FOR RELIEF

Plaintiffs respectfully pray for judgment as follows:

     a.      that the Court award Plaintiffs damages on all counts in an amount to be proven at trial;

     b.      that Plaintiffs recover punitive damages pursuant to O.C.G.A. § 51-12-5.1;

     c.      that Plaintiffs recover reasonable attorneys' fees and costs, including but not limited to reasonable expenses for expert testimony pursuant to O.C.G.A. § 51-1-46(g)(1);

     d.      that the Court enjoin Distributor Defendants from continuing to distribute controlled substances in an illegal manner; and

e.      that the Court award Plaintiffs such other and further relief as may be just and

proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted, this 17th day of April, 2019

/s/ John E. Floyd

John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Benjamin E. Fox
Georgia Bar No. 329427
fox@bmelaw.com
Steven J. Rosenwasser
Georgia Bar No. 614908
rosenwasser@bmelaw.com
Manoj S. Varghese
Georgia Bar No. 734668
varghese@bmelaw.com
**Bondurant, Mixson & Elmore, LLP**
3900 One Atlantic Center
1201 W. Peachtree Street, NW
Atlanta, Georgia 30309
T: (404) 881-4100
F: (404) 881-4111

James D. Durham
Georgia Bar No. 235515
jdurham@savagelawfirm.net
**Savage Turner Durham**
**Pickney & Savage**
102 E. Liberty Street, 8th Floor
Savannah, GA 31401
T: 912-231-1140
F: 912-231-9157

Christopher W. Madel
Georgia Bar No. 641270
cmadel@madellaw.com
**MADEL, PA**
800 Pence Building
800 Hennepin Ave.

Minneapolis, MN 55403
T: 612-605-0630
F: 612-326-9990

Ronald E. Harrison II, Esq.
Georgia Bar No. 333270
thf@theharrisonlawfirm.net
**The Harrison Firm**
1621 Reynolds Street
Brunswick, GA 31520
T: 912-264-3035
F: 912-264-3138

*Attorneys for Plaintiffs*

1760708.1

IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA

JOSEPH POPPELL; K.L.M., through her next friend,
JOSEPH POPPELL; MADISON MILLER; J.B., through
his next friend, TAMMY BAILEY; B.M., through his
next friend, TAMMY BAILEY; K.M.M., through her
next friend, TAMMY BAILEY; BRYSON GUEST; J.G.,
through his next friend, BRYSON GUEST; M.G.,
through his next friend, BRYSON GUEST; K.L.H.,
through her next friend, PATRICIA SMITH; A.G.,
through her next friend, PATRICIA SMITH; S.G.,
through her next friend, PATRICIA SMITH; K.G.H.,
through her next friend, PATRICIA SMITH; PATRICIA
SMITH on behalf of the ESTATE OF BENTLEY
TURNER; S.T., through his next friend, PATRICIA
SMITH; CHREI JONES; A.T., through her next friend,
MEMORIE TINDALL; R.T., through her next friend,
MEMORIE TINDALL; E.T., through her next friend,
MEMORIE TINDALL; MEMORIE TINDALL; M.T.,
through her next friend, WENDI TURNER, M.W.,
through her next friend, PATRICIA HAYTHORN, and
PATRICIA HAYTHORN,

     Plaintiffs,

v.

CARDINAL HEALTH, INC., CARDINAL HEALTH
108, LLC; CARDINAL HEALTH 110, LLC;
CARDINAL HEALTH 112, LLC; CARDINAL
HEALTH 113, LLC; CARDINAL HEALTH 116, LLC;
CARDINAL HEALTH 200, LLC; CARDINAL
HEALTH 414, LLC; McKESSON CORPORATION;
McKESSON DRUG COMPANY, LLC; McKESSON
MEDICAL-SURGICAL, INC.; McKESSON MEDICAL-
SURGICAL MINNESOTA SUPPLY, INC.; J M SMITH
CORPORATION; G & H PHARMACY, INC.; AGAPE
PRESCRIPTIONS "R" US, INC.; JANICE ANN
COLTER; CHRISTOPHER GREY MAY; WOODBINE
PHARMACY, INC.; SABRA L. MADDOX; ALAN M.
JONES; CAREY B. JONES; RAINBOW DRUG STORE,
INC.; RICHARD D. GRIFFIS, JR.; RICHARD D.
GRIFFIS, III; and CHARLES ROBERT LOTT.

     Defendants.

Civil Action File
No. CE19-00472

JURY TRIAL DEMANDED

1756464.1

## VERIFICATION FOR INJUNCTIVE RELIEF REQUEST

Personally appeared before me the undersigned, JOSEPH POPPELL, who first being duly sworn, deposes and says on oath that he is a Plaintiff in this action and is a Captain in the Glynn County Fire Department and a certified paramedic. Based on my personal knowledge and belief, which includes responding to drug overdose emergency calls on a regular basis for over 20 years, I attest that the following facts contained within the Plaintiffs' Complaint are true:

1.   Glynn County and the surrounding communities have been flooded with prescription opioids and other controlled substances.

2.   The abundant availability of prescription opioids and other controlled substances has led to widespread drug abuse in Glynn County and the surrounding communities.

3.   This abuse has led to overdose deaths and hospitalizations.

4.   I have personally responded to emergency calls caused by prescription opioid overdoses.

5.   I have personally witnessed deaths caused by prescription opioid overdoses.

6.   On numerous occasions I have personally administered Naloxone (an opioid antagonist) to persons who have overdosed on prescription opioids.

7.   Several pill mills have operated in and around Glynn County.

8.   Multiple pharmacies in and around Glynn County have readily distributed opioids to drug abusers and addicts.

9.   It has been relatively easy for drug abusers and addicts in and around Glynn County to obtain opioids and other controlled substances.

2

10. This problem persists. Although some pill mills and pharmacies have closed, opioids and other controlled substances continue to be readily available to drug abusers and addicts in and around Glynn County.

11. If the bad actors in the prescription drug distribution chain are allowed to continue operating as they have been, the abuse of opioids and other controlled substances will continue and more people will die.

Further, I have reviewed Drug Enforcement Agency documents obtained by my attorneys in their investigation of this case. Based upon that review I can attest the following facts contained within the Plaintiffs' Complaint are true:

1. The amount of oxycodone distributed in Georgia more than quadrupled between 2000 and 2017.

2. In 2017, twice as much hydrocodone was distributed in Georgia as was distributed in 2000.

3. In 2017, almost five times as much hydromorphone was distributed in Georgia as was distributed in 2001.

4. In 2017, the amount of oxycodone distributed in zip codes starting in 315, which includes Glynn County, was more than triple the amount distributed in 2000.

5. In 2017, the amount of hydrocodone distributed in zip codes starting in 315 was more than double the amount distributed in 2000.

6. In 2017, the amount of hydromorphone distributed in zip codes starting in 315 was more than nine times the amount distributed in 2001.

7. I understand that 2017 is the most recent year for which the DEA has made information on the volume of distribution of these drugs publicly available.

3

JOSEPH POPPELL

Sworn and subscribed before me this
____ day of April, 2019

Notary Public

LORIE MORRIS
NOTARY PUBLIC – GEORGIA
GLYNN COUNTY
My Commission Exp. Nov 31 2022

4

**General Civil and Domestic Relations Case Filing Information Form**

☑ Superior or ☐ State Court of _Glynn_____ County

| For Clerk Use Only | |
|---|---|
| Date Filed __4/17/19_____ | Case Number ____CE19-00472_____ |
| **MM-DD-YYYY** | |

**Plaintiff(s)**
See Attached

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
See Attached

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _____   **Bar Number** _____   **Self-Represented ☐**

## Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☑ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
**Case Number**                          **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
_____
_____

Version 1.1.18

**IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA**

| PLAINTIFFS | DEFENDANTS |
|---|---|
| JOSEPH POPPELL | CARDINAL HEALTH, INC. |
| K.L.M., through her next friend, JOSEPH POPPELL | CARDINAL HEALTH 108, LLC |
| MADISON MILLER | CARDINAL HEALTH 110, LLC |
| J.B., through his next friend, TAMMY BAILEY | CARDINAL HEALTH 112, LLC |
| B.M., through his next friend, TAMMY BAILEY | CARDINAL HEALTH 113, LLC |
| K.M.M., through her next friend, TAMMY BAILEY | CARDINAL HEALTH 116, LLC |
| BRYSON GUEST | CARDINAL HEALTH 200, LLC |
| J.G., through his next friend, BRYSON GUEST | CARDINAL HEALTH 414, LLC |
| M.G., through his next friend, BRYSON GUEST | McKESSON CORPORATION |
| K.L.H., through her next friend, PATRICIA SMITH | McKESSON DRUG COMPANY, LLC |
| A.G., through her next friend, PATRICIA SMITH | McKESSON MEDICAL-SURGICAL, INC. |
| S.G., through her next friend, PATRICIA SMITH | McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC. |
| K.G.H., through her next friend, PATRICIA SMITH | J M SMITH CORPORATION |
| PATRICIA SMITH on behalf of the ESTATE OF BENTLEY TURNER | G & H PHARMACY, INC. |
| S.T., through his next friend, PATRICIA SMITH | AGAPE PRESCRIPTIONS "R" US, INC. |
| CHREI JONES | JANICE ANN COLTER |
| A.T., through her next friend, MEMORIE TINDALL | CHRISTOPHER GREY MAY |
| R.T., through her next friend, MEMORIE TINDALL | WOODBINE PHARMACY, INC. |
| E.T., through her next friend, MEMORIE TINDALL | SABRA L. MADDOX |
| MEMORIE TINDALL | ALAN M. JONES |
| M.T., through her next friend, WENDI TURNER | CAREY B. JONES |
| M.W., through her next friend, PATRICIA HAYTHORN | RAINBOW DRUG STORE, INC. |
| PATRICIA HAYTHORN | RICHARD D. GRIFFIS, JR. |
| | RICHARD D. GRIFFIS, III |
| | CHARLES ROBERT LOTT |

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Russell M Adams*

CLERK SUPERIOR COURT

## AFFIDAVIT OF SERVICE

State of Georgia                    County of Glynn                    Superior Court

Case Number: CE19-00472

Plaintiff:
JOSEPH POPPELL; K.L.M., through her next friend, JOSEPH POPPELL; MADISON MILLER; J.B., through his next friend, TAMMY BAILEY; B.M., through his next friend, TAMMY BAILEY; K.M.M., through her next friend, TAMMY BAILEY; BRYSON GUEST; J.G., through his next friend, BRYSON GUEST; M.G., through his next friend, BRYSON GUEST; K.L.H., et al
vs.
Defendant:
CARDINAL HEALTH, INC., CARDINAL HEALTH 108, LLC; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 112, LLC; CARDINAL HEALTH 113, LLC; CARDINAL HEALTH 116, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 414, LLC; McKESSON CORPORATION; McKESSON DRUG COMPANY, LLC; McKESSON MEDICAL-SURGICAL, INC.; McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC.; J M SMITH CORPORATION; G & H PHARMACY, INC.; AGAPE PRESCRIPTIONS "R" US, INC.; JANICE ANN COLTER; CHRISTOPHER GREY MAY; WOODBINE PHARMACY, INC.; SABRA L. MADDOX;

For: John Floyd
    Bondurant, Mixson & Elmore, LLP

Received by Ancillary Legal Corporation on the 18th day of April, 2019 at 1:03 pm to be served on Cardinal Health 112 LLC c/o The Corporation Trust Compnay, Corporate Trust center, 1209 Orange Street, Wilmington, DE 19801. I, _Samantha Sulecki_, being duly sworn, depose and say that on the _18_ day of _April_, 20 _19_ at _3:30_ _p_.m., executed service by delivering a true copy of the Summons, Complaint, Verification for Injunctive Relief Request, General civil and Domestic Relations Case Filing Information Form, Document Preservation Letter, Plaintiff's Joseph Poppel's first Interrogatories to Defendant Cardinal Health 112 LLC, Plaintiff's First Request for production of Documents to Defendant Cardinal Health 112 LLC, Plaintiff's First Requests for Admission to Defendant Cardinal Health 112 LLC in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as
_____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____.

(X) CORPORATE SERVICE: By serving _Amy Mcloven_ as
_Corporate Operation Manay_.

( ) OTHER SERVICE: As described in the Comments below by serving
_____ as _____.

( ) NON SERVICE: For the reason detailed in the Comments below.
Age _35-40_ SEX M F Race _Caucasia_ Height _5'5_ Weight _135_ Hair _Brown_ Glasses Y N

## AFFIDAVIT OF SERVICE For CE19-00472

COMMENTS: _____
_____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the 19
day of April, 2019 by the affiant who
is personally known to me.

NOTARY PUBLIC

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**Ancillary Legal Corporation**
**2900 Chamblee Tucker Road**
**Building 13**
**Atlanta, GA 30341**
**(404) 459-8006**

Our Job Serial Number: 2019001741

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0h

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Ronald M Adams*

CLERK SUPERIOR COURT

## AFFIDAVIT OF SERVICE

State of Georgia            County of Glynn            Superior Court

Case Number: CE19-00472

Plaintiff:
JOSEPH POPPELL; K.L.M., through her next friend, JOSEPH
POPPELL; MADISON MILLER; J.B., through his next friend, TAMMY
BAILEY; B.M., through his next friend, TAMMY BAILEY; K.M.M.,
through her next friend, TAMMY BAILEY; BRYSON GUEST; J.G.,
through his next friend, BRYSON GUEST; M.G., through his next
friend, BRYSON GUEST; K.L.H., et al
vs.
Defendant:
CARDINAL HEALTH, INC., CARDINAL HEALTH 108, LLC; CARDINAL
HEALTH 110, LLC; CARDINAL HEALTH 112, LLC; CARDINAL HEALTH
113, LLC; CARDINAL HEALTH 116, LLC; CARDINAL HEALTH 200, LLC;
CARDINAL HEALTH 414, LLC; McKESSON CORPORATION;
McKESSON DRUG COMPANY, LLC; McKESSON MEDICAL-SURGICAL,
INC.; McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC.; J
M SMITH CORPORATION; G & H PHARMACY, INC.; AGAPE
PRESCRIPTIONS "R" US, INC.; JANICE ANN COLTER; CHRISTOPHER
GREY MAY; WOODBINE PHARMACY, INC.; SABRA L. MADDOX;

For: John Floyd
     Bondurant, Mixson & Elmore, LLP

Received by Ancillary Legal Corporation on the 18th day of April, 2019 at 1:03 pm to be served on Cardinal
Health, Inc c/o CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.
I, _TINA L Schroeder_, being duly sworn, depose and say that on the _18th_ day of
_April_, 2019 at _2:15_ p.m., executed service by delivering a true copy of the Summons,
Complaint, Verification for Injunctive Relief Request, General civil and Domestic Relations Case
Filing Information Form, Document Preservation Letter, Plaintiff's Jospeh Poppel's first
Interrogatories to Defendant Cardinal Health Inc, Plaintiff's First Request for production of
Documents to Defendant Cardinal Health Inc, Plaintiff's First Requests for Admission to Defendant
Cardinal Health Inc in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as
_____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____

(X) CORPORATE SERVICE: By serving _Shelbi Sullenberger_ as
_Intake Specialist/Authorized Agent_

( ) OTHER SERVICE: As described in the Comments below by serving
_____ as _____.

( ) NON SERVICE: For the reason detailed in the Comments below.

Age_27_ SEX M/(F)Race _W_ Height_5'08_ Weight_120 lbs_ Hair_BRO_ Glasses(Y) N

## AFFIDAVIT OF SERVICE For CE19-00472

COMMENTS: _____
_____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

MARK T. SHARNSKY
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
August 26, 2023

Subscribed and Sworn to before me on the 18th
day of _____ 2019 by the affiant who
is personally known to me.

NOTARY PUBLIC

PROCESS SERVER # N / A
Appointed in accordance with State Statutes

Ancillary Legal Corporation
2900 Chamblee Tucker Road
Building 13
Atlanta, GA 30341
(404) 459-8006

Our Job Serial Number: 2019001738

Copyright © 1992-2010 Database Services, Inc. - Process Server's Toolbox V8.0h

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Randall M. Arkerman*

CLERK SUPERIOR COURT

ENTRY OF SERVICE                SC-85-2

Civil Action No. CE19-00472

Date Filed 4/17/19

| | |
|---|---|
| Superior Court ☑ | Magistrate Court ☐ |
| State Court ☐ | Probate Court ☐ |
| Juvenile Court ☐ | |
| Georgia, Glynn COUNTY | |

Attorney's Address
Bondurant Mixson & Elmore LLP
One Atlantic Center
1201 W. Peachtree St., NW, Ste. 3900
Atlanta, GA 30309

Name and Address of Party to be Served
Christopher Grey May
110 River Way
Brunswick, GA 31520

Joseph Poppell, et. al.
_____ Plaintiff
VS.
Cardinal Health, Inc. et. al.
_____ Defendant

_____ Garnishee

ENTRY OF SERVICE

**PERSONAL**
☑ I have this day served the defendant Christopher Grey May personally with a copy
of the within action and summons. Complaint, Verification for Injunctive Relief Request, General Civil
Case Filing Form, Summons Christopher Grey May, Document Preservation Letter,
with Initial

I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

**NOTORIOUS**
☐
Delivered same into hands of _____ described as follows
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
☐
Served the defendant _____ a corporation
by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to
the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
☐
Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This 18th day of April, 20 19.

Court-Appointed Process Server
Mark A. Hopper

- Plaintiff Joseph Poppell's First Interrogatories
to Defendant Christopher Grey May;
- Plaintiff's First Request for Production of
Documents to Defendant Christopher Grey May

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

_Ronald M Adams_

CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 |
| --- | --- |

Civil Action No. __CE19-00472__

Date Filed __4/17/19__

Superior Court ☑  Magistrate Court ☐
State Court ☐  Probate Court ☐
Juvenile Court ☐
Georgia, __Glynn__ COUNTY

Attorney's Address
Bondurant Mixson & Elmore LLP
One Atlantic Center
1201 W. Peachtree St., NW, Ste. 3900
Atlanta, GA 30309

Name and Address of Party to be Served
Rainbow Drug Store, Inc.
c/o Richard D. Griffis
4319 New Jesup Hwy.
Brunswick, GA 315200

__Joseph Poppell, et. al.__
Plaintiff

VS.

__Cardinal Health, Inc, et. al.__
Defendant

_____
Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☐
I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐
I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑
Served the defendant _Rainbow Drug Store, Inc._ a corporation by leaving a copy of the within action and summons with _Richard D. Griffis III (co-owner)_ of injunctive in charge of the office and place of doing business of said Corporation in this County. Complaint, Verification of Injunctive Relief Request, General Civil Filing Form, Summons Rainbow Drug Store Inc — Richard D. Griffis, continued...

**TACK & MAIL** ☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐
Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

_Jeanine E Carson_

This __18th__ day of __April__, 20 __19__

Court Appointed Process Server
Mark A. Hopper

- Document Preservation Letter,
- Plaintiff Joseph Poppell's First Interrogatories to Defendant Rainbow Drug Store Inc — Richard Griffis,
- Plaintiff's First Request for Production of Documents to Defendant Rainbow Drug Store, Inc — Richard D. Griffis

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Ronald M Adams*

CLERK SUPERIOR COURT

ENTRY OF SERVICE                    SC-85-2

Civil Action No. CE19-00472

Date Filed 4/17/19

| Superior Court | ☑ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia, Glynn _____ COUNTY

Attorney's Address
Bondurant Mixson & Elmore LLP
One Atlantic Center
1201 W. Peachtree St., NW, Ste. 3900
Atlanta, GA 30309

Name and Address of Party to be Served
Richard D. Griffis III
113 Drakes Landing
Brunswick, GA 31523

Joseph Poppell, et al.
_____ Plaintiff

VS.

Cardinal Health, Inc., et al.
_____ Defendant

_____ Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☑ I have this day served the defendant Richard D. Griffis III personally with a copy of the within action and summons. Complaint, Verification for Injunctive Relief Request, General Civil Case Filing Form, Summons Richard D. Griffis III, Document Preservation Letter, _continued_ by leaving a

I have this day served the defendant _____

**NOTORIOUS** ☐ copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This 18th day of April 20 19

*Jeannine L. Carson*

JEANNINE L. CARSON
MY COMMISSION EXPIRES
NOTARY PUBLIC
JANUARY 05, 2021
GLYNN COUNTY, GEORGIA

Court Appointed Process Server
Mark A. Hopper

- Plaintiff Joseph Poppell's First Interrogatories to Defendant Richard D. Griffis III +
- Plaintiff's First Request for Production of Documents to Defendant Richard D. Griffis III

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Ronald M. Adams*

CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 |
| --- | --- |

Civil Action No. CE19-00472

Date Filed 4/17/19

| | | | |
| --- | --- | --- | --- |
| Superior Court | ☑ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia, Glynn _____ COUNTY

Attorney's Address

Bondurant Mixson & Elmore LLP
One Atlantic Center
1201 W. Peachtree St., NW, Ste. 3900
Atlanta, GA 30309

Name and Address of Party to be Served

Sabra L. Maddox

305 Kingsmarsh Way

St. Simons Island, GA 31522

Joseph Poppell, et. al.
                                           Plaintiff

VS.

Cardinal Health, Inc., et. al.
                                           Defendant

Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☑  I have this day served the defendant Sabra Maddox personally with a copy of the within action and summons. Complaint, Verification for Injunctive Relief Request, General Civil Case filing form, summons, Sabra L. Maddox, Document Preservation letter, *(unfinished)*

**NOTORIOUS** ☐  I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows:
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐  Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐  I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐  Diligent search made and defendant not to be found in the jurisdiction of this Court.

This 18th day of April, 20 19

Court-Appointed Process Server
Mark A. Hopper

*(seal: JEANINE E. CARSON, NOTARY PUBLIC, GLYNN COUNTY, GEORGIA, MY COMMISSION EXPIRES JANUARY 05, 2020)*

- Plaintiff Joseph Poppell's First Interrogatories to Defendant Sabra L. Maddox
- Plaintiff's First Request for Production of Documents to Defendant Sabra L. Maddox

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Russell M. Adams*

CLERK SUPERIOR COURT

## AFFIDAVIT OF SERVICE

**State of Georgia**                    **County of Glynn**                              **Superior Court**

Case Number: CE19-00472

Plaintiff:
JOSEPH POPPELL; K.L.M., through her next friend, JOSEPH
POPPELL; MADISON MILLER; J.B., through his next friend, TAMMY
BAILEY; B.M., through his next friend, TAMMY BAILEY; K.M.M.,
through her next friend, TAMMY BAILEY; BRYSON GUEST; J.G.,
through his next friend, BRYSON GUEST; M.G., through his next
friend, BRYSON GUEST; K.L.H., et al
vs.
Defendant:
CARDINAL HEALTH, INC., CARDINAL HEALTH 108, LLC; CARDINAL
HEALTH 110, LLC; CARDINAL HEALTH 112, LLC; CARDINAL HEALTH
113, LLC; CARDINAL HEALTH 116, LLC; CARDINAL HEALTH 200, LLC;
CARDINAL HEALTH 414, LLC; McKESSON CORPORATION;
McKESSON DRUG COMPANY, LLC; McKESSON MEDICAL-SURGICAL,
INC.; McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC.; J
M SMITH CORPORATION; G & H PHARMACY, INC.; AGAPE
PRESCRIPTIONS "R" US, INC.; JANICE ANN COLTER; CHRISTOPHER
GREY MAY; WOODBINE PHARMACY, INC.; SABRA L. MADDOX;

For: John Floyd
     Bondurant, Mixson & Elmore, LLP

Received by Ancillary Legal Corporation on the 18th day of April, 2019 at 1:03 pm to be served on **Cardinal
Health 108 LLC c/o The Corporation Trust Compnay, Corporate Trust center, 1209 Orange Street,
Wilmington, DE 19801**. I, Samantha Swecks , being duly sworn, depose and say that on the
18 day of April , 2019 at 3:30 p .m., executed service by delivering a true copy of the
**Summons, Complaint, Verification for Injunctive Relief Request, General civil and Domestic
Relations Case Filing Information Form, Document Preservation Letter, Plaintiff's Jospeh Poppel's
first Interrogatories to Defendant Cardinal Health 108 LLC, Plaintiff's First Request for production of
Documents to Defendant Cardinal Health 108 LLC, Plaintiff's First Requests for Admission to
Defendant Cardinal Health 108 LLC** in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as
_____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as

(X) CORPORATE SERVICE: By serving Amy McLaren as
Corporate Operations Manager

( ) OTHER SERVICE: As described in the Comments below by serving
_____ as _____

( ) NON SERVICE: For the reason detailed in the Comments below.

Age 35-40    SEX M/F Race Caucasian Height 5'5 Weight 135   Hair Brown   Glasses Y N

## AFFIDAVIT OF SERVICE For CE19-00472

COMMENTS: _____
_____
_____
_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the
jurisdiction in which this service was made.

Subscribed and Sworn to before me on the ____
day of _____  _____ by the affiant who
is personally known to me.

_____
NOTARY PUBLIC

_____
PROCESS SERVER # _____
Appointed in accordance with State Statutes

**Ancillary Legal Corporation**
**2900 Chamblee Tucker Road**
**Building 13**
**Atlanta, GA 30341**
**(404) 459-8006**

Our Job Serial Number: 2019001740

Copyright © 1992-2013 Database Services, Inc. – Process Server's Toolbox V8.0h

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Randal M Adams*

CLERK SUPERIOR COURT

ENTRY OF SERVICE                    SC-85-2

Civil Action No. **CE 19-00472**

Date Filed **4-17-19**

| | | |
|---|---|---|
| Superior Court | ☑ | Magistrate Court ☐ |
| State Court | ☐ | Probate Court ☐ |
| Juvenile Court | ☐ | |
| Georgia, **Glynn** COUNTY | | |

Attorney's Address **Bondurant, Mixson & Elmore, LLP**
**One Atlantic Center NW,**
**1201 Peachtree St. Suite 3900**
**Atlanta GA. 30309**

Name and Address of Party to be Served
**Cardinal Health 110, LLC.**
**c/o CT Corporation System**
**289 S. Culver St,**
**Lawrenceville, GA. 30046.,**

**Joseph Poppell**
Plaintiff

VS.

**Cardinal Health Inc.**
Defendant

Garnishee

## ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

☑ Served the defendant **Cardinal Health 110, LLC** a corporation by leaving a copy of the within action and summons with **Jane Richardson (Intake Specialist)** in charge of the office and place of doing business of said Corporation in this County. **Complaint, Verification for Injunctive Relief, General Civil Case Filing Form, Summons Cardinal Health 110, LLC, Document Preservation Letter, Plaintiff's First Interrogatories to Defendant Cardinal Health 110, LLC,**

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This **19th** day of **april**, 20 **19**.

Court Appointed Process-Server
Mark A. Hopper

**Plaintiffs First Request for Production to Defendant Cardinal Health 110, LLC.**
**Plaintiffs First Requests for Admission to Defendant Cardinal Health 110, LLC.**

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

_Ronald M Adams_

CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 |
| --- | --- |

Civil Action No. __CE19-00472__

Date Filed __4-17-19__

Superior Court ☑    Magistrate Court ☐
State Court ☐    Probate Court ☐
Juvenile Court ☐
Georgia, __Glynn__ COUNTY

Attorney's Address __Bondurant Mixson + Elmore, LLP__
__One Atlantic Center__
__1201 W. Peachtree St, NW. Suite 3900__
__Atlanta, GA, 30309__

__Joseph Poppell__
Plaintiff

VS.

Name and Address of Party to be Served
__Cardinal Health 113, LLC.__
__C/o CT Corporation System__
__289 S. Culver Street__
__Lawrenceville, GA. 30046__

__Cardinal Health, Inc.__
Defendant

_____
_____
Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☐
I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐
I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑
Served the defendant __Cardinal Health, 113, LLC.__ a corporation
by leaving a copy of the within action and summons with __Jane Richardson ("Intake Specialist")__
in charge of the office and place of doing business of said Corporation in this County. __Complaint, Verification for Injunctive__
__Relief, General Civil Case, Filing Form, Summons Cardinal Health 113, LLC,__
__Document Preservation Letter, Plaintiff's First Interrogatories to Defendant cont.__

**TACK & MAIL** ☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐
Diligent search made and defendant not to be found in the jurisdiction of this Court.

This __19th__ day of __April__, 20 __19__.

_____
Court Appointed Process Server
Mark A. Hopper

__Cardinal Health 113, LLC,__
__Plaintiff's First Requests for Production to Defendant__
__Cardinal Health 113, LLC,__
__Plaintiff's First Requests for Admission to Defendant Cardinal Health 113, LLC,__

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

_Ronald M. Adams_

CLERK SUPERIOR COURT

## AFFIDAVIT OF SERVICE

State of Georgia                    County of Glynn                    Superior Court

Case Number: CE19-00472

Plaintiff:
JOSEPH POPPELL; K.L.M., through her next friend, JOSEPH
POPPELL; MADISON MILLER; J.B., through his next friend, TAMMY
BAILEY; B.M., through his next friend, TAMMY BAILEY; K.M.M.,
through her next friend, TAMMY BAILEY; BRYSON GUEST; J.G.,
through his next friend, BRYSON GUEST; M.G., through his next
friend, BRYSON GUEST; K.L.H., et al
vs.
Defendant:
CARDINAL HEALTH, INC., CARDINAL HEALTH 108, LLC; CARDINAL
HEALTH 110, LLC; CARDINAL HEALTH 112, LLC; CARDINAL HEALTH
113, LLC; CARDINAL HEALTH 116, LLC; CARDINAL HEALTH 200, LLC;
CARDINAL HEALTH 414, LLC; McKESSON CORPORATION;
McKESSON DRUG COMPANY, LLC; McKESSON MEDICAL-SURGICAL,
INC.; McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC.; J
M SMITH CORPORATION; G & H PHARMACY, INC.; AGAPE
PRESCRIPTIONS "R" US, INC.; JANICE ANN COLTER; CHRISTOPHER
GREY MAY; WOODBINE PHARMACY, INC.; SABRA L. MADDOX;

For: John Floyd
Bondurant, Mixson & Elmore, LLP

Received by Ancillary Legal Corporation on the 18th day of April, 2019 at 1:03 pm to be served on Cardinal
Health 116 LLC c/o The Corporation Trust Compnay, Corporate Trust center, 1209 Orange Street,
Wilmington, DE 19801. I, SAMANtha Sulecki, being duly sworn, depose and say that on the
18 day of April, 2019 at 3:30 p.m., executed service by delivering a true copy of the
Summons, Complaint, Verification for Injunctive Relief Request, General civil and Domestic
Relations Case Filing Information Form, Document Preservation Letter, Plaintiff's Jospeh Poppel's
first Interrogatories to Defendant Cardinal Health 116 LLC, Plaintiff's First Request for production of
Documents to Defendant Cardinal Health 116 LLC, Plaintiff's First Requests for Admission to
Defendant Cardinal Health 116 LLC in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as
_____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____

(X) CORPORATE SERVICE: By serving Amy McLaren as
corporate Operations Manager

( ) OTHER SERVICE: As described in the Comments below by serving
_____ as _____.

( ) NON SERVICE: For the reason detailed in the Comments below.

Age 35-40 SEX M (F) Race Caucasian Height 5'5 Weight 135 Hair Brown Glasses Y N

## AFFIDAVIT OF SERVICE For CE19-00472

COMMENTS: _____

_____

_____

_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the 1 9
day of ___April___, 2015 by the affiant who
is personally known to me.

_____
NOTARY PUBLIC

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**Ancillary Legal Corporation**
**2900 Chamblee Tucker Road**
**Building 13**
**Atlanta, GA 30341**
**(404) 459-8006**

Our Job Serial Number: 2019001739

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0h

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

Randall M. Ackerman

CLERK SUPERIOR COURT

ENTRY OF SERVICE                    SC-85-2

Civil Action No. CE 19-00472

Date Filed 4-17-19

| | |
|---|---|
| Superior Court | ☑ |
| State Court | ☐ |
| Juvenile Court | ☐ |
| Magistrate Court | ☐ |
| Probate Court | ☐ |

Georgia, Glynn COUNTY

Attorney's Address Bondurant Mixson + Elmore, LLP
One Atlantic Center
1201 W. Peachtree St. NW. Suite 3900
Atlanta, GA. 30309

Name and Address of Party to be Served
Cardinal Health 200 ; LLC,
C/o CT Corporation System
289 S. Culver Street
Lawrenceville, GA, 30046

_____ Plaintiff

vs.

Joseph Poppell                    Defendant
                                  Plaintiff
vs.

Cardinal Health, Inc.             Garnishee
                                  Defendant

## ENTRY OF SERVICE

**PERSONAL** ☐
I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐
I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑
Served the defendant Cardinal Health 200, LLC, a corporation by leaving a copy of the within action and summons with Jane Richardson (Intake Specialist) in charge of the office and place of doing business of said Corporation in this County. Complaint, Verification for Injunctive Relief, General Civil Case Filing Form Summons Cardinal Health 200, LLC, Document Preservation Letter, Plaintiffs First Interrogatories to Defendant

**TACK & MAIL** ☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐
Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This 19th day of April, 20 19.

Court Appointed Process-Server
Mark A. Hopper

Cardinal Health 200, LLC,
Plaintiffs First Request for Production to Defendant Cardinal Health 200, LLC,
Plaintiffs First Requests for Admission to Defendant Cardinal Health 200, LLC.

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Ronald M Adams*

CLERK SUPERIOR COURT

ENTRY OF SERVICE                    SC-85-2

Civil Action No. CE19-00472

Date Filed 4-17-2019

Superior Court ☑   Magistrate Court ☐
State Court ☐      Probate Court ☐
Juvenile Court ☐

Georgia, _____ COUNTY

Attorney's Address  Bondurant Mixson + Elmore, LLP.
One Atlantic Center
1201 W. Peachtree St. NW. Suite 3900
Atlanta, GA. 30309

Name and Address of Party to be Served
Cardinal Health 414, LLC.
c/o CT Corporation System
289 S. Culver St.
Lawrence, Georgia 30046

Joseph Poppell
                                   Plaintiff
VS.

Cardinal Health Inc.
                                   Defendant

                                   Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☐
I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS** ☐
I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION** ☑
Served the defendant  Cardinal Health 414, LLC.  a corporation
by leaving a copy of the within action and summons with  Jone Richardson (Intake Specialist)
in charge of the office and place of doing business of said Corporation in this County. Complaint, Verification for Injunctive
Relief, General Civil Case Filing form, Summons Cardinal Health 414, LLC,
Document Preservation Letter, Plaintiffs First Interrogatories to Defendant ---cont.

**TACK & MAIL** ☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon, giving notice to
the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐
Diligent search made and defendant
not to be found in the jurisdiction of this Court.

This 19th day of April , 20 19

Cardinal Health 414, LLC.

Court Appointed Process Server
Mark A. Hopper

Plaintiffs First Request For Production to Defendant
Cardinal Health 414, LLC.
Plaintiffs First Requests for Admission to Defendant Cardinal Health 414 LLC.

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Randall M. Adams*

CLERK SUPERIOR COURT

ENTRY OF SERVICE                    SC-85-2

Civil Action No. CE19-00472

Date Filed 4-17-19

| Superior Court | ☑ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia, **Glynn** COUNTY

Attorney's Address **Bondurant Mixson + Elmore LLP**
**One Atlantic Center**
**1201 W. Peachtree St. NW Suite 3900**
**Atlanta, GA 30309**

**Joseph Poppell**
                                    Plaintiff
                              VS.
**Cardinal Health, Inc.**

Name and Address of Party to be Served
**J.M. Smith Corporation**
**c/o CT Corporation System**
**289 S. Culver Street**
**Lawrenceville, GA 30046**

                                    Defendant

_____
                                    Garnishee

## ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

☐ I have this day served the above styled defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

☑ Served the defendant **JM Smith Corporation** a corporation by leaving a copy of the within action and summons with **Jane Richardson (Intake Specialist)** in charge of the office and place of doing business of said Corporation in this County. **Complaint, Verification for Injunctive Relief, General Civil Case Filing form Summons JM Smith Corporation Document Preservation Letter, Plaintiffs First Interrogatories to Defendant**

**TACK & MAIL**

☐ I have this day served the above affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereof containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant not to be found in the jurisdiction of this Court.

This 19th day of April, 20 19.

_____
Court Appointed Process Server
Mark A. Hopper

**JM Smith Corporation**
**Plaintiffs First Request for Production to Defendant**
**JM Smith Corporation**
**Plaintiffs First Requests for Admission to Defendant JM Smith Corporation**

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Randall M Ashman*

CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 |
|---|---|

Civil Action No. _CE19-00472_

Date Filed _4-17-19_

Superior Court ☑   Magistrate Court ☐
State Court ☐   Probate Court ☐
Juvenile Court ☐
Georgia, _Glynn_ _____ COUNTY

Attorney's Address
Bondurant, Mixon & Elmore LLP
One Atlantic Center
1201 W Peachtree St NW, Ste 3900
Atlanta, Ga 30309

_Joseph Poppell, et.al._
Plaintiff

VS.

Name and Address of Party to be Served
McKesson Corporation
c/o Corporation Service Company
40 Technology Pkwy S #300
Norcross, Ga 30042

_Cardinal Health Inc, et.al._
Defendant

Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION** ☑ Served the defendant _McKesson Corporation_ a corporation
by leaving a copy of the within action and summons with _Barry Smith (Office Services)_
in charge of the office and place of doing business of said Corporation in this County. Complaint, Verification to injunctive
Relief Request, General Civil Case Filing Form, Summons McKesson Corporation cont..→

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to
the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant
not to be found in the jurisdiction of this Court.

This _19th_ day of _April_ , 20 _19_

*Jeanine E Carson*

[Notary seal: LEANINE E CARSON, NOTARY PUBLIC, GLYNN COUNTY, GEORGIA, MY COMMISSION EXPIRES JANUARY 05, 2021]

Court Appointed Process Server
Mark A. Hopper

- Document Preservation Letter
- Plaintiff Joseph Poppell's First Interrogatories
  to Defendant McKesson Corporation
- Plaintiffs' First Request for Production of Documents
  to Defendant McKesson Corporation

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Russell M. Adams*

CLERK SUPERIOR COURT

## AFFIDAVIT OF SERVICE

State of Georgia              County of Glynn                    Superior Court

Case Number: CE19-00472

Plaintiff:
JOSEPH POPPELL; K.L.M., through her next friend, JOSEPH
POPPELL; MADISON MILLER; J.B., through his next friend, TAMMY
BAILEY; B.M., through his next friend, TAMMY BAILEY; K.M.M.,
through her next friend, TAMMY BAILEY; BRYSON GUEST; J.G.,
through his next friend, BRYSON GUEST; M.G., through his next
friend, BRYSON GUEST; K.L.H., et al
vs.
Defendant:
CARDINAL HEALTH, INC., CARDINAL HEALTH 108, LLC; CARDINAL
HEALTH 110, LLC; CARDINAL HEALTH 112, LLC; CARDINAL HEALTH
113, LLC; CARDINAL HEALTH 116, LLC; CARDINAL HEALTH 200, LLC;
CARDINAL HEALTH 414, LLC; McKESSON CORPORATION;
McKESSON DRUG COMPANY, LLC; McKESSON MEDICAL-SURGICAL,
INC.; McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC.; J
M SMITH CORPORATION; G & H PHARMACY, INC.; AGAPE
PRESCRIPTIONS "R" US, INC.; JANICE ANN COLTER; CHRISTOPHER
GREY MAY; WOODBINE PHARMACY, INC.; SABRA L. MADDOX;

For: John Floyd
     Bondurant, Mixson & Elmore, LLP

Received by Ancillary Legal Corporation on the 18th day of April, 2019 at 1:03 pm to be served on
McKesson Drug Company LLC c/o Corporation Service Company, 251 Little Falls Drive, Wilmington,
DE 19808. I, Michael Powers, being duly sworn, depose and say that on the 18 day
of April, 2019 at 4:10 p.m., executed service by delivering a true copy of the Summons,
Complaint, Verification for Injunctive Relief Request, General Civil and Domestic Relations Case
Filing Information Form, Document Preservation Letter, Plaintiff's Joseph Poppel's first
Interrogatories to Defendant McKesson Drug Company, Plaintiff's First Request for production of
Documents to Defendant McKesson Drug Company, Plaintiff's First Requests for Admission to
Defendant McKesson Drug Company in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as
_____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as
_____.

(X) CORPORATE SERVICE: By serving Lynanne Gaves as
Litigation Management.

( ) OTHER SERVICE: As described in the Comments below by serving
_____ as _____.

( ) NON SERVICE: For the reason detailed in the Comments below.
Age 35-40 SEX M/F Race Caucasian Height 5'5 Weight 150 Hair Brown Glasses Y N

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM
Ronald M. Adams
CLERK SUPERIOR COURT

ENTRY OF SERVICE    SC-85-2

Civil Action No. **CE 19-00472**

Date Filed **4-17-19**

Superior Court ☒   Magistrate Court ☐
State Court ☐   Probate Court ☐
Juvenile Court ☐
Georgia, **Glynn** COUNTY

Attorney's Address **Bondurant Mixson & Elmore LLP
One Atlantic Center
1201 W Peachtree St. NW Suite 3900
Atlanta, Ga 30309**

Name and Address of Party to be Served
**McKesson Medical-Surgical
Minnesota Supply, Inc.
C/O Corporation Service Company
40 Technology Pkwy S #300
Norcross, Ga 30092**

**Joseph Pappell** Plaintiff

VS.

**Cardinal Health, Inc** Defendant

_____ Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☒ Served the defendant **Cardinal Health, Inc, McKesson Medical Surgical Minnesota Supply, Inc.** a corporation by leaving a copy of the within action and summons with **Bony Smith (Office Service)** in charge of the office and place of doing business of said Corporation in this County. **Complaint, Verification for Injunctive Relief, General Civil Case Filing Form, Summons McKesson Medical-Surgical Minnesota Supply, INC, Document Preservation Letter, Plaintiffs continued**

**TACK & MAIL** ☐ I have this day served the above styled defendant and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant not to be found in the jurisdiction of this Court.

This **19th** day of **April**, 20**19**

Court Appointed Process Server
Mark A. Hopper

**Plaintiffs First Interrogatories to Defendant Mckesson Medical-Surgical Minnesota Supply, Inc., Plaintiffs First Request for Production to Defendant Mckesson Medical-Surgical Minnesota Supply, Inc.
Plaintiffs First Requests for Admission to Defendant Mckesson Medical-Surgical Minnesota Supply, Inc**

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

Randall M. Adams

CLERK SUPERIOR COURT

ENTRY OF SERVICE                    SC-85-2

Civil Action No. CE19-00472

Date Filed 4-17-19

Superior Court ☑   Magistrate Court ☐
State Court ☐      Probate Court ☐
Juvenile Court ☐
Georgia, Glynn _____ COUNTY

Attorney's Address Bondurant Mixson Elmore LLP
One Atlantic Ctr W1201 Peachtree St
Suite 3800
Atlanta, Ga 30309

Name and Address of Party to be Served
McKesson Medical Surgical, Inc.
c/o Corporation Service Company
c/o Technology Pkwy S, #300
Norcross, Ga 30092

Joseph Popell
Plaintiff

VS.

Cardinal Health Inc
Defendant

_____
Garnishee

ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑ Served the defendant _____ McKesson Medical Surgical, Inc. a corporation by leaving a copy of the within action and summons with Barry Smith (Office Services) in charge of the office and place of doing business of said Corporation in this County. Complaint, Verification for Injunctive Relief, General Civil Case Filing Form, Summons for McKesson Medical Surgical, Document Preservation Letter, Plaintiffs First Interrogatories to Defendant McKesson Medical

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ day of April, 2019

Court Appointed Process Server
Mark A. Hopper

- Plaintiff's First Request for Production to Defendant McKesson Medical-Surgical, Inc
- Plaintiff's First Requests for Admission to Defendant McKesson Medical Surgical, Inc

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Randall M Ackerman*

CLERK SUPERIOR COURT

ENTRY OF SERVICE                    SC-85-2

Civil Action No. __CE19-00472__

Date Filed __4/17/19__

| | | | |
|---|---|---|---|
| Superior Court | ☑ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia, __Glynn__ COUNTY

Attorney's Address
Bondurant Mixson & Elmore LLP
One Atlantic Center
1201 W. Peachtree St. NW, Ste. 3900
Atlanta GA 30309

__Joseph Koppell, et.al.__
Plaintiff

VS.

Name and Address of Party to be Served
Alan M. Jones
109 Worth Street
Jesup, GA 31545

__Cardinal Health, Inc., et.al.__
Defendant

Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☑ I have this day served the defendant __Alan M. Jones__ personally with a copy of the within action and summons. Complaint, Verification for Injunctive Relief Request, General Civil Case Filing Form, Summons Alan M. Jones, Document Preservation Letter *Continued*

I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

**NOTORIOUS** ☐ Delivered same into hands of _____ described as follows
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION** ☐ Served the defendant _____ a corporation
by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to
the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant
not to be found in the jurisdiction of this Court.

This __22nd__ day of __april__, 20__19__.

Court Appointed Process Server
Mark A. Hopper

*JEANINE E. BARON
COMMISSION EXPIRES
NOTARY PUBLIC
JANUARY 05, 2021
GLYNN COUNTY, GEORGIA*

- Plaintiff Joseph Koppell's First Interrogatories
to Defendant Alan M. Jones
- Plaintiff's First Request for Production of
Documents to Defendant Alan M. Jones

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

_Russell M. Adams_

CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 |
|---|---|

Civil Action No. _CE19-00472_

Date Filed _4/17/19_

Superior Court ☑   Magistrate Court ☐
State Court ☐   Probate Court ☐
Juvenile Court ☐
Georgia, _Glynn_ COUNTY

Attorney's Address
_Bondurant Mixson & Elmore LLP_
_One Atlantic Center_
_1201 W. Peachtree St., NW, Ste. 3900_
_Atlanta, GA 30309_

Name and Address of Party to be Served
_Carey B. Jones_
_908 Georgia Ave, Ste. 1_
_Woodbine, GA 31569_

_Joseph Poppell, et. al._
                              Plaintiff

VS.

_Cardinal Health Inc. et. al._
                              Defendant

_____
                              Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☑ I have this day served the defendant _Carey B. Jones_ personally with a copy of the within action and summons. _Complaint, Verification for Injunctive Relief Request, General Civil Case Filing Form, Summons Carey B. Jones, Document Preservation Letter_
(continued)

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

**NOTORIOUS** ☐ Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant not to be found in the jurisdiction of this Court.

This _22nd_ day of _April_, 20_19_

_Plaintiff Joseph Poppell's First Interrogatories to Defendant Carey B. Jones_
_Plaintiff's First Request for Production of Documents to Defendant Carey B. Jones_

Court Appointed Process Server
Mark A. Hopper

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM
*Ronald M. Adderson*
CLERK SUPERIOR COURT

ENTRY OF SERVICE          SC-85-2

Civil Action No. CE19-00472

Date Filed 4/17/19

Superior Court ✓   Magistrate Court ☐
State Court ☐   Probate Court ☐
Juvenile Court ☐
Georgia, Glynn COUNTY

Attorney's Address
Bondurant Mixson & Elmore LLP
One Atlantic Center
1201 W. Peachtree St, NW, Ste. 3900
Atlanta, GA 30309

Name and Address of Party to be Served
Charles Robert Lott
350 Major Wright Rd.
St. Simons Island, GA 31522

Joseph Poppell, et.al.
Plaintiff
VS.
Cardinal Health, Inc. et.al.
Defendant

Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant _____ personally with a copy of the within action and summons. Complaint, Verification to Injunctive Relief Request, General Civil Case Filing Fee, Summons Charles Robert Lott, Document Preservation Letter continued...

**NOTORIOUS** ☑ I have this day served the defendant Charles Robert Lott by leaving a copy of the action and summons at his most notorious place of abode in this County.
Delivered same into hands of Rebecca Lott (wife) described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant not to be found in the jurisdiction of this Court.

This 22nd day of April, 20 19

Court Appointed Process Server
Mark A. Hopper

- Plaintiff Joseph Poppell's First Interrogatories to Defendant Charles Robert Lott
- Plaintiff's First Request for Production of Documents to Defendant Charles Robert Lott

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Ronald M. Adams*

CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 |
|---|---|

Civil Action No. _CE19-00472_

Date Filed _4/17/19_

| | |
|---|---|
| Superior Court ☑ | Magistrate Court ☐ |
| State Court ☐ | Probate Court ☐ |
| Juvenile Court ☐ | |
| Georgia, _Glynn_ COUNTY | |

Attorney's Address
_Bondurant Mixson & Elmore LLP_
_One Atlantic Center_
_1201 W. Peachtree St., NW, Ste. 3900_
_Atlanta, GA 30309_

Name and Address of Party to be Served
_Richard D. Griffis, JR_
_4319 New Jesup Hwy._
_Brunswick, GA 31520_

_Joseph Poppell, et.al._
Plaintiff

VS.

_Cardinal Health, Inc., et.al._
Defendant

_____
Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☑ I have this day served the defendant _Richard D. Griffis, Jr_ personally with a copy of the within action and summons. _Complaint, Verification for Injunctive Relief Request, General Civil Case Filing Form, Summons Richard D. Griffis, JR, Document Preservation Letter, Continued..._

☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

**NOTORIOUS** ☐ Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _22nd_ day of _April_, 20_19_

_Jeanine E. Carson_

Court Appointed Process Server
Mark A. Hopper

- Plaintiff Joseph Poppell's First Interrogatories to Defendant Richard D. Griffis, JR,
- Plaintiff's First Request for Production of Documents to Defendant Richard D. Griffis, JR

# HOPPER SERVICES

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*Ronald M Adams*

CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 |
|---|---|

Civil Action No. **CE19-00472**

Date Filed **4/17/19**

| | | |
|---|---|---|
| Superior Court | ☑ | Magistrate Court ☐ |
| State Court | ☐ | Probate Court ☐ |
| Juvenile Court | ☐ | |
| Georgia, **Glynn** _____ COUNTY | | |

Attorney's Address

**Bondurant Mixson & Elmore LLP**
**One Atlantic Center**
**1201 W. Peachtree St, NW, Ste. 3900**
**Atlanta, GA 30309**

Name and Address of Party to be Served

**Woodbine Pharmacy, Inc.**
**C/o Carey B. Jones**
**908 Georgia Ave, Ste. 1**
**Woodbine, GA 31569**

**Joseph Poppell, et. al.**
Plaintiff

VS.

**Cardinal Health, Inc, et. al.**
Defendant

_____
Garnishee

### ENTRY OF SERVICE

**PERSONAL** ☐
I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS** ☐
I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION** ☑
Served the defendant **Woodbine Pharmacy, Inc** _____ a corporation
by leaving a copy of the within action and summons with **Carey B. Jones** _____
in charge of the office and place of doing business of said Corporation in this County. **Complaint, Verification for Injunctive**
**Relief Request, General Civil case filing form, Summons Woodbine Pharmacy Inc-**
**Carey B. Jones, Continued...**

**TACK & MAIL**
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an
envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to
the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐
Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This **22nd** day of **April** _____ 20 **19**

_Jeanine E Carson_

[Notary seal: JEANINE E CARSON, NOTARY PUBLIC, GLYNN COUNTY, GEORGIA, MY COMMISSION EXPIRES JANUARY 05, 20__]

Court Appointed Process Server
Mark A. Hopper

- **Document Preservation Letter — Woodbine Pharmacy, Inc — Carey B. Jones**
- **Plaintiff Joseph Poppell's First Interrogatories**
**to Defendant Woodbine Pharmacy, Inc -**
**Carey B. Jones**
- **Plaintiff's First Request for Production of Documents**
**to Defendant Woodbine Pharmacy, Inc - Carey B. Jones**

# THE TOSTENSEN COMPANY

Notary. *Heather J. Wuehler*
My Commission *Lynn Co. Clerk's Office*
*4/25/2019 2:59 PM*

*Russell M. Ackerman*
CLERK SUPERIOR COURT

ENTRY OF SERVICE                    SC-85-2

Civil Action No. _CE19-00172_

Date Filed _9/17/19_

| Superior Court | ☑ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | ☐ |

Georgia, _Glynn_ _____ COUNTY

Attorney's Address
_Barthwnt Missory Elmore LLP_
_One Atlantic Center_
_1201 W Peachtree St, NW, Ste 3700_
_Atlanta, GA 30309_

Name and Address of Party to be Served
_Agape Prescriptions "R" Us, Inc._
_c/o Janice Ann Carter_
_1324 North Way_
_Darien, GA 31305_

_Joseph Poppell et al._
Plaintiff

vs.

_Cardinal Health, Inc., et al._
Defendant

_____
Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☐
I have this day served the defendant_____personally with a copy of the within action and summons.

**NOTORIOUS** ☐
I have this day served the defendant_____by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑
✓ Served the defendant _Agape Prescriptions "R" Us, Inc._ a corporation by leaving a copy of the within action and summons with _Janice Ann Carter, Reg Agent_ in charge of the office and place of doing business of said Corporation in this County. _Complaint, Verification for Injunctive Relief Prayer, General Civil Case Filing form, Summons Agape Prescriptions "R" Us Inc - Janice Ann Carter, Unknown -_ _Plaintiff First Request for Production of ..._

**TACK & MAIL** ☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

_Agape Prescriptions "R" Us Inc_
_Janice Ann Carter_

**NON EST** ☐
Diligent search made and defendant_____not to be found in the jurisdiction of this Court.

This _23rd_ day of _April_ 20 _19_

Time_____AM/PM

_Samuel A. Tostensen_

- _Document Preservation Letter_
- _Plaintiff Joseph Poppell's First Interrogatories To Defendant Agape Prescriptions "R" Us, Inc - Janice Ann Carter_

# THE TOSTENSEN COMPANY

FILED
GLYNN CO. CLERK'S OFFICE
4/25/2019 2:59 PM

*[stamp, partially illegible]*
CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 | |
|---|---|---|

Civil Action No. _CE.19 - 0047_

Date Filed _4/17/19_

| | | | |
|---|---|---|---|
| Superior Court | ☑ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |
| Georgia, _Glynn_ | | | COUNTY |

Attorney's Address

_Pendergast, Nixson & Elmore, LLP_
_One Atlantic Center_
_1201 W. Peachtree St., NW, Ste. 3400_
_Atlanta, GA 30309_

Name and Address of Party to be Served

_c/o Walda Lou Lewis_
_G&H Pharmacy, Inc._
_5711 Altama Ave._
_Brunswick, GA 31525_

_Joseph Peppell, et al._

Plaintiff

VS.

_Cardinal Health, Inc., et al._

Defendant

Garnishee

## ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows: age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑ Served the defendant _Walda Lou Lewis_ _G&H Pharmacy, Inc._ a corporation by leaving a copy of the within action and summons with _Reg. Agent Walda Lou Lewis_ in charge of the office and place of doing business of said Corporation in this County. _Complaint, Petition for Injunctive Relief, Request, E-filed civil case filing fee, Summons G&H Pharmacy, Inc. – Walda Lou Lewis (continued)_

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _23rd_ day of _April_, 20 _19_.

Time _____ AM/PM

_Samuel A. Tostensen_

_- Discovery Arbitration Letter_
_- Plaintiff Joseph Peppells First Interrogatories to Defendant_
_G&H Pharmacy, Inc. – Walda Lou Lewis, Plaintiffs First Request for Production of Documents to_
_Defendant G&H Pharmacy, Inc. – Walda Lou Lewis_

# THE TOSTENSEN COMPANY

NOTARY - *[illegible handwriting]*
My Commission GLYNN CO, CLERK'S OFFICE
4/26/2019 2:59 PM

CLERK SUPERIOR COURT

| ENTRY OF SERVICE | SC-85-2 |
|---|---|

Civil Action No. _CE 19-0247__

Date Filed _4/11/19_

| | |
|---|---|
| Superior Court | ☑ |  Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | ☐ |

Georgia, _Glynn_ COUNTY

Attorney's Address
Ferdinant Medrin ( Eltzinle UP
One Atlantic Center
1201 W Peachtree St., NW, Ste. 3900
Atlanta, GA 30309

Name and Address of Party to be Served
Janice Ann Colter

1209 North Way

Baxter, GA 31305

_Joseph Poppell, et al._ 
Plaintiff

vs.

_Cardinal Health, Inc. et al._
Defendant

Garnishee

## ENTRY OF SERVICE

**PERSONAL**
☑ I have this day served the defendant _Janice Ann Colter_ personally with a copy of the within action and summons. *[illegible handwritten text]*
_Janice Ann Colter (General Civil Cox Filing Ge, Document Plex'esthia Letter (continued_

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

**NOTORIOUS**
☐ Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**
☐ Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail First Class in an envelope properly addressed tot he defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _23rd_ day of _April_, 20_19_

Time _____ AM/PM

*[illegible handwritten text]* Plaintiff Joseph Poppell's First Interrogatories to Defendant
Janice Ann Colter
Plaintiff, First Request for Production of Documents to
Defendant Janice Ann Colter

Samuel A. Tostensen

FILED
GLYNN CO. CLERK'S OFFICE
5/3/2019 11:58 AM

*Russell M Ackerman*

CLERK SUPERIOR COURT

### IN THE SUPERIOR COURT OF GLYNN COUNTY
### STATE OF GEORGIA

|  |  |
|---|---|
| JOSEPH POPPELL; K.L.M., through her next friend, JOSEPH POPPELL; MADISON MILLER; J.B., through his next friend, TAMMY BAILEY; B.M., through his next friend, TAMMY BAILEY; K.M.M., through her next friend, TAMMY BAILEY; BRYSON GUEST; J.G., through his next friend, BRYSON GUEST; M.G., through his next friend, BRYSON GUEST; K.L.H., through her next friend, PATRICIA SMITH; A.G., through her next friend, PATRICIA SMITH; S.G., through her next friend, PATRICIA SMITH; K.G.H., through her next friend, PATRICIA SMITH; PATRICIA SMITH on behalf of the ESTATE OF BENTLEY TURNER; S.T., through his next friend, PATRICIA SMITH; CHREI JONES; A.T., through her next friend, MEMORIE TINDALL; R.T., through her next friend, MEMORIE TINDALL; E.T., through her next friend, MEMORIE TINDALL; M.T., through her next friend, WENDI TURNER, M.W., through her next friend, PATRICIA HAYTHORN, and PATRICIA HAYTHORN, | Civil Action File No. CE19-00472 |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| CARDINAL HEALTH, INC., CARDINAL HEALTH 108, LLC; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 112, LLC; CARDINAL HEALTH 113, LLC; CARDINAL HEALTH 116, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 414, LLC; McKESSON CORPORATION; McKESSON DRUG COMPANY, LLC; McKESSON MEDICAL-SURGICAL, INC.; McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC.; J M SMITH CORPORATION; G & H PHARMACY, INC.; AGAPE PRESCRIPTIONS "R" US, INC.; JANICE ANN COLTER; CHRISTOPHER GREY MAY; WOODBINE PHARMACY, INC.; SABRA L. MADDOX; ALAN M. JONES; CAREY B. JONES; RAINBOW DRUG STORE, INC.; RICHARD D. GRIFFIS, JR.; RICHARD D. GRIFFIS, III; and CHARLES ROBERT LOTT. | |
| Defendants. | |

### VERIFIED APPLICATION IN SUPPORT OF MOTION FOR ADMISSION

1761867.1

## *PRO HAC VICE* OF JENNIFER M. ROBBINS

Pursuant to Georgia Uniform Superior Court Rule 4.4, I, Jennifer M. Robbins (Applicant),

hereby apply to this Honorable Court for admission to practice in the above-styled case *pro hac*

*vice*. In support of this application, Applicant states as follows:

1.    My business address is below, and I reside in Bloomington, Minnesota:
MADEL PA
800 Pence Building
800 Hennepin Avenue
Minneapolis, Minnesota 55403
Phone: (612) 605-0630        Facsimile: (612) 326-9990
jrobbins@madellaw.com

2.    I have been retained to represent the following client(s):
JOSEPH POPPELL;
K.L.M., through her next friend, JOSEPH POPPELL;
MADISON MILLER;
J.B., through his next friend, TAMMY BAILEY;
B.M., through his next friend, TAMMY BAILEY;
K.M.M., through her next friend, TAMMY BAILEY;
BRYSON GUEST;
J.G., through his next friend, BRYSON GUEST;
M.G., through his next friend, BRYSON GUEST;
K.L.H., through her next friend, PATRICIA SMITH;
A.G., through her next friend, PATRICIA SMITH;
S.G., through her next friend, PATRICIA SMITH;
K.G.H., through her next friend, PATRICIA SMITH;
PATRICIA SMITH on behalf of the ESTATE OF BENTLEY TURNER;
S.T., through his next friend, PATRICIA SMITH;
CHREI JONES;
A.T., through her next friend, MEMORIE TINDALL;
R.T., through her next friend, MEMORIE TINDALL;
E.T., through her next friend, MEMORIE TINDALL;
MEMORIE TINDALL;
M.T., through her next friend, WENDI TURNER;
M.W., through her next friend, PATRICIA HAYTHORN and
PATRICIA HAYTHORN

3.    I am a member in good standing of the following jurisdictions:

Jurisdictions:  United States Supreme Court
Date Admitted: 3/18/13
Still Admitted: Yes
Bar/Registration No.: 286592

Jurisdictions:  United States Court of Appeals, Second Circuit
Date Admitted: 9/7/2016

Still Admitted: Yes
Bar/Registration No.: N/A

Jurisdictions:   United States Court of Appeals, Eighth Circuit
Date Admitted: 10/16/2012
Still Admitted: Yes
Bar/Registration No.: 12-0502

Jurisdictions:   United States Court of Appeals, Ninth Circuit
Date Admitted: 7/29/2011
Still Admitted: Yes
Bar/Registration No.: N/A

Jurisdictions:   United States Court of Appeals, District of Columbia
Date Admitted: 9/15/2015
Still Admitted: Yes
Bar/Registration No.: 56253

Jurisdictions:   United States Court of Appeals for the Federal Circuit
Date Admitted: 6/6/2017
Still Admitted: Yes
Bar/Registration No.: N/A

Jurisdictions:   United States District Court, Minnesota
Date Admitted: 12/3/2007
Still Admitted: Yes
Bar/Registration No.: 0387745

Jurisdictions:   United States District Court, Eastern District of Wisconsin
Date Admitted: 4/6/2009
Still Admitted: Yes
Bar/Registration No.: 0387745

Jurisdictions:   United States District Court, Western District of Wisconsin
Date Admitted: 2/9/2016
Still Admitted: Yes
Bar/Registration No.: 387745

Jurisdictions:   State Bar of Minnesota
Date Admitted: 10/26/2007
Still Admitted: Yes
Bar/Registration No.: 0387745

4.   I have never been a member of the State Bar of Georgia.

5.   I have never been denied *pro hac vice* admission in Georgia.

1761867.1

6.    I have never had *pro hac vice* admission revoked in Georgia.

7.    I have never been sanctioned or formally disciplined by a court in Georgia.

8.    I have never been the subject of any formal disciplinary proceedings.

9.    I have never been formally held in contempt, or otherwise sanctioned by a court in a written order, for disobedience to its rules or orders.

10.   In the past two years I have not applied for *pro hac vice* admission in Georgia.

11.   I have reviewed and am familiar with the Georgia Rules of Professional Conduct and all court rules relevant to practice before the court in which I am seeking admission.

12.   My local sponsor is:
      John E. Floyd, Bar Number 266413
      Bondurant, Mixson & Elmore, LLP
      1201 W. Peachtree St., NW, Ste. 3900
      Atlanta, Georgia 30309
      Telephone: (404) 881-4159

13.   I am currently representing one or all of the clients listed above in matters related to this proceeding: Joseph Poppell, et al. v. Cardinal Health, Inc., et al.

14.   Is there any additional information you would like to provide to the Court?  None at this time.

15.   When I file my application, I will forward a copy to the State Bar of Georgia along with a check or money order made payable to the State Bar of Georgia in the amount of $275, as this is my first application filed this calendar year.

I, Jennifer M. Robbins, applicant in the foregoing Verified Application for *Pro Hac Vice* Admission, hereby verify the facts contained therein are true and accurate to the best of my knowledge.

This _30_ day of _April_ , 2019.

_____
Applicant, Jennifer M. Robbins

Sworn to before me this _30th_ day of _April_ , 2019.

_____
Notary Public

```
KELSEY M LUND
Notary Public
Minnesota
My Commission Expires
Jan 31, 2023
```

1761867.1

FILED
GLYNN CO. CLERK'S OFFICE
5/3/2019 11:58 AM

*Ronald M. Adams*

CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

JOSEPH POPPELL; K.L.M., through her next friend, JOSEPH POPPELL; MADISON MILLER; J.B., through his next friend, TAMMY BAILEY; B.M., through his next friend, TAMMY BAILEY; K.M.M., through her next friend, TAMMY BAILEY; BRYSON GUEST; J.G., through his next friend, BRYSON GUEST; M.G., through his next friend, BRYSON GUEST; K.L.H., through her next friend, PATRICIA SMITH; A.G., through her next friend, PATRICIA SMITH; S.G., through her next friend, PATRICIA SMITH; K.G.H., through her next friend, PATRICIA SMITH; PATRICIA SMITH on behalf of the ESTATE OF BENTLEY TURNER; S.T., through his next friend, PATRICIA SMITH; CHREI JONES; A.T., through her next friend, MEMORIE TINDALL; R.T., through her next friend, MEMORIE TINDALL; E.T., through her next friend, MEMORIE TINDALL; MEMORIE TINDALL; M.T., through her next friend, WENDI TURNER, M.W., through her next friend, PATRICIA HAYTHORN, and PATRICIA HAYTHORN,

      Plaintiffs,

v.

CARDINAL HEALTH, INC., CARDINAL HEALTH 108, LLC; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 112, LLC; CARDINAL HEALTH 113, LLC; CARDINAL HEALTH 116, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 414, LLC; McKESSON CORPORATION; McKESSON DRUG COMPANY, LLC; McKESSON MEDICAL-SURGICAL, INC.; McKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY, INC.; J M SMITH CORPORATION; G & H PHARMACY, INC.; AGAPE PRESCRIPTIONS "R" US, INC.; JANICE ANN COLTER; CHRISTOPHER GREY MAY; WOODBINE PHARMACY, INC.; SABRA L. MADDOX; ALAN M. JONES; CAREY B. JONES; RAINBOW DRUG STORE, INC.; RICHARD D. GRIFFIS, JR.; RICHARD D. GRIFFIS, III; and CHARLES ROBERT LOTT,

      Defendants.

Civil Action File
No. CE19-00472

JURY TRIAL DEMANDED

1761975.1

<u>VERIFIED APPLICATION IN SUPPORT OF MOTION FOR ADMISSION</u>
<u>*PRO HAC VICE* OF STEPHEN M. PREMO</u>

Pursuant to Georgia Uniform Superior Court Rule 4.4, I, Stephen M. Premo (Applicant), hereby apply to this Honorable Court for admission to practice in the above-styled case *pro hac vice*. In support of this application, Applicant states as follows:

1.  My business address is below, and I reside in Minneapolis, Minnesota:
    MADEL PA
    800 Pence Building
    800 Hennepin Avenue
    Minneapolis, Minnesota 55403
    Phone: (612) 605-0630        Facsimile: (612) 326-9990
    spremo@madellaw.com

2.  I have been retained to represent the following client(s):
    JOSEPH POPPELL;
    K.L.M., through her next friend, JOSEPH POPPELL;
    MADISON MILLER;
    J.B., through his next friend, TAMMY BAILEY;
    B.M., through his next friend, TAMMY BAILEY;
    K.M.M., through her next friend, TAMMY BAILEY;
    BRYSON GUEST;
    J.G., through his next friend, BRYSON GUEST;
    M.G., through his next friend, BRYSON GUEST;
    K.I.H., through her next friend, PATRICIA SMITH;
    A.G., through her next friend, PATRICIA SMITH;
    S.G., through her next friend, PATRICIA SMITH;
    K.G.H., through her next friend, PATRICIA SMITH;
    PATRICIA SMITH on behalf of the ESTATE OF BENTLEY TURNER;
    S.T., through his next friend, PATRICIA SMITH;
    CHREI JONES;
    A.T., through her next friend, MEMORIE TINDALL;
    R.T., through her next friend, MEMORIE TINDALL;
    E.T., through her next friend, MEMORIE TINDALL;
    MEMORIE TINDALL;
    M.T., through her next friend, WENDI TURNER;
    M.W., through her next friend, PATRICIA HAYTHORN and
    PATRICIA HAYTHORN.

3.  I am a member in good standing of the following jurisdictions:

    Jurisdictions:  United States District Court, Minnesota
    Date Admitted: 12/12/14
    Still Admitted:  Yes
    Bar/Registration No.: 393346

Jurisdictions:  United States District Court, North Dakota
Date Admitted: 1/30/15
Still Admitted:  Yes
Bar/Registration No.: 393346

Jurisdictions:  State Bar of Minnesota
Date Admitted: 10/26/12
Still Admitted:  Yes
Bar/Registration No.: 0393346

4.  I have never been a member of the State Bar of Georgia.

5.  I have never been denied *pro hac vice* admission in Georgia.

6.  I have never had *pro hac vice* admission revoked in Georgia.

7.  I have never been sanctioned or formally disciplined by a court in Georgia.

8.  I have never been the subject of any formal disciplinary proceedings.

9.  I have never been formally held in contempt, or otherwise sanctioned by a court in a written order, for disobedience to its rules or orders.

10.  In the past two years I have not applied for *pro hac vice* admission in Georgia.

11.  I have reviewed and am familiar with the Georgia Rules of Professional Conduct and all court rules relevant to practice before the court in which I am seeking admission.

12.  My local sponsor is:
John E. Floyd, Bar Number 266413
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree St., NW, Ste. 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4159

13.  I am currently representing one or all of the clients listed above in matters related to this proceeding: Joseph Poppell, et al. v. Cardinal Health, Inc., et al.

14.  Is there any additional information you would like to provide to the Court?  None at this time.

1761975.1

15.   When I file my application, I will forward a copy to the State Bar of Georgia along with a
      check or money order made payable to the State Bar of Georgia in the amount of $275, as
      this is my first application filed this calendar year.

      I, Stephen M. Premo, applicant in the foregoing Verified Application for *Pro Hac Vice*
Admission, hereby verify the facts contained therein are true and accurate to the best of my
knowledge.

      This 30ᵗʰ day of April , 2019.


                                             _____
                                             Applicant, Stephen M. Premo


      Sworn to before me this 30ᵗʰ day of April , 2019.


                                             _____
                                             Notary Public


                        KELSEY M LUND
                         Notary Public
                          Minnesota
                     My Commission Expires
                         Jan 31, 2023

IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA

JOSEPH POPPELL; K.L.M., through her next friend,
JOSEPH POPPELL; MADISON MILLER; J.B., through
his next friend, TAMMY BAILEY; B.M., through his
next friend, TAMMY BAILEY; K.M.M., through her
next friend, TAMMY BAILEY; BRYSON GUEST; J.G.,
through his next friend, BRYSON GUEST; M.G.,
through his next friend, BRYSON GUEST; K.L.H.,
through her next friend, PATRICIA SMITH; A.G.,
through her next friend, PATRICIA SMITH; S.G.,
through her next friend, PATRICIA SMITH; K.G.H.,
through her next friend, PATRICIA SMITH; PATRICIA
SMITH on behalf of the ESTATE OF BENTLEY
TURNER; S.T., through his next friend, PATRICIA
SMITH; CHREI JONES; A.T., through her next friend,
MEMORIE TINDALL; R.T., through her next friend,
MEMORIE TINDALL; E.T., through her next friend,
MEMORIE TINDALL; MEMORIE TINDALL; M.T.,
through her next friend, WENDI TURNER, M.W.,
through her next friend, PATRICIA HAYTHORN, and
PATRICIA HAYTHORN,

       Plaintiffs,

v.

CARDINAL HEALTH, INC., CARDINAL HEALTH
108, LLC; CARDINAL HEALTH 110, LLC;
CARDINAL HEALTH 112, LLC; CARDINAL
HEALTH 113, LLC; CARDINAL HEALTH 116, LLC;
CARDINAL HEALTH 200, LLC; CARDINAL
HEALTH 414, LLC; McKESSON CORPORATION;
McKESSON DRUG COMPANY, LLC; McKESSON
MEDICAL-SURGICAL, INC.; McKESSON MEDICAL-
SURGICAL MINNESOTA SUPPLY, INC.; J M SMITH
CORPORATION; G & H PHARMACY, INC.; AGAPE
PRESCRIPTIONS "R" US, INC.; JANICE ANN
COLTER; CHRISTOPHER GREY MAY; WOODBINE
PHARMACY, INC.; SABRA L. MADDOX; ALAN M.
JONES; CAREY B. JONES; RAINBOW DRUG STORE,
INC.; RICHARD D. GRIFFIS, JR.; RICHARD D.
GRIFFIS, III; and CHARLES ROBERT LOTT.

       Defendants.

Civil Action File
No. CE19-00472

JURY TRIAL DEMANDED

**ORDER FOR PRO HAC VICE ADMISSION OF MACK H. REED**

1761965.1

Based on the Verified Application for *Pro Hac Vice* Admission submitted to this Court, the statement of the Office of General Counsel of the State Bar of Georgia, and the absence of any objection from Defendants, the Court **GRANTS** the Application for *Pro Hac Vice* Admission for Mack H. Reed from Madel PA.

By this **ORDER**, Mr. Mack H. Reed is admitted *pro hac vice* to appear before this Court in this action.

The Court issues this order on _____, 2019.


_____
Judge
Superior Court of Glynn County


**Order Proposed By Plaintiffs:**

John E. Floyd
Manoj Sachin Varghese
**Bondurant, Mixson & Elmore, LLP**
1201 W. Peachtree St., NW, Ste. 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4100
floyd@bmelaw.com
varghese@bmelaw.com

Mack H. Reed
**Madel PA**
800 Pence Building
800 Hennepin Avenue
Minneapolis, Minnesota 55403
Phone: (612) 605-0630
mreed@madellaw.com

James D. Durham
Georgia Bar No. 235515
**Savage Turner Durham**
**Pickney & Savage**
102 E. Liberty Street, 8th Floor
Savannah, GA 31401
T: 912-231-1140
jdurham@savagelawfirm.net

Christopher W. Madel
Georgia Bar No. 641270
**MADEL, PA**
800 Pence Building
800 Hennepin Ave.
Minneapolis, MN 55403
T: 612-605-0630
cmadel@madellaw.com

Ronald E. Harrison II, Esq.
Georgia Bar No. 333270
**The Harrison Firm**
1621 Reynolds Street
Brunswick, GA 31520
T: 912-264-3035
thf@theharrisonlawfirm.net

*Attorneys for Plaintiffs*

FILED
GLYNN CO. CLERK'S OFFICE
5/3/2019 11:58 AM

*Randal M Antwine*

CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

JOSEPH POPPELL; K.L.M., through her next friend,
JOSEPH POPPELL; MADISON MILLER; J.B., through
his next friend, TAMMY BAILEY; B.M., through his
next friend, TAMMY BAILEY; K.M.M., through her
next friend, TAMMY BAILEY; BRYSON GUEST; J.G.,
through his next friend, BRYSON GUEST; M.G.,
through his next friend, BRYSON GUEST; K.L.H.,
through her next friend, PATRICIA SMITH; A.G.,
through her next friend, PATRICIA SMITH; S.G.,
through her next friend, PATRICIA SMITH; K.G.H.,
through her next friend, PATRICIA SMITH; PATRICIA
SMITH on behalf of the ESTATE OF BENTLEY
TURNER; S.T., through his next friend, PATRICIA
SMITH; CHREI JONES; A.T., through her next friend,
MEMORIE TINDALL; R.T., through her next friend,
MEMORIE TINDALL; E.T., through her next friend,
MEMORIE TINDALL; MEMORIE TINDALL; M.T.,
through her next friend, WENDI TURNER, M.W.,
through her next friend, PATRICIA HAYTHORN, and
PATRICIA HAYTHORN,

      Plaintiffs,

v.

CARDINAL HEALTH, INC., CARDINAL HEALTH
108, LLC; CARDINAL HEALTH 110, LLC;
CARDINAL HEALTH 112, LLC; CARDINAL
HEALTH 113, LLC; CARDINAL HEALTH 116, LLC;
CARDINAL HEALTH 200, LLC; CARDINAL
HEALTH 414, LLC; McKESSON CORPORATION;
McKESSON DRUG COMPANY, LLC; McKESSON
MEDICAL-SURGICAL, INC.; McKESSON MEDICAL-
SURGICAL MINNESOTA SUPPLY, INC.; J M SMITH
CORPORATION; G & H PHARMACY, INC.; AGAPE
PRESCRIPTIONS "R" US, INC.; JANICE ANN
COLTER; CHRISTOPHER GREY MAY; WOODBINE
PHARMACY, INC.; SABRA L. MADDOX; ALAN M.
JONES; CAREY B. JONES; RAINBOW DRUG STORE,
INC.; RICHARD D. GRIFFIS, JR.; RICHARD D.
GRIFFIS, III; and CHARLES ROBERT LOTT.

      Defendants.

Civil Action File
No. CE19-00472

**JURY TRIAL DEMANDED**

1761965.1

## <u>VERIFIED APPLICATION IN SUPPORT OF MOTION FOR ADMISSION</u>
## <u><em>PRO HAC VICE</em> OF MACK H. REED</u>

Pursuant to Georgia Uniform Superior Court Rule 4.4, I, Mack H. Reed (Applicant),

hereby apply to this Honorable Court for admission to practice in the above-styled case *pro hac*

*vice*. In support of this application, Applicant states as follows:

1.    My business address is below, and I reside in Minneapolis, Minnesota:
MADEL PA
800 Pence Building
800 Hennepin Avenue
Minneapolis, Minnesota 55403
Phone: (612) 605-0630       Facsimile: (612) 326-9990
mreed@madellaw.com

2.    I have been retained to represent the following client(s):
JOSEPH POPPELL;
K.L.M., through her next friend, JOSEPH POPPELL;
MADISON MILLER;
J.B., through his next friend, TAMMY BAILEY;
B.M., through his next friend, TAMMY BAILEY;
K.M.M., through her next friend, TAMMY BAILEY;
BRYSON GUEST;
J.G., through his next friend, BRYSON GUEST;
M.G., through his next friend, BRYSON GUEST;
K.L.H., through her next friend, PATRICIA SMITH;
A.G., through her next friend, PATRICIA SMITH;
S.G., through her next friend, PATRICIA SMITH;
K.G.H., through her next friend, PATRICIA SMITH;
PATRICIA SMITH on behalf of the ESTATE OF BENTLEY TURNER;
S.T., through his next friend, PATRICIA SMITH;
CHREI JONES;
A.T., through her next friend, MEMORIE TINDALL;
R.T., through her next friend, MEMORIE TINDALL;
E.T., through her next friend, MEMORIE TINDALL;
MEMORIE TINDALL;
M.T., through her next friend, WENDI TURNER;
M.W., through her next friend, PATRICIA HAYTHORN and
PATRICIA HAYTHORN

3.    I am a member in good standing of the following jurisdictions:

Jurisdictions:  United States Supreme Court
Date Admitted: 10/7/13
Still Admitted: Yes
Bar/Registration No.: 288564

Jurisdictions:  United States Court of Appeals, Eighth Circuit
Date Admitted: 7/17/17
Still Admitted: Yes
Bar/Registration No.: 17-0308

Jurisdictions:  United States District Court, Minnesota
Date Admitted: 1/18/17
Still Admitted: Yes
Bar/Registration No.: 0398703

Jurisdictions:  United States District Court, Northern District of Illinois
Date Admitted: 7/24/08
Still Admitted: Yes
Bar/Registration No.: 6287171

Jurisdictions:  United States District Court, Eastern District of Wisconsin
Date Admitted:12/7/15
Still Admitted: Yes
Bar/Registration No.:

Jurisdictions:  State Bar of Minnesota
Date Admitted: 12/28/16
Still Admitted: Yes
Bar/Registration No.: 0398703

Jurisdictions:  State Bar of Illinois
Date Admitted: 11/10/2005
Still Admitted: Yes
Bar/Registration No.: 6287171

4.    I have never been a member of the State Bar of Georgia.

5.    I have never been denied *pro hac vice* admission in Georgia.

6.    I have never had *pro hac vice* admission revoked in Georgia.

7.    I have never been sanctioned or formally disciplined by a court in Georgia.

8.    I have never been the subject of any formal disciplinary proceedings.

9.    I have never been formally held in contempt, or otherwise sanctioned by a court in a
      written order, for disobedience to its rules or orders.

10.   In the past two years I have not applied for *pro hac vice* admission in Georgia.

11.   I have reviewed and am familiar with the Georgia Rules of Professional Conduct and all
      court rules relevant to practice before the court in which I am seeking admission.

12.   My local sponsor is:
      John E. Floyd, Bar Number 266413
      Bondurant, Mixson & Elmore, LLP

1201 W. Peachtree St., NW, Ste. 3900
Atlanta, Georgia 30309
Telephone: (404) 881-4159

13.  I am currently representing one or all of the clients listed above in matters related to this

     proceeding: Joseph Poppell, et al. v. Cardinal Health, Inc., et al.

14.  Is there any additional information you would like to provide to the Court?  None at this

     time.

15.  When I file my application, I will forward a copy to the State Bar of Georgia along with a

     check or money order made payable to the State Bar of Georgia in the amount of $275, as

     this is my first application filed this calendar year.

     I, Mack H. Reed, applicant in the foregoing Verified Application for *Pro Hac Vice*

Admission, hereby verify the facts contained therein are true and accurate to the best of my

knowledge.

     This 2nd day of May , 2019.

                                        _____
                                        Applicant, Mack H. Reed


Sworn to before me this 2nd day of May , 2019.

                              _____
                              Notary Public

> KELSEY M LUND
> Notary Public
> Minnesota
> My Commission Expires
> Jan 31, 2023