IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

|  |  |  |
|---|---|---|
| JOSEPH POPPELL, *et al.*,<br><br>    Plaintiffs,<br><br>vs.<br><br>CARDINAL HEALTH, INC., *et al.*,<br><br>    Defendants. | | Civil Action No.<br>2:19-cv-00064-LGW-BWC |

## **PLAINTIFFS' RESPONSE TO MOVING DEFENDANTS' JOINT MOTION TO STAY**

James D. Durham
Georgia Bar No. 235515
**Savage Turner Durham
Pickney & Savage**
102 E. Liberty Street
8th Floor
Savannah, GA 31401
T: 912-231-1140
F: 912-231-9157
jdurham@savagelawfirm.net

Ronald E. Harrison II
Georgia Bar No. 333270
**The Harrison Firm**
1621 Reynolds Street
Brunswick, GA 31520
T: 912-264-3035
F: 912-264-3138
thf@theharrisonlawfirm.net

John E. Floyd
Georgia Bar No. 266413
(*pro hac vice* pending)
Benjamin E. Fox
Georgia Bar No. 329427
(*pro hac vice* pending)
Steven J. Rosenwasser
Georgia Bar No. 614908
(*pro hac vice* pending)
Manoj S. Varghese
Georgia Bar No. 734668
(*pro hac vice* pending)
**Bondurant Mixson &
Elmore, LLP**
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309-3417
T: 404-881-4100
F: 404-881-4111
floyd@bmelaw.com
fox@bmelaw.com
rosenwasser@bmelaw.com
varghese@bmelaw.com

Christopher W. Madel
Georgia Bar No. 641270
(*pro hac vice* forthcoming)
Jennifer M. Robbins
(*pro hac vice* forthcoming)
Mack H. Reed
(*pro hac vice* forthcoming)
Stephen M. Premo
(*pro hac vice* forthcoming)
**Madel, PA**
800 Pence Building
800 Hennepin Ave.
Minneapolis, MN 55403
T: 612-605-0630
F: 612-326-9990
cmadel@madellaw.com
jrobbins@madellaw.com
mreed@madellaw.com
spremo@madellaw.com

Attorneys for Plaintiffs

## INTRODUCTION

This Court lacks jurisdiction to grant a stay.  Further, a stay is unwarranted because it would not promote judicial economy or consistency and would significantly prejudice Plaintiffs. Therefore, the Court should remand this action and deny Moving Defendants' Motion to Stay (Dkt. 39, "Motion") as moot.

In their Memorandum of Law in Support (Dkt. 40, "Stay Memo"), Moving Defendants continue their pattern of ignoring adverse law and the actual allegations of Plaintiffs' Complaint. They ask the Court to ignore the ***more than 20 decisions in opioid-related litigation—including from the Multidistrict Litigation ("MDL")—that have already rejected Moving Defendants' arguments for jurisdiction.***  They also ask the Court to ignore that Plaintiffs' Complaint alleges claims arising solely under Georgia law against eleven Georgia Defendants that conspired with Moving Defendants and others to illegally flood Glynn County with highly addictive and dangerous controlled substances.

Moving Defendants contend that a stay will allow the Court to avoid the risk of an inconsistent decision on Plaintiffs' Motion to Remand (Dkt. 20), will further judicial economy, and will not cause any prejudice to Plaintiffs.  These assertions are untrue and disingenuous.  The only risk of inconsistency the Court faces is if it were to become the first district court in the country to find federal jurisdiction over allegations similar to Plaintiffs' claims.  Notably, Moving Defendants fail to identify a single similar opioid-related case in which a district court found federal question jurisdiction present, and the handful of cases they cite for fraudulent misjoinder or severance to create diversity jurisdiction are easily distinguishable.  Nor would judicial economy be served by transferring an action from one court without jurisdiction to another court without jurisdiction.  ***This is evidenced by the denial of requests to stay in at least 19 other opioid-related cases in which Cardinal and McKesson were Defendants.***  Further,

1771101.5

Cardinal—fully aware that this Court lacks subject matter jurisdiction and that one Defendant refused to consent to removal—removed this action for the sole purpose of prejudicing Plaintiffs by imposing unnecessary delay and expense on Plaintiff by ensnaring their case in the MDL.

Moving Defendants' Motion asks this Court to overlook Cardinal's improper removal and the clear lack of federal jurisdiction to have Plaintiffs' claims transferred to the MDL. Undeterred by the Court's prior order rejecting their request for a stay, Moving Defendants now seek a second bite of the apple, repeating arguments the Court has already declined.  Moving Defendants seek to have Plaintiffs' claims indefinitely stayed, creating significant prejudice to Plaintiffs and allowing Moving Defendants to avoid accountability for the significant harm they caused to Plaintiffs, 20 of whom are the children of former and/or recovering opioid abusers. The Court should not reward Cardinal's abuse of the removal and MDL process.  Addressing Plaintiffs' Motion to Remand furthers judicial economy and avoids significant prejudice to Plaintiffs while not prejudicing Moving Defendants.  Therefore, this court should remand this action and deny the Moving Defendants' Motion to Stay as moot.

### BACKGROUND

**I.**    **Procedural History**

Plaintiffs filed their Complaint in the Superior Court of Glynn County on April 17, 2019. On May 20, 2019, Cardinal removed the action to this Court.  Two days later, the Moving Defendants sought what they styled an extension to answer,[1] but which this Court's May 24, 2019 Order (Dkt. 27) recognized "would effectively ***act as a stay of the action*** until a court— this Court or the MDL court—remands the case, and then, if not remanded, until the JPML fully

---

[1] Emergency Motion, Dkt. 9.

resolves whether this case should be transferred to the MDL."[2]  Moving Defendants made the

same argument in their Emergency Motion that they now repeat in the present Motion:

> the jurisdictional issues can and should be addressed by the MDL judge, who
> currently presides over more than 1,800 other opioid-related cases, many of which
> raise the same jurisdictional issues. Indeed, "courts have repeatedly noted that the
> 'general rule is for federal courts to defer ruling on pending motions to remand in
> MDL litigation until after the [JPML] has transferred the case.'" *Little v. Pfizer, Inc.*,
> 2014 WL 1569425, at *3 (N.D. Cal. Apr. 18, 2014) (quoting *Robinson v. DePuy
> Orthopaedics, Inc.*, 2012 WL 831650 (W.D. Va. Mar. 6, 2012)).[3]

The Court denied Moving Defendants' Emergency Motion and plainly ruled that it would

"proceed to take up the issue of remand."[4]  In denying the Emergency Motion, the Court

examined the holding of *Little*, and also examined the holdings of cases that determined whether

jurisdiction existed before determining whether a stay was appropriate.[5]  The Court stated:

> First, it should be noted that an extension or stay in these circumstances is, at
> most, discretionary and is certainly not mandatory. The Rules of the JPML
> explain that the possibility of a transfer to a multidistrict litigation does not limit
> the pretrial jurisdiction of a transfer court in any way. Ord., *Brockel*, 1:17-cv-
> 00521 (S.D. Ala. Jan. 3, 2018), ECF No. 45, p. 4 (quoting Rule 18 of the JPML
> Rules and *Rivers*, 980 F. Supp. at 1360). Furthermore, as noted in *Baltimore v.
> Purdue*, "[m]otions to remand are particularly appropriate for resolution by [a
> transfer court] because 'if [the transfer court] does not have jurisdiction over th[e]
> matter, then neither will the MDL court.'" 2018 WL 1963816, at *4.[6]

Plaintiffs filed their Motion to Remand and a Motion for Immediate Hearing on May 24, 2019

(Dkts. 20–22).  Finding good cause shown, the Court granted Plaintiffs' Motion for Immediate

Hearing and set a hearing for the Motion to Remand for June 4, 2019.[7]  Despite the Court twice

---

[2] Order, Dkt. 27 at 3 (emphasis added).

[3] Dkt. 9 at 3–4; *compare* Stay Memo at 6 (citing *Little v. Pfizer* to urge the Court to not take up
the issue of remand).

[4] Order, Dkt. 27 at 6.

[5] *Id.* at 3–4.

[6] *Id.* at 5.

[7] Dkt. 36.

1771101.5

expressing its intent to address the Motion to Remand, Moving Defendants nonetheless filed the present Motion, again urging the Court not to do so.[8]

## II.   **Plaintiffs' Claims**

Plaintiffs' Complaint (Dkt. 1-1 ("Complaint")) seeks relief for the immense harm caused by Defendants' conspiracies to illegally distribute controlled substances in Georgia, and specifically Glynn County and surrounding communities.[9]  Plaintiffs are the children, spouses, siblings, and parents of individuals whose opioid addictions were fueled by Defendants' illegal conduct.[10]  Defendants are pharmaceutical distributors, pharmacies, and pharmacists that acted in concert to flood communities with highly dangerous and addictive drugs.[11]  Specifically, the Distributor Defendants[12] illegally distributed the controlled substances which the Pharmacy Defendants[13] illegally dispensed to the family members of Plaintiffs.  The Distributor Defendants

---

[8] Moving Defendants recognize that the Court construed their Emergency Motion as a motion to stay, but contend that the present Motion seeks a different outcome as purportedly evidenced by the assertion that "Moving Defendants could not have requested that particular relief because Plaintiffs had not yet filed a remand motion and did not do so until May 24, 2019."  Motion (Dkt. 39) at 1 n.2.  This argument is belied both by logic, particularly because the Emergency Motion noted Plaintiffs' intent to seek remand (Dkt. 9 at 3) and the Court's May 24 Order noted that Cardinal and McKesson "acknowledge that Plaintiffs intend to move to remand this case to state court" (Dkt. 27 at 2), and by Moving Defendants' actions in other cases.  *See Falls Cty. v. Purdue Pharma L.P.*, No. 6:18-cv-00047, Dkt. 3 (W.D. Tex.)(Cardinal, McKesson, and AmerisourceBergen Corporation filed a motion to stay before the plaintiff had filed a motion to remand).

[9] Complaint ¶ 17.

[10] *Id.* ¶¶ 2–3, 17–18, 19–41.

[11] *Id.* ¶¶ 3–6, 9–15.

[12] The Distributor Defendants are Cardinal Health, Inc., Cardinal Health 108, LLC, Cardinal Health 110, LLC, Cardinal Health 112, LLC, Cardinal Health 113, LLC, Cardinal Health 116, LLC, Cardinal Health 200, LLC, Cardinal Health 414, LLC, McKesson Corporation, McKesson Drug Company, LLC, McKesson Medical-Surgical, Inc., McKesson Medical-Surgical Minnesota Supply, Inc., and J M Smith Corporation.  *Id.* ¶¶ 43–51.

[13] The Pharmacy Defendants are G & H Pharmacy, Inc., Agape Prescriptions "R" Us, Inc., Janice Ann Colter, Christopher Grey May, Woodbine Pharmacy, Inc., Sabra L. Maddox, Alan

1771101.5

and the Pharmacy Defendants could not achieve their goal of profiting from the illegal distribution of drugs without each other's cooperation.[14]

Plaintiffs' Complaint asserts eleven causes of action under Georgia law to recover from Defendants for the devastating harm they have caused.[15]  Two Georgia statutes that allow individuals to obtain relief when injured or aggrieved by criminal conduct are the driving force behind Plaintiffs' Complaint: (1) the Georgia Drug Dealer Liability Act[16] ("Georgia DDLA"); and (2) the Georgia Racketeer Influenced and Corrupt Organizations Act[17] ("Georgia RICO"). The Georgia DDLA was enacted to provide Georgians who—like Plaintiffs—are injured as a result of illegal drug use with a remedy to recover against companies and individuals—like Defendants—that participated in and profited from an illegal drug market.  The Georgia DDLA's purpose is "to shift, to the extent possible, the cost of the damage caused by the existence of the illegal drug market in a community to those who illegally profit from that market," and "to establish the prospect of substantial monetary loss as a deterrent" to such illegal conduct.[18]  Further, Georgia RICO—unlike federal RICO—allows "any aggrieved person" to institute a civil

---

M. Jones, Carey B. Jones, Rainbow Drug Store, Inc., Richard D. Griffis, Jr., Richard D. Griffis, III, and Charles Robert Lott.  *Id.* ¶¶ 52–59, 61–64.

[14] *Id.* ¶ 213.

[15] *Id.* ¶¶ 329–487.  Counts one through four of Plaintiffs' Complaint allege Georgia DDLA claims against all Defendants.  Count five of the Complaint seeks relief against the Distributor Defendants under Georgia RICO.  Counts six through eight of the Complaint assert Georgia common law negligence claims against Distributor Defendants.  And Counts nine through eleven are breach of legal duty claims against the Distributor Defendants, and three of the five breached duties that Plaintiffs identify are based solely on Georgia law.

[16] O.C.G.A. § 51-1-46.

[17] O.C.G.A. §§ 16-14-1 to 16-14-15.

[18] Complaint ¶ 16 (citing O.C.G.A. § 51-1-46(b)).

1771101.5

action to obtain injunctive and other relief against individuals—like Defendants—who violate the statute.[19]

The Complaint sets forth the many ways Defendants participated in the illegal marketing of controlled substances in violation of the Georgia DDLA,[20] the vast majority of which are premised solely on Georgia law,[21] including: (1) failure to report excessive purchases;[22] (2) failure to report unusual orders;[23] (3) delivering, distributing, selling, and possessing controlled substances in violation of the Georgia Controlled Substances Act ("Georgia CSA");[24] and (4) filling illegitimate prescriptions.[25]  Similarly, Plaintiffs' RICO claim is based on Defendants' violations of no less than ten different Georgia criminal statutes that qualify as predicate acts under Georgia RICO.[26]

## III.   Other Opioid-Related Litigation

Plaintiffs are individuals seeking recovery for the injuries they suffered.  Around the country, opioid-related actions are working their way through both the federal and state court

---

[19] O.C.G.A. § 16-14-6(b).

[20] Complaint  ¶¶ 334–76.

[21] Plaintiffs' Complaint does cite a few duties set forth in federal statutes and regulations, but: 1) all of those requirements are incorporated into Georgia law and independently enforceable under Georgia law (*id.* ¶ 137 (citing Regs. 480-7-.03(10)(b)); and more importantly 2) it is not necessary for Plaintiff to prove any Defendant violated any of those federal statutes or regulations to prevail under any of their eleven causes of action.  To be clear, even if the few federal statutes and regulations cited by Plaintiffs were repealed tomorrow, Plaintiffs could still succeed on all of their claims based on Georgia law.

[22] *Id.* ¶ 335 (citing O.C.G.A § 26-4-115(e)).

[23] *Id.* ¶ 336; *see also id.* ¶ 141 (citing Ga. Comp. R. & Regs. 480-20-.02(1)).

[24] *Id.* ¶¶ 340–43 (citing O.C.G.A §§ 16-13-30(b), 16-13-33, and 16-13-41(f)).

[25] *Id.* ¶¶ 344(c)–(d), 345(c)–(d), 346(c)–(d) (citing Ga. Comp. R. & Regs. 480-22-.02(1), O.C.G.A. § 26-4-80, O.C.G.A § 26-4-84(b), O.C.G.A § 26-4-84(c)); *see also* ¶¶ 347–349, 350–352, 353, 355, 363(a)–(c), (f)–(g) (discussing Defendants' violations of Georgia law).

[26] *See* ¶¶ 358(a)–(f), 363(a)–(c), (f)–(g).

systems.   At the federal level, approximately 1,900 cases are now pending in the Multidistrict Litigation ("MDL") established in 2017.[27]   The overwhelming majority of these cases were brought by governmental bodies such as cities, counties, states, and tribes, or by institutions like healthcare organizations and third-party payors of medical claims.[28]

Apart from the MDL, several opioid-related cases are either pending or have been resolved in state courts.[29]   Georgia is no exception.   On January 3, 2019, the State of Georgia filed a complaint in the Superior Court of Gwinnett County (the "Georgia Action") asserting numerous claims against several of the defendants in this case for injuries suffered as a result of the defendants' opioid distribution practices.[30]   That case is ongoing in the Superior Court of Gwinnett County, and Moving Defendants made no attempt to remove it because they knew their frivolous arguments would have been addressed and quickly rejected.[31]

---

[27] *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio).

[28] *See generally In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio); *see also In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (U.S. Jud. Pan. Mult. Lit. 2017) (noting that all of the original MDL cases "involve claims brought by political subdivisions").   Very few cases with individual plaintiffs have been transferred to the MDL by the Judicial Panel on Multidistrict Litigation ("JPML") and the MDL Court has reserved the question of whether cases brought by individual plaintiffs actually belong there.   *See In re: Nat'l Prescription Opiate Litigation*, No. 1:17-md-02804-DAP, Dkt. 10 (Transcript of December 13, 2017 Telephone Conference) at 4:25–5:5 (N.D. Ohio) (Presiding Judge Dan Aaron Polster stating that "we have some cases filed by individuals or groups of individuals, and one of the things I am going to have to decide is whether I am going to keep the non government cases in this MDL or whether it is just not possible to manage them and they need to go back").

[29] *See*, *e.g.*, *State of Delaware v. Purdue Pharma L.P. et al.*, 18C-01-00223 (Del. Sup. Ct.); *Cty. of Hopkins v. Purdue Pharma LP et al.*, CV43486 (Dist. Ct. Tex. 2018); *Staubus et al. v. Purdue Pharma, L.P. et al.*, C-41916 (Tenn. Cir. Ct. 2017).

[30] *See State of Georgia v. Purdue Pharma L.P. et al.*, Civ. No. 19-A-00060-8 (Sup. Ct. Gwinnett Cty.), Complaint ¶¶ 312–328 (asserting a negligence claim based on defendants' failure "to take any action to prevent or reduce the improper and unlawful manufacture, marketing as well as distribution of the opioid drugs" and "to disclose suspicious orders for opioids to the State pursuant to the requirements of Georgia law and the federal Controlled Substances Act").

[31] *See In re: Nat'l Prescription Opiate Litigation*, No. 1:17-md-02804-DAP, Dkt. 232 (Case Management Order One) at 11 (N.D. Ohio) (stating that no party may file any motion not

In other opioid-related litigation, defendants—including some of the Defendants in this action—have improperly removed state court actions despite a lack of complete diversity or a federal question based on the same arguments Cardinal raises in its Notice of Removal (Dkt. 1). Defendants have then sought to have those improperly removed cases transferred to the federal MDL, where the administrative burden of overseeing 1,900 actions has required the court to deprioritize and suspend consideration of nearly all motions to remand, effectively trapping a large number of improperly removed cases in the MDL despite a clear lack of federal jurisdiction.[32]  In the face of this gamesmanship by defendants, district courts around the country have continued to examine "tagged" cases for subject matter jurisdiction, often remanding them before they can be transferred and frozen.[33]

---

expressly authorized by the case management order, but also noting that "nothing in this Order limits the right of a State Attorney General to seek remand of any case brought by the Attorney General that is removed to the MDL," and that "[t]he Court shall decide any such motion on the merits").

[32] *See, e.g.*, *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, Dkt. 10 (Transcript of December 13, 2017 Telephone Conference) at 22:17-20  (N.D. Ohio) (the Court stating: "I have limited time and limited staff, and I just don't want to be tied up on individual remand motions at the moment."); *In re: Nat'l Prescription Opiate Litigation*, 1:17-md-02804, Dkt. 130 (Order Regarding Remands) at 1 (N.D. Ohio) (noting that "the moratorium on all substantive filings shall include all motions to remand").

[33] *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP, Dkt. 780 (Order of Transferor Court on February 26, 2018) (U.S. Jud. Pan. Mult. Lit.) (recognizing remand order of transferor district court while transfer was pending by entering that order on JPML docket); Order of Transferor Court on March 8, 2018, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP, Dkt. 869 (Order of Transferor Court on March 8, 2018) (U.S. Jud. Pan. Mult. Lit.) (same); *see also Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, No. CV GLR-18-800, 2018 WL 1963816, at *3 (D. Md. Apr. 25, 2018) (quoting *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States*, *Inc.*, 807 F. Supp. 2d 375, 381 (D. Md. 2011)) ("Motions to remand are particularly appropriate for resolution by this Court because 'if this Court does not have jurisdiction over th[e] matter, then neither will the MDL court.'"); *id.* (citing Manual for Complex Litigation § 20.131 (4th ed. 2004)) (motions to remand are "'particularly appropriate for resolution before the [JPML] acts' because the right to litigate in the MDL depends on the existence of federal jurisdiction in the first place").

<u>**ARGUMENT**</u>

I.      <u>**This Court Lacks Jurisdiction to Grant a Stay.**</u>

As Moving Defendants recognized in their Emergency Motion (Dkt. 9), a court without

jurisdiction is a Court without the power to act.

> *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("***The***
> ***requirement that Jurisdiction be established as a threshold matter 'spring[s]***
> ***from the nature and limits of the judicial power of the United States' and is***
> ***'inflexible and without exception*.'**" (quoting *Mansfield, C. & L.M. Ry. Co. v.*
> *Swan*, 111 U.S. 379, 382 (1884))); *id.* ("***Without jurisdiction, the court cannot***
> ***proceed at all in any cause***. Jurisdiction is power to declare law, and when it
> ceases to exist, the only function remaining to the court is that of announcing the
> fact and dismissing the cause." (quoting Ex Parte McCardle, 74 U.S. 506, 514
> (1868)); The Late Charles Alan Wright & Arthur Miller, 14C Fed. Prac. & Proc.
> Juris. § 3739 (4th ed. 2018) (A "district court must be certain that federal subject-
> matter jurisdiction is proper before entertaining a defendant's motion under
> Federal Civil Rule 12.").

Moving Defendants' Emergency Motion, Dkt. 9 at 4 n.3 (emphasis added); *see also Montana v.*

*Purdue Pharma L.P.*, 1:18-op-45604 (*In re: Nat'l Prescription Opiate Litig.*, 1:17-md-2804),

Dkt. 30 at 4 (N.D. Ohio Aug. 23, 2018) ("[T]he United States Supreme Court has consistently

held that federal courts are 'courts of limited jurisdiction.  They possess only that power

authorized by Constitution and statute.' [*cit.*]  Courts are obliged to strictly construe removal

jurisdiction against removal and all doubts should be resolved in favor of remand.") (citations

omitted).  For this reason, other courts addressing opioid-related litigation in the same procedural

posture have recognized that "if this Court lacks subject matter jurisdiction over this action, it

has no authority to stay this action."[34]  Put another way, the ***mandatory*** jurisdictional issue is

---

[34] *Falls Cty. v. Purdue Pharma L.P.*, No. 6:18-cv-00047, 2018 WL 1518849, at *2 (W.D. Tex.
Mar. 28, 2018) (citing *In re Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993)); *Travis Cty v. Purdue*
*Pharma L.P.*, No. 1:18-cv-254, 2018 WL 1518848, at *2 (W.D. Tex. Mar. 28, 2018) (same); *see*
*also Van Zandt Cty. v. Amerisourcebergen Corp.*, No. 6:18-cv-00064, Dkt. 73 (Order Granting
Remand and Denying Stay on April 16, 2018) at 8–9 (E.D. Tex.) ("The Distributor Defendants
also move to stay this case pending possible transfer to Multidistrict Litigation No. 2804 . . . .
However, because this Court does not have subject matter jurisdiction over this case, it has no
1771101.5

more important and more time-sensitive than the ***discretionary*** issue of a stay because without the former, the Court lacks the authority to decide the latter.[35]

That other courts have chosen to defer ruling on a pending motion to remand without first determining whether they had the power to stay the case,[36] does not counsel in favor of this Court avoiding the threshold question of subject matter jurisdiction.[37]   And that other courts simply failed to rule on remand is even less persuasive.[38]   Judge Paul J. Barbadoro—who has

_____

authority to stay the case and declines to do so."); *Dallas Cty. v. Purdue Pharma L.P.*, No. 3:18-cv-00426, Dkt. 10 (Order on March 7, 2018) at 7 (N.D. Tex.) ("because the Court does not have subject matter jurisdiction over this case, it declines to stay the case"); *see also City of Boston v. Purdue Pharma, L.P.*, No. 1:18-cv-12174, Dkt. 32 Order on Motion to Remand and motion to Stay on January 29, 2019) at 3 (D. Mass.) (denying motion to stay as moot because the court lacked subject matter jurisdiction).

[35] *Compare*, *e.g.*, *Uintah Cty. v. Purdue Pharma L.P.*, 2:18-cv-00585, Dkt. 17 (Order Denying Motion to Stay on August 7, 2018) at 2–3 (D. Utah) ("[S]ubject matter jurisdiction is a *critical threshold issue which the court nearly always scrutinizes at the outset of any case*—whether raised by the parties or sua sponte" (emphasis added); "the court's obligation to carefully evaluate its subject matter jurisdiction, weigh heavily in favor of the court's prompt resolution of the Motion to Remand and denial of the Motion to Stay"), *with Dunaway v. Purdue Pharma L.P.*, No. 2:19-cv-00038, Dkt. 59, 2019 WL 2211670, at *2 (M.D. Tenn. May 22, 2019) (remanding and denying stay) (quoting *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) ("A district court 'has broad discretion to stay proceedings as an incident to its power to control its own docket.'")).

[36] *See* Stay Memo at 2–3 (citing cases in which a federal district court has granted a stay pending transfer of an opioid-related case to the MDL).

[37] *See Dunaway*, 2019 WL 2211670, at *3 ("The fact that courts usually handle these matters one way, however, does not relieve this court of the necessity of considering whether a stay is warranted here. Indeed, the JPML's own rules explicitly make clear that no stay is mandated here, leaving the decision on how to proceed up to the original district court. JPML R. 2.1(d).").

[38] Moving Defendants cite seven cases to argue that "[t]o date, *every* district court in Georgia has declined to rule on pending remand motions in opioid-related actions when presented with the opportunity." Stay Memo at 3–4.  But those cases actually tell an entirely different story.  In all but one of those cases, the stays or extensions had *no* bearing on motions to remand or jurisdictional analysis.  In five of those cases, the court stayed only *non-jurisdictional* proceedings until it could *rule on the jurisdictional issues*.  Thus, far from "declin[ing] to rule" on jurisdiction, *id.* at 4, the court *contemplated* ruling on the jurisdictional issues in each of those five cases and simply never had the chance to do so.  *See*, *e.g.*, *Bolton v. Bynes*, No. 4:18-cv-00136-RSB-JEG, Dkt. 18 (Order on July 25, 2018) at 3–6 (S.D. Ga.) (affirming the court's authority to decide jurisdictional issues during pendency of potential MDL transfer and directing

1771101.5

served on the JMPL panel—explained why some courts do not take up pending motions to

remand pending transfer during a hearing in which he denied the defendant's motion to stay and

remanded the opioid-related case.

> I served on the [JPML] panel, so I am very familiar with the way the panel
> functions.

---

parties to serve briefing *so court could rule*); *Bolton v. Bynes*, No. 4:18-cv-00136-RSB-JEG,
Dkt. 12 (Order on June 13, 2018) (S.D. Ga.) (granting Motion to Extension of Time to Respond
filed by defendants in this case *until after* "this Court's ruling on Plaintiff's remand motion . . .
."); *Cty. of Fannin v. Rite Aid of Georgia, Inc.*, No. 2:18-cv-00220-RWS, Dkt. 20 (Order on
February 6, 2019) at 2  (N.D. Ga.) (extending time for defendants to respond "to 45 days *after
any ruling by the Court on Plaintiff's Motion to Remand*") (emphasis added); *City of Atlanta v.
Purdue Pharma L.P.*, No. 1:18-cv-03508-SCJ, Dkt. 14 (Consent Order Granting Motion to Stay
Proceedings on August 20, 2018) at 1–2 (N.D. Ga.) ("all proceedings, preliminary requirements,
and filing deadlines in this action . . . are STAYED *until 45 days after the final determination of
removal of this action to federal court* or transfer to the multidistrict litigation . . . .") (emphasis
added); *ApolloMD Business Services, LLC v. Attain Med, Inc.*, No. 1:18-cv-01662-SCJ, Dkt. 14
(Consent Order Granting Extension of Time to Move, Answer, or Otherwise Respond to the
Complaint on April 26, 2018) at 2 (N.D. Ga.) (granting extension to Manufacturer Defendants
for "45 days after the latter of (1) *this Court's ruling on any motion to remand Plaintiff may file*
or (2) the JPML's determination regarding transfer" (emphasis added)); *Fulton Cty. v. Purdue
Pharma L.P.*, No. 1:17-cv-04757-ELR, Dkt. 11 (Order on December 5, 2017) at 1–2 (N.D. Ga.)
(granting Manufacturer Defendants' Motion to Stay the Date by Which to Respond to Plaintiff's
Complaint and giving them "60 days *following the final determination of removal to answer*,
move, or otherwise respond . . . .").

Further, in *DeKalb Cty. v. Purdue Pharma, L.P.* 1:18-cv-01498 (N.D. Ga. 2018), the
plaintiff never even filed a Motion to Remand, and the defendants filed motions seeking to
extend the deadline to respond to the complaint. *See DeKalb Cty. v. Purdue Pharma, L.P.* 1:18-
cv-01498, Dkt. 3 (Joint Motion for Extension of Time to Move, Answer, or Otherwise Respond
to the Complaint, filed April 13, 2018) at 3 (N.D. Ga.) (asking the court to extend the time to
respond "until 30 days *after this Court rules on any motion to remand*, if Plaintiff files such a
motion, or after the JPML makes a final decision regarding transfer to the MDL, whichever is
later."). Similarly, in *ApolloMD Business Services, LLC v. Attain Med, Inc.*, No. 1:18-cv-01662-
SCJ (N.D. Ga.), the plaintiff never filed a motion to remand. Thus, the courts in those cases
never "declined to rule on [a] pending remand motion[]." Stay Memo at 4. In fact, of these
seven cases, only *one* contains a decision "declining" to rule on jurisdiction. *See Henry Cty. v.
Purdue Pharma L.P.*, No. 1:18-cv-03899-AT, Dkt. 19 (Order on October 23, 2018) at 1 (N.D.
Ga.).

Moving Defendants also cite 17 cases for the proposition that "numerous actions
originating in or removed to the Southern District of Georgia" are pending in the MDL, Stay
Memo at 4–5 n.4, but fail to inform this Court that 16 of those cases were originally filed in this
Court and not removed to it.

1771101.5

12

* * * *

The panel does not in any way discourage potential transferor judges from deciding motions to remand.  Indeed, *motions to remand are the kind of motions that the panel thinks oftentimes can and should be decided by the transferor judge*.

* * * *

I don't see anything in the panel's positions that have changed since I was on it, which is, hey, Judge, transferor judge, if you think you can get a handle on a motion to remand before it comes to us, go for it.

* * * *

The truth is busy judges do not want to -- if they can get a case off their list of things to do by saying, let's just put it aside until the centralization order is issued, a lot of judges do that.  And a lot of judges that aren't familiar with the MDL process mistakenly assume that once a matter is subject to a centralization order that they're deprived of jurisdiction to act.

I think those two reasons account for about 90 percent of the judges who don't take up remand motions.[39]

As this Court has already noted, other cases have recognized that "[m]otions to remand are particularly appropriate for resolution by [a transfer court] because 'if [the transfer court] does not have jurisdiction over th[e] matter, then neither will the MDL court.'"[40]  Thus, the Court should look first to whether it has jurisdiction to grant a valid stay before it addresses Moving Defendants' attempt to delay remand.  As set forth more fully in Plaintiffs' Motion to

---

[39] *New Hampshire v. Purdue Pharma L.P.*, No. 1:17-cv-00427-PB, Dkt. 27 (Transcript of November 6, 2017 Hearing on Motion to Stay) at 6–8 (D.N.H.) (emphasis added).

[40] Order, Dkt. 27 at 5 (quoting *Baltimore v. Purdue Pharma*, 2018 WL 1963816, at *4); *see also Anderson Cty. v. Rite Aid of S.C., Inc.*, No. 8:18-cv-01947, Dkt. 44 , (Order on August 17, 2018) at 7 (D.S.C.) (remanding and denying motion to stay; "the question of remand is particularly appropriate for this Court to resolve because if this Court lacks jurisdiction, then the MDL court lacks jurisdiction as well"); *Anne Arundel Cty. v. Purdue Pharma L.P.*, No. GLR-18-519, 2018 WL 1963789, at *4 (D. Md. Apr. 25, 2018) ("Because motions to remand are particularly appropriate for resolution before transfer to the MDL, the Court is well within its authority to rule on the County's Motion to Remand at this time.").

Remand and Brief in Support, this Court lacks subject matter jurisdiction in this action and should therefore remand this case and deny Moving Defendants' Motion to Stay as moot.[41]

## II.   A Stay Should Not Be Granted in this Case.

A stay is unwarranted here because it would not promote judicial economy or consistency and would significantly prejudice Plaintiffs.  As an initial matter, and as the Court has previously noted, a "stay in these circumstances is, at most, discretionary and is certainly not mandatory,"[42] and "[t]he Rules of the JPML explain that the possibility of a transfer to a multidistrict litigation does not limit the pretrial jurisdiction of a transfer court in any way."[43]  To determine whether a stay is appropriate, the Court must evaluate the prudential advantages of granting a stay and the relative prejudice and hardship on each party.[44]  Here, (1) judicial economy favors a speedy resolution of jurisdictional doubts; (2) there is no threat of inconsistency, since Moving Defendants' jurisdictional arguments are baseless; and (3) granting a stay would significantly prejudice Plaintiffs while denying a stay would not prejudice Defendants.  Therefore, this Court

---

[41] *See City of Boston v. Purdue Pharma, L.P.*, No. 1:18-cv-12174, Dkt. 32 (Order on Motion to Remand and motion to Stay on January 29, 2019) at 3 (D. Mass) (remanding and denying stay as moot because the court lacked jurisdiction); *New Mexico ex rel. Balderas v. Purdue Pharma, L.P.*, 1:18-cv-000386, Dkt. 37, 323 F. Supp. 3d 1242, 1245, (D.N.M. 2018) (remanding and denying motion to stay as moot); *City of Reno v. Purdue Pharma L.P.*, No. 3:18-cv-00454, 2018 WL 5730158, at *4 (D. Nev. Nov. 2, 2018) (same).

[42] Order, Dkt. 27 at 5.

[43] *Id.* at 5 (citing Order, *Brockel*, 1:17-cv-00521, Dkt. 45 at 4 (S.D. Ala. Jan. 3, 2018) (quoting Rule 18 of the JPML Rules and *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)); *see also Dunaway*, 2019 WL 2211670, at *2 ("The Rules of Procedure of the U.S. Judicial Panel on Multidistrict Litigation expressly provide that the pendency of the Conditional Transfer Order has no bearing on this court's ability to consider a pretrial matter pending in a case filed in or removed to this court." (citing JPML R. 2.1(d))).

[44] *See Cincinnati Ins. Co. v. Thunderbolt Harbour Phase II Condo. Ass'n, Inc.*, No. CV 414-222, 2015 WL 40575148, at *1 (S.D. Ga. July 1, 2015) (in making a determination on stay, "a court may consider the prudential advantages of a stay, but must also examine the relative prejudice and hardship worked on each party if a stay is or is not granted" (citation and internal punctuation omitted)).

should deny the Moving Defendants' request for a stay *as courts have done in at least 19 other opioid-related cases in which Cardinal and McKesson were defendants*.[45]

    A.    <u>Judicial Economy and Consistency Are Not Furthered by a Stay.</u>

Considerations of consistency and judicial economy both weigh heavily against granting a stay in this case.  Simply put, there is no risk of inconsistent rulings because Moving Defendants' jurisdictional arguments are baseless, and federal courts all across the country— including the MDL—have rejected them.  Moreover, "[t]he interests of judicial economy are

---

[45] *Anderson Cty. v. Rite Aid of S.C., Inc.*, No. 8:18-cv-01947, Dkt. 44 (Order on August 17, 2018) (D.S.C.) (remanding and denying motion to stay) Exhibit 1, hereto; *Anne Arundel Cty. v. Purdue Pharma L.P.*, No. 1:18-cv-00519, 2018 WL 1963789 (D. Md. Apr. 25, 2018) (remanding and denying defendants' request for stay); *Mayor & City Council of Baltimore*, 2018 WL 1963816 (remanding and denying defendants' request for stay); *City of Boston v. Purdue Pharma, L.P.*, No. 1:18-cv-12174, Dkt. 32 (D. Mass Jan. 29, 2019) (remanding and denying motion to stay) Exhibit 2, hereto; *Brooke Cty. Comm'n v. Purdue Pharma L.P.*, No. 5:18-cv-00009, Dkt. 17 (N.D. W.Va. Feb. 1, 2018) (denying motion to stay) Exhibit 3, hereto; *Dallas Cty. v. Purdue Pharma L.P.*, No. 3:18-cv-00426, Dkt. 10  (N.D. Tex. Mar. 7, 2018) (remanding and denying motion to stay) Exhibit 4, hereto; *Delta Cty. v. Purdue Pharma L.P.*, No. 4:18-cv-00095, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018) (remanding and denying motion to stay) Exhibit 5, hereto; *Dunaway v. Purdue Pharma L.P.*, No. 2:19-cv-00038, 2019 WL 2211670 (M.D. Tenn. May 22, 2019) (remanding and denying motion to stay); *Falls Cty. v. Purdue Pharma L.P.*, No. 6:18-cv-00047, 2018 WL 1518849 (W.D. Tex. Mar. 28, 2018) (remanding and denying motion to stay); *Cty. of Greenville v. Rite Aid of S.C. Inc.*, 6:18-cv-01085, Dkt. 66 (D.S.C. May 21, 2018) (remanding and denying defendants' request for stay) Exhibit 6, hereto; *Lexington Cty. v. Rite Aid of S.C., Inc.*, 3:18-cv-02357, Dkt. 32 (D.S.C. Oct. 9, 2018) (granting plaintiff's motion to remand and denying defendants' request for stay) Exhibit 7, hereto; *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 1:18-cv-00386, Dkt. 37, 323 F. Supp. 3d 1242 (D.N.M. 2018) (remanding and  denying motion to stay); *City of Reno v. Purdue Pharma L.P.*, No. 3:18-cv-00454, 2018 WL 5730158 (D. Nev. Nov. 2, 2018) (remanding and denying motion to stay) Exhibit 8, hereto; *Spartanburg Cty. v. Rite Aid of S.C., Inc.*, 7:18-cv-01799, Dkt. 32 (D.S.C. July 25, 2018) (remanding and denying motion to stay) Exhibit 9, hereto; *Travis Cty. v. Purdue Pharma L.P.*, No. 1:18-cv-00254, 2018 WL 1518848, at *1 (W.D. Tex. Mar. 28, 2018) (remanding and denying motion to stay); *Uintah Cty. v. Purdue Pharma L.P.*, 2:18-cv-00585, Dkt. 17 (D. Utah July 31, 2018) (order denying stay) Exhibit 10, hereto; *Van Zandt Cty. v. Amerisourcebergen Corp.*, No. 6:18-cv-00064, Dkt. 73 (E.D. Tex. Apr. 16, 2018) (granting remand and denying stay) Exhibit 11, hereto; *Weber Cty. v. Purdue Pharma L.P.*, No. 1:18-cv-00089, Dkt. 16 (July 31, 2018) (order denying stay) Exhibit 12, hereto, Dkt. 19 (Aug. 7, 2018) (D. Utah) (order granting plaintiffs' motion to remand), Exhibit 13, hereto; *City of Worcester v. Purdue Pharma L.P.*, No. 4:18-cv-11958, Dkt. 36 (D. Mass. Nov. 21, 2018) (order granting remand and denying stay).

furthered by putting a case, as expeditiously as possible, in a court that has the jurisdiction to resolve it."[46]

        i.     There is no risk of inconsistent rulings regarding remand.

Moving Defendants contend that if the Court rules on Plaintiffs' Motion to Remand, it would "creat[e] a significant risk of inconsistent rulings on the same jurisdictional issues."[47] However, this Court's ruling on remand would only be inconsistent if it mistakenly concluded that Plaintiffs' claims are subject to federal jurisdiction. ***Moving Defendants' arguments for jurisdiction have been repeatedly rejected by numerous courts in similar opioid-related cases, including in over 20 cases in which Cardinal and McKesson were defendants.***[48]  Moving

---

[46] *Dunaway*, 2019 WL 2211670, at *3.

[47] Stay Memo at 4, 13.

[48] *Dunaway v. Purdue Pharma L.P.*, No. 2:19-cv-00038, Dkt. 59 (M.D. Tenn. May 22, 2019); *see also Lexington Cty. v. Rite Aid of S.C., Inc.*, No. 3:18-cv-02357, Dkt. 32 (D.S.C. Oct. 9, 2018); *Weber County v. Purdue Pharma L.P.*, No. 1:18-cv-00089, Dkt. 19 (D. Utah Aug. 7, 2018); *Uintah Cty. v. Purdue Pharma L.P.*, No. 2:18-cv-00585, Dkt. 20 (D. Utah Aug. 7, 2018); *Spartanburg Cty. v. Rite Aid of S.C., Inc.*, No. 7:18-cv-01799, Dkt. 32 (D.S.C. July 25, 2018); *Cty. of Greenville v. Rite Aid of S.C. Inc.*, No. 6:18-cv-01085, Dkt. 66 (D.S.C. May 21, 2018); *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, No. 1:18-cv-00800, Dkt. 43 (D. Md. April 25, 2018); *Delaware ex rel. Denn v. Purdue Pharma L.P.*, No. 1:18-cv-00383, Dkt. 36 (D. Del. April 25, 2018); *Granite City v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-01367, Dkt. 16 (S.D. Ill. July 13, 2018); *Travis Cty. v. Purdue Pharma L.P.*, No. 1:18-cv-00254, Dkt. 12, 2018 WL 1518848, at *1 (W.D. Tex. Mar. 28, 2018); *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 1:18-cv-00386, Dkt. 37, 323 F. Supp. 3d 1242 (D.N.M. 2018); *City of Worcester v. Purdue Pharma L.P.*, No. 4:18-cv-11958, Dkt. 36 (D. Mass. Nov. 21, 2018); *City of Reno v. Purdue Pharma L.P.*, No. 3:18-cv-00454, Dkt. 24, 2018 WL 5730158 (D. Nev. Nov. 2, 2018); *Anderson Cty. v. Rite Aid of S.C., Inc.*, No. 8:18-cv-01947, Dkt. 44 (D.S.C. Aug. 20, 2018); *Anne Arundel Cty. v. Purdue Pharma L.P.*, No. 1:18-cv-00519, Dkt. 58, 2018 WL 1963789 (D. Md. Apr. 25, 2018); *Van Zandt Cty. v. Amerisourcebergen Corp.*, No. 6:18-cv-00064, Dkt. 73 (E.D. Tex. Apr. 16, 2018); *Falls Cty. v. Purdue Pharma L.P.*, No. 6:18-cv-00047, Dkt. 36, 2018 WL 1518849 (W.D. Tex. Mar. 28, 2018); *Delta Cty. v. Purdue Pharma L.P.*, No. 4:18-cv-00095, Dkt. 27, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018); *Dallas Cty. v. Purdue Pharma L.P.*, No. 3:18-cv-00426, Dkt. 10 (N.D. Tex. Mar. 7, 2018); *Brooke Cty. Comm'n v. Purdue Pharma L.P.*, No. 5:18-cv-00009, Dkt. 23 (N.D. W.Va. Feb. 23, 2018); *see also West Virginia v. McKesson Corp.*, No. 2:16-cv-01772, Dkt. 30, 2017 WL 357307 (S.D. W.Va. Jan. 24, 2017) (remanding; Cardinal not a defendant); *West Virginia v. McKesson Corp.*, No. 2:17-cv-03555, Dkt. 21 (S.D. W.Va. Feb. 15, 2018) (remanding; Cardinal not a defendant).

1771101.5

Defendants have not identified a single opioid-related case similar to this action in which a court has found that it had subject matter jurisdiction over the plaintiffs' claims.[49]

---

[49] The most Moving Defendants have done is identify cases in which courts have remarked that the jurisdictional issues are not straightforward.  *See Delaware Cty. v. Purdue Pharma L.P.*, No. 1:18-cv-00460, Dkt. 80 at 3 (N.D. Okla. Oct. 26, 2018) (Ex. 11 to Stay Memo (Dkt. 40-11)); *City of Portland v. Purdue Pharma L.P.*, No. 2:18-cv-00282-NT, Dkt. 96 at 8 (D. Me. Nov. 28, 2018) (citing *Delaware County* and cases cited therein for proposition that removal based on the CSA was not straightforward); *Pawnee Cty. v. Purdue Pharma L.P.*,No. 4:18-cv-00459, Dkt. 80 at 5 (N.D. Okla. Nov. 14, 2018) (Ex. 12 to Stay Memo (Dkt. 40-12)) (noting preliminary assessment of jurisdictional issues suggests they are not straightforward); *Osage Cty. v. Purdue Pharma L.P.*, No. 4:18-cv-00461, Dkt. 87 at 5 (N.D. Okla. Nov. 14, 2018) (same).  But the MDL Court, along with numerous other federal district courts, have demonstrated that the jurisdictional issues are actually quite straightforward.

In *Delaware County*, as here, McKesson argued that "Plaintiff's claims necessarily raise federal issues because they are expressly premised on Distributors' alleged violations of alleged legal duties that arise out of the CSA and its implementing regulations—*i.e.*, the duties to report and halt suspicious orders for controlled substances."  *Delaware Cty.*, No. 4:18-cv-00460, Dkt. 74 (McKesson's Opp'n to Remand) at 7( (N.D. Okla. Oct 10, 2018.); *see also Pawnee Cty. v. Purdue Pharma L.P.*, No. 4:18-cv-00459, Dkt. 66 (McKesson, Cardinal, and AmerisourceBergen's Joint Motion to Stay) at 4 (N.D. Okla. Sep. 28, 2018) ("although Plaintiff ostensibly pleads its theories of recovery against Defendants as state-law claims, the underlying theory of liability is based on Defendants' alleged duties arising out of federal law, specifically the Controlled Substances Act and related regulations"); *Osage Cty. v. Purdue Pharma L.P.*, No. 4:18-cv-00461, Dkt. 62 (McKesson, Cardinal, and AmerisourceBergen's Joint Motion to Stay) at 4  (N.D. Okla. Sep. 24, 2018) (same).  As discussed below, the MDL Court, citing the decisions of other federal district courts, rejected the argument that state law claims, even if based on duties arising from the CSA, create federal question jurisdiction.  For this reason, all of the cases Moving Defendants cite that found the jurisdictional issue difficult because a state law claim was purportedly based on the CSA are unpersuasive.  *See, e.g.*, Stay Memo at 14 ("difficult questions of jurisdiction weigh in favor of their resolution by one court") (quoting *Seminole Cty. v. Purdue Pharma L.P.*, 6:18-cv-00372, 2019 WL 1474397 (E.D. Okla. Apr. 3, 2019) (Ex. 4 to Stay Memo (Dkt. 40-4))).

Moving Defendants' reliance on *Village of Melrose Park v. McKesson Corp.*, No. 1:18-cv-05288, Dkt. 26 (N.D. Ill. Aug. 10, 2018) (Ex. 9 to Stay Motion (Dkt. 40-9), is equally misplaced.  There, the court's docket entry notes that "[p]reliminary assessment of the jurisdictional issues suggest that they are legally and factually difficult and that the issues are precisely the same as those being litigated in other cases that have already been transferred to the MDL, *see, e.g.*, MDL 2804, ECF No. 807."  *Id.*  The pleading cited for this proposition is Purdue's Brief in Opposition to Remand in the State of Montana's case.  As discussed below, the MDL Court had no difficulty disposing of Purdue's arguments for federal jurisdiction in that case.

1771101.5

The MDL Court itself has already rejected Moving Defendants' argument.  In an order that was later withdrawn as a result of the defendants' consent to remand, the MDL Court stated that "despite the clearly state-law specific character of Kentucky's allegations, Walgreens removed Kentucky's case . . . based on federal question jurisdiction."[50]  Walgreens asserted "in its Notice of Removal that the allegations in Kentucky's complaint facially arise under federal law because the legal duties that Walgreens is alleged to have violated 'arise **only** under the federal Controlled Substances Act ("CSA") and its implementing regulations.'"[51]  The MDL Court stated that

> District Courts examining virtually identical facts to those present here have determined that:
>> While a determination of a duty and violation of that duty under the FCSA will likely occur in examining Plaintiffs' claims, so also will examination of [state] common law, statutes, and promulgated rules to determine Defendants' duty, if any, to prevent "diversion" of prescription drugs into illicit channels.  And to the extent, if any,

---

Further, the cases Moving Defendants cite that were removed on the basis of the federal officer removal statute are inapplicable to Plaintiffs' action.  *See Lac Courte Oreilles Bank of Lake Superior Chippewa Indians v. McKesson*, No. 3:18-cv-00286-JDP, Dkt. 26 at 3 (W.D. Wis. May 25, 2018) (Ex. 1 to Stay Memo (Dkt. 40-1)) ("*Only if the jurisdictional issue is both difficult and similar* or identical to those in cases transferred or likely to be transferred should the court proceed . . . and consider the motion to stay." (citation omitted; emphasis added); finding the issue of federal-officer removal difficult); *Rancheria v. McKesson Corp.*, No. 3:18-cv-02525-VC, Dkt. 23 at 1(N.D. Cal. July 16, 2018) (Ex. 2 to Stay Memo (Dkt. 40-2)) ("the MDL Court has undertaken to establish a separate track to address issues arising in cases brought by Tribes, which likely will include jurisdictional issues similar or identical to those raised in the pending motions to remand"); *Rancheria*, No. 3:18-cv-02525-VC, McKesson's Opposition to Plaintiff's Motion to Remand, Dkt. 18 at 2 ("McKesson meets all three elements of the federal officer jurisdiction test.").

Finally, Moving Defendants' arguments for diversity jurisdiction because of fraudulent misjoinder or through severance are equally unpersuasive.  *See* Plaintiffs' Brief in Support of Remand (Dkt. 22) at 15–23 (rebutting Moving Defendants' arguments).

[50] *Kentucky v. Walgreens Boots Alliance, Inc.*, 1:18-op-46311-DAP, Dkt. 13 at 2 (N.D. Ohio Jan. 14, 2019) Exhibit 14, hereto.

[51] *Id.* at 2 (emphasis in original).

1771101.5

that Plaintiff's claims are "partially predicated on federal law, federal law would still not be necessarily raised."[52]

Similarly, in a case brought by the State of Montana, the MDL Court found that "despite the fact that Montana alleges only state law claims, Purdue removed this case . . . based on federal question jurisdiction."[53]  Purdue asserted that "[f]ederal question jurisdiction exists in this case because . . . the State's Amended Complaint involves state law claims that are inextricably tied to substantial disputed federal questions."[54]  In rejecting that assertion, the MDL court noted that the Supreme Court has held that "the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."[55]

This Court need look no further than the Georgia Action to see that Moving Defendants know full well their jurisdictional arguments lack merit.  In that action, the State of Georgia asserted opioid-related claims against the Moving Defendants and others.  The analysis for determining whether federal jurisdiction exists in either case is the same and leads to the same answer: federal jurisdiction does not exist for either action.  But the Moving Defendants did not remove that action because the MDL is addressing and rejecting their spurious jurisdictional arguments in cases brought by attorneys general.[56]  It is for this reason that both Cardinal and

---

[52] *Id.* at 4 (quoting *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp 3d 1242, 1252 (D.N.M. 2018); also citing *Delaware ex. rel Denn v. Purdue Pharma L.P.*, No. CV 1:18-383, 2018 WL 1942363, at *2, and *W. Virginia ex rel Morrisey v. McKesson Corp.*, No. CV 16-1772, 2017 WL 357307, at *8 (S.D. W. Va. Jan. 24, 2017)).

[53] *Montana v. Purdue Pharma*, 1:18-op-45604-DAP, Dkt. 30 at 2 (N.D. Ohio Aug. 23, 2018) Exhibit 15, hereto.

[54] *Id.* at 2– 3 (quoting Purdue's Notice of Removal).

[55] *Id.* at 5 (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 814 (1986)).

[56] *See* discussion of *Kentucky* and *Montana* above; *see also In re: Nat'l Prescription Opiate Litigation*, No. 1:17-md-02804-DAP (N.D. Ohio), Case Management Order One, Dkt. 232 at 11 (stating that no party may file any motion not expressly authorized by the case management order, but also noting that "nothing in this Order limits the right of a State Attorney General to

1771101.5

McKesson also consented to the remand of actions filed by states that they removed to federal court and had transferred to the MDL before the MDL court issued even more opinions rejecting their arguments.[57]  As Moving Defendants have failed to identify a single case with which a remand of Plaintiffs' action would be inconsistent, this Court faces no risk of an inconsistent ruling.[58]

> ii.   Judicial economy is served by this Court determining whether Plaintiffs' case belongs in federal court.

Judicial economy would be best served by a prompt resolution of the question of jurisdiction in this case.[59]

---

seek remand of any case brought by the Attorney General that is removed to the MDL," and that "[t]he Court shall decide any such motions on the merits").

[57] *See Kentucky v. Cardinal Health*, No. 1:18-op-45931-DAP, Dkt. 31 (N.D. Ohio Aug. 27, 2018), Notice of Consent to Remand filed by All Defendants; *Kentucky v. McKesson Corp*, No. 1:18-op-45682, Dkt. 27 (N.D. Ohio July 12, 2018), Notice of Consent to Remand.  Curiously, Moving Defendants cite to the transferor court's order in *Kentucky v. McKesson* as support for this Court granting a stay (Stay Memo at 7), despite the fact that McKesson later consented to remand so that case could proceed in a state court.

[58] While Moving Defendants contend that the jurisdictional issues presented by this case are "complex" (Stay Memo, Dkt. 40 at 10), courts around the country have had no problem addressing those issues.  *See* note 48, above; *see also Lexington Cty. v. Rite Aid of S.C., Inc.*, 3:18-cv-02357, Dkt. 32 at 6 (D.S.C. Oct. 9, 2018) ("the Court finds that the jurisdictional questions at issue are relatively straightforward in this case").  The cases cited by Moving Defendants for the proposition that the jurisdictional issues are complex are also inapposite.  *See* note 49, above.

[59] *City of Worcester v. Purdue Pharma L.P.*, No. 4:18-cv-11958, Dkt. 36 at 3–4 (D. Mass. Nov. 21, 2018) (citing *Waters v. Bausch & Lomb, Inc.*, No. 06-80547-CIV, 2006 WL 8433439, at *2 (S.D. Fla. Jul. 28, 2006) ("Many district courts have held that the interests of judicial economy are best served by giving at least preliminary scrutiny to the merits of a motion to remand, even where a motion to transfer is pending before the JPML.")); *McGrew v. Schering-Plough Corp.*, No. Civ. A. 01-2311, 2001 WL 950790, at *3 (D. Kan. Aug. 6, 2001) ("For purposes of judicial economy, the jurisdictional issues should be resolved immediately[,]" before action by the MDL panel (citation omitted)).  This is especially true when, as here and discussed below, the absence of jurisdiction is patently obvious.  *See* Manual for Complex Litigation, Fourth § 22.35 ("The reasons for a stay diminish, however, . . . if the absence of federal jurisdiction is clear.  Judicial economy may then be served by resolving specific issues and declining to stay the proceedings.").

1771101.5

It would not be a good use of judicial resources for the JPML to devote its time and attention to a transfer from one federal court to another, if the ultimate legal reality is that neither court has or can have jurisdiction. Nor would it be a good use of the transferee court's resources for that court to have to deal with the intake and processing of a case only to realize, later, that the case should be in state court. "It would be a waste of judicial resources for [a] case to proceed" in the federal courts if, ultimately, a federal court is not "the appropriate court to consider plaintiffs' claims." *State v. United States Envtl. Prot. Agency*, No. 2:15-CV-2467, 2015 WL 5117699, at *3 (S.D. Ohio Sept. 1, 2015). This court can imagine few greater wastes of a court's resources than consideration of a case that the court has no jurisdiction to decide.[60]

It is exactly such "wastes" of judicial resources that are the goal of Moving Defendants' attempts to delay consideration of remand. While Cardinal and McKesson claim that a stay would promote judicial economy, what they actually seek is to further tax an already overburdened federal court in hopes of substantially delaying this case and potentially denying justice to Plaintiffs. Because the JPML does not evaluate subject matter jurisdiction in determining which cases to transfer to the MDL, and the Opiate MDL—overburdened by more than 1,900 cases—is presently not entertaining motions to remand from cases brought by individuals,[61] Cardinal and McKesson hope to indefinitely entangle this case in a MDL proceeding despite the federal courts' lack of jurisdiction over the action. This entanglement absent jurisdiction does not further judicial economy, and courts in other opioid-related litigation have recognized as much. Instead, "addressing the issue of jurisdiction now may, if anything,

---

[60] *Dunaway*, 2019 WL 2211670, at *3.

[61] *See, e.g.*, *In re: National Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio), Transcript of December 13, 2017 Telephone Conference, Dkt. 10 at 22:17–20 (the Court stating: "I have limited time and limited staff, and I just don't want to be tied up on individual remand motions at the moment."); *In re: National Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio), Order Regarding Remands, Dkt. 130 at 1 (noting that "the moratorium on all substantive filings shall include all motions to remand").

save the potential transferee court the unnecessary labor and attention that would accompany

dealing with a case that federal courts should not be considering in the first place." [62]

      B.    <u>Plaintiffs Will Suffer Great Prejudice if this Case Is Stayed</u>.

A stay of jurisdictional consideration would greatly prejudice Plaintiffs because it would

trap them in a court in which they do not belong and increase the likelihood of transfer to the

MDL, where extensive delay is all but certain.  "[T]he risk of hardship resulting from a

postponement of a jurisdictional determination is great.  If transferred, this case will join a

veritable sea of others in the MDL court."[63]  Moreover, "[t]here is no guarantee of when that

heavily burdened court would be able to address the important jurisdictional issues raised

here."[64]  "Needlessly causing delays when there is clearly no jurisdiction would similarly

constitute a travesty of justice."[65]  This Court should deny Defendants' attempt to cause precisely

such a delay.

Moving Defendants contend that Plaintiffs "cannot identify meaningful prejudice that

they would suffer as the result of a stay,"[66] despite Plaintiffs having already done precisely that

in a pleading filed before the Motion to Stay.  As Plaintiffs have previously explained:

> As a result of the Defendants' frivolous removal of this action, Plaintiffs have
> now filed three briefs (including this one) with the Court.  And Plaintiffs may
> well have to file additional briefs, including responding to the Defendants'
> forthcoming motion to stay and replying to Plaintiffs' Motion to Remand.  Now—
> if Defendants have their way and Plaintiffs' case becomes trapped in federal
> court—Plaintiffs will also have to object to the JPML's conditional transfer order
> and engage in briefing on a motion to vacate that order.  Forcing Plaintiffs to

---

[62] *Dunaway*, 2019 WL 2211670, at *3.

[63] *Id.*

[64] *Id.*

[65] *City of Worcester v. Purdue Pharma L.P.*, No. 4:18-cv-11958 (D. Mass. Nov. 21, 2018), Dkt. 36 at 4.

[66] Stay Memo at 12.

1771101.5

engage in this unnecessary motions practice is part of the Defendants' strategy to increase the burden on Plaintiffs and delay a determination on the merits of Plaintiffs' case.[67]

This harm to Plaintiffs weighs against a stay.

      C.     There Is No Prejudice to Moving Defendants in Deciding Remand.

On the other hand, there is no prejudice to Moving Defendants absent a stay if federal jurisdiction is lacking, as they "will inevitably be required to proceed in a different forum."[68] Moving Defendants contend that putting the Plaintiffs' claims on a different track from the MDL—like dozens of other currently pending opioid-related cases—would result in duplicative discovery,[69] inconsistent pretrial obligations, and conflicting rulings on pretrial motions in a "potentially unnecessary forum."[70]  However, "that is a risk of the remand motion, not a risk related to the denial of a stay; a post-transfer remand would result in cases on different tracks just as much as a pre-transfer remand would."[71]  Such parallel proceedings in state and federal courts are an inevitable and appropriate result of our federal system.  As the Court in *Dunaway v. Purdue Pharma L.P.* noted:

> if this case is not properly in the federal courts (either because we lack jurisdiction or because the removal was defective), then the case should be on a different

---

[67] Plaintiffs' Reply in Support of their Motion for Immediate Hearing, Dkt. 30 at 5.

[68] *City of Worcester v. Purdue Pharma L.P.*, No. 4:18-cv-11958 (D. Mass. Nov. 21, 2018), Dkt. 36 at 4.

[69] It is not necessary for Plaintiffs' case to be transferred to the MDL to avoid duplicative discovery.  Fact discovery in the MDL track one cases, which involve Moving Defendants, is already complete, and the deadline to complete expert depositions is June 7, 2019.  *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio), Dkts. 876 & 1306 (Case Management Orders 7 and 8).  Plaintiffs have no interest in recreating what has already been done.  Once Moving Defendants produce to Plaintiffs the relevant discovery from the MDL— documents, interrogatory responses, admissions, and deposition transcripts—Plaintiffs will seek to supplement that information as necessary.

[70] Stay Memo at 2.

[71] *Dunaway*, 2019 WL 2211670, at *4.

track. Different litigation under different laws in different states is inherent to the
federal system embraced by the limited jurisdiction of the federal courts.[72]

Because Moving Defendants have no right to impose further delay on Plaintiffs' action by
extending its improper pendency in federal court, promptly remanding Plaintiffs' claims (rather
than staying the case) works no hardship on Moving Defendants.  As the *Anderson County v.
Rite Aid* Court stated:

> Respecting any hardship or inequity that might result to the [] Defendants if a stay
> is not granted, the Court finds that no such hardship would result. The []
> Defendants have already expended the work necessary to litigate against remand–
> and lost repeatedly. By seeking a stay here, the [] Defendants are simply
> attempting to obtain a different result in a different forum–the MDL court.[73]

In addition, Defendants are ***already*** litigating similar opioid related cases around the
country in the courts of several states.[74]  Specifically, Defendants are ***already*** litigating an opioid
related case in a Georgia state court.[75]  And they likely will be for years to come, because, as is
the nature of MDLs, the opioid suits currently in the MDL will eventually be transferred back to
the transferor districts or remanded to state courts for trials and other proceedings.  Therefore, no
prejudice will befall Moving Defendants from denying their Motion to Stay.

## CONCLUSION

This Court lacks jurisdiction to grant a stay as evidenced by the more than 20 decisions in
opioid-related litigation—including from the MDL Court—that have already rejected Moving
Defendants' arguments for jurisdiction.  Further, as evidenced by the denial of requests to stay in
at least 19 other opioid-related cases in which Cardinal and McKesson were defendants, a stay is

---

[72] *Id.*

[73] *Anderson Cty. v. Rite Aid of S.C., Inc.*, No. 8:18-cv-01947, Dkt. 44 (Order) at 7(D.S.C. Aug. 20, 2018).

[74] *See* note 29, above.

[75] *See* note 30, above.

unwarranted because it would not promote judicial economy or consistency and would

significantly prejudice Plaintiffs.  Therefore, the Court should remand this action and deny

Moving Defendants' Motion to Stay (Dkt. 39) as moot.

     Respectfully submitted this 31st day of May, 2019.

                    */s/ James D. Durham*
                    James D. Durham
                    Georgia Bar No. 235515

James D. Durham
Georgia Bar No. 235515
**Savage Turner Durham**
**Pickney & Savage**
102 E. Liberty Street
8th Floor
Savannah, GA 31401
T: 912-231-1140
F: 912-231-9157
jdurham@savagelawfirm.net

Ronald E. Harrison II
Georgia Bar No. 333270
**The Harrison Firm**
1621 Reynolds Street
Brunswick, GA 31520
T: 912-264-3035
F: 912-264-3138
thf@theharrisonlawfirm.net

John E. Floyd
Georgia Bar No. 266413
(*pro hac vice* pending)
Benjamin E. Fox
Georgia Bar No. 329427
(*pro hac vice* pending)
Steven J. Rosenwasser
Georgia Bar No. 614908
(*pro hac vice* pending)
Manoj S. Varghese
Georgia Bar No. 734668
(*pro hac vice* pending)
**Bondurant Mixson &**
**Elmore, LLP**
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309-3417
T: 404-881-4100
F: 404-881-4111
floyd@bmelaw.com
fox@bmelaw.com
rosenwasser@bmelaw.com
varghese@bmelaw.com

Christopher W. Madel
Georgia Bar No. 641270
(*pro hac vice* forthcoming)
Jennifer M. Robbins
(*pro hac vice* forthcoming)
Mack H. Reed
(*pro hac vice* forthcoming)
Stephen M. Premo
(*pro hac vice* forthcoming)
**Madel, PA**
800 Pence Building
800 Hennepin Ave.
Minneapolis, MN 55403
T: 612-605-0630
F: 612-326-9990
cmadel@madellaw.com
jrobbins@madellaw.com
mreed@madellaw.com
spremo@madellaw.com

          Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of May, 2019, a copy of the foregoing

**PLAINTIFFS' RESPONSE TO MOVING DEFENDANTS' JOINT MOTION TO STAY**

was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will

automatically serve all counsel of record.

/s/ *James D. Durham*

James D. Durham

Georgia Bar No. 235515

1771101.5

26